UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,<br><br>              Plaintiff,<br><br>– against –<br><br>HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER JOZOFOVIC and MARK NEUMAN,<br><br>          Defendants and Third-Party Plaintiff,<br><br>– against –<br><br>CCC EQUITIES, LLC, PROJECT EQUITY CONSULTING, THE CONGRESS COMPANIES, HOWARD FENSTERMAN, and WILLIAM NICHOLSON,<br><br>          Third-Party Defendants. | Removed from the Supreme Court of the State of New York, Westchester County<br><br>Adv. Proc. No. 21-07096 (SHL) |
| LIZER JOZEFOVIC,<br><br>             Plaintiff,<br><br>– against –<br><br>WHITE PLAINS HEALTHCARE PROPERTIES I, LLC, HOWARD FENSTERMAN, and METROPOLITAN COMMERCIAL BANK,<br><br>          Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR A PRELIMINARY INJUNCTION

**BINDER & SCHWARTZ**
366 Madison Avenue, 6th floor
New York, New York 10017
Tel.: (212) 510-0708

- and -

**DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP**
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Tel.: (914) 681-0200

- and -

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**
81 Main Street, Suite 306
White Plains, New York 10601
Tel: (914) 607-7010

TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ................................................................................................................ 3

I. The defendants' application for a preliminary injunction should be denied ............................ 3

    A. The Supreme Court, Westchester County, and the Appellate Division, Second Department, declined to issue a temporary restraining order and allowed the auction sale to proceed on July 1, 2021. .............................................................. 4

    B. Injunctive relief is not available to invalidate or nullify the July 1, 2021 sale ........... 4

    C. The disposition of the collateral to a secured party at a price below fair market value does not invalidate an otherwise commercially reasonable sale. .............................. 5

    D. The sale was commercially reasonable in every respect. ........................................ 11

    E. Metropolitan Commercial Bank's lien on the Waterview Membership Interest does not affect WPH Properties' right to sell the interest. ............................................... 13

    F. The requirement that the New York State Department of Health approve the sale did not prohibit a sale subject to that approval. .............................................................. 15

II. If the Court were to grant an injunction, Jozefovic should be required to post a $5.3 million bond ..................................................................................................................... 16

CONCLUSION ............................................................................................................. 17

TABLE OF AUTHORITIES

PAGE(S)

Cases

*108th St. Owners Corp. v. Overseas Commodities Limited*
238 A.D.2d 324 (2d Dep't 1997) ................................................................. 7

*Access Medical Group, P.C. v. Straus Family Capital Group Inc.,*
44 A.D.3d 975 (2d Dep't 2007) ............................................................... 16

*Alayoff v. Alayoff*
112 A.D.3d (2d Dep't 2013) ...................................................................... 3

*Alben Affiliates v. Astoria Term*
34 Misc.2d 246 *(Sup. Ct., Queens Cty. [John F. Scileppi, J.] 1962)* ...................... 8, 9

*Arthur J. Gallagher & Co. v. Marchese*
96 A.D.3d 791 (2d Dep't 2012) .................................................................. 3

*Atlantic City Tire & Rubber Corp. v. Southwark Foundry & Machine Co.*
289 Pa. 569 (1927) ............................................................................... 8

*Atlas MF Mezzanine Borrower, LLC v. Macquarie Texas Loan Holder LLC*
174 A.D.3d 150 (1st Dep't 2019) ............................................................... 4

*Bankers Trust v. Dowler & Co.*
47 N.Y.2d 128 (1979) .......................................................................... 11

*Carabetta Enterprises, Inc.*
162 B.R. 399 (D. Conn. [Alan. H.W. Shiff, J.] 1993) ...................................... 17

*Central Budget Corp. v. Garrett*
48 A.D.2d 825 (2d Dep't 1975) ............................................................. 8, 11

*Central Trust Co. Rochester v Alcon*
93 Misc.2d 686 *(Sup. Ct., Wayne Cty. [Elizabeth W. Pine, J.],1978)* ................... 8, 9

*Chase Home Fin. LLC v. Diaz*
16 Misc.3d 415 (Sup. Ct., Suffolk Cty. [Jeffrey Arlen Spinner,J.] 2007) ................... 8

*Chemical Bank & Trust Co. v. Schumann Assoc., Inc.*
150 Misc. 221 (Sup. Ct.. Kings Cty. [Bonynge, J.], 1934) ................................. 8, 9

*CMI II, LLC v. Interactive Brand Dev., Inc.*
13 Misc.3d 1214(A) (Sup. Ct., N.Y. Cty. [Bernard J. Fried, J.] 2006) .................... 14

*Cole . Manufacturers Trust Co.*
164 Misc. 741 (Sup. Ct., Kings Cty, [Smith, J.], 1937) ..................................... 7

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*
976 F.3d 239 (2d Cir. 2020) .................................................................... 8

*Credit Alliance Corp. v. David O. Crump Sand & Fill Co.*
470 F. Supp. 489 (S.D.N.Y. 1979) ........................................................... 12

*Dougherty v. 425 Dev. Assoc.*
  93 A.D.2d 438 (1st Dep't 1983) .......................................................................... 11

*Drew v. Chase Manhattan Bank, N.A.,*
  185 B.R. 139, 141 (S.D.N.Y.) ............................................................................... 3

*Enron Corp.*
  2005 WL 3873890, 2005 Bankr. LEXIS 3469 [Bankr. S.D. N.Y. June 16, 2005] .................... 4

*F.D.I.C. v Wrapwell Corp.*
  46 U.C.C. Rep. Serv. 2d 885 (S.D.N.Y. Jan. 3, 2002) ............................................. 11

*Federal Deposit Ins. Corp. v. Herald Square Fabrics Corp.*
  81 A.D.2d 168 (2d Dep't 1981) ...................................................................... 7, 10

*Halpert v Engine Air Serv.*
  212 F.2d 860 (2d Cir. 1954) ........................................................................... 17

*Yale Exp. Sys., Inc.*
  370 F.2d 433 (2d Cir. 1966) ........................................................................... 15

*Leasing Serv. Corp. v. Carbonex, Inc.*
  512 F. Supp. 235 (S.D.N.Y. 1981) ................................................................... 12

*Livas v. Mitzner*
  303 A.D.2d 381 (2d Dep't 2003) ..................................................................... 16

*Martin Realty Co. v. Bayview Heights Land Co.*
  107 Misc. 140 (Sup. Ct., Kings Cty. [Callaghan, J.] 1919) .................................... 8

*Matter of Excello Press, Inc.*
  890 F.2d 896 (7th Cir. 1989) ........................................................................... 11

*MTI Systems Corp. v. Hatziemanuel*
  151 A.D.2d 649 (2d Dep't 1989) ....................................................................... 7

*National Bank of Delaware County v. Gregory*
  85 A.D.2d 839 (3d Dep't 1981) ......................................................................... 7

*National Housing Partnership v. Municipal Capital Appreciation Partners I, L.P.*
  935 A.2d 300 (D.C. Ct. of Appeals 2007) ........................................................... 7

*Obrecht v. Crawford*
  175 Md. 385 (Md. Ct. of Appeals 1938) .............................................................. 8

*Olympic Ice Cream Co., Inc. v. Sussman*
  151 A.D.3d 872 (2d Dep't 2017) ....................................................................... 16

*Paco Corp. v. Vigliarola*
  611 F.Supp. 923 (E.D.N.Y. [McLaughlin, J.] 1985) *aff'd 835 F*.2d 1429 (1987) .................... 7

*Purdy v. Wilkins*
  95 Misc. 706 (Sup Ct., Albany Cty. [Hasbrouck, J.] 1916) ................................. 8, 9

*Putter v. Singer*
  73 A.D.3d 1147 (2d Dep't 2010) ..................................................................... 16

*Sackman Mortg. Corp.*
  158 B.R. ...................................................................................................... 12

*Wright v. Caprarella*
  205 A.D. 559 (2d Dep't 1923) ................................................................. 8, 9

*Zsa Zsa Ltd.*
  352 F. Supp. 665 (S.D.N.Y. 1972) ............................................................ 11

Statutes

NY RPAPL § 1371(a) ...................................................................................... 8

NY UCC Section 9-610(a) ............................................................................. 14

NY UCC § 9-672 ............................................................................................. 5

NY UCC § 9-615 ................................................................................... 6, 7, 8

NY UCC § 9-612 ........................................................................................... 11

NY UCC § 9-504 ........................................................................................... 12

NY UCC § 9-610 ................................................................................... 12, 14

NY UCC § 9-102 ........................................................................................... 15

NY UCC § 9-613 ........................................................................................... 15

NY UCC § 9-627(a) ........................................................................................ 2

NY UCC § 9-625(a) ........................................................................................ 4

NY UCC § 9-610(b) ...................................................................................... 10

NY UCC § 9-601(a) ...................................................................................... 15

NY UCC § 9-507(2) ........................................................................................ 8

Section 9-615(f) .............................................................................................. 6

Rules

CPLR 6312(b) ............................................................................................... 16

Federal Rule of Bankruptcy Procedure (Fed. R. Bankr. P.) 7065 ......... 3, 16

Federal Rule of Civil Procedure 65 ............................................................... 3

FRCP 65(c) ................................................................................................... 16

Other Authorities

UCC 9–625 ...................................................................................................... 6

UCC Article 9 ............................................................................ 7, 16, 24, 25

## PRELIMINARY STATEMENT

White Plains Healthcare Properties I, LLC ("WPH Properties"), CCC Equities, LLC, Project Equity Consulting, The Congress Companies, Howard Fensterman and William Nicholson (collectively, "the counterclaim defendants") respectfully submit this memorandum of law in opposition to the motion of defendants and third-party plaintiffs HBL SNF, LLC ("HBL"), Lizer Jozefovic ("Jozefovic") and Mark Neuman ("Neuman") (collectively, "defendants") for a preliminary injunction invalidating and nullifying the auction sale conducted pursuant to Article 9 of the New York Uniform Commercial Code (the "NY UCC") held on July 1, 2021 of Jozefovic's 71% membership interest (the "Waterview Membership Interest") in Waterview Acquisition I, LLC ("Waterview") and enjoining WPH Properties from taking any further action to complete the sale.[1]

## SUMMARY OF ARGUMENT

For the reasons that follow, the defendants have not established, and cannot establish, that they are entitled to an injunction. The defendants are not likely to succeed on the merits in obtaining the injunction that they seek to invalidate the sale and they have not even raised any sufficiently serious question on the merits that would justify injunctive relief.

In 2019, HBL took occupancy of a $65 million state-of-the-art nursing facility that WPH Properties built in White Plains, Westchester County, pursuant to an Amended and Restated Operating Lease (the "Lease"). Jozefovic guaranteed HBL's lease obligations and executed an

---

[1] WPH Properties and the counterclaim defendants are submitting their opposition to the motion to the Bankruptcy Court because the defendants have taken the position that their notice of removal removed the entire action, including this motion, to the District Court, which transferred it to this Court. WPH Properties and the counterclaim defendants do not agree that this motion has been removed and respectfully reserve the right to seek remand of this action on all grounds, including, but limited to, the ground that the defendants' purported removal of this action was defective.

1

agreement (the "Pledge Agreement") by which he pledged the Waterview Membership Interest as collateral security for HBL's satisfaction of its lease obligations. HBL breached the Lease by failing to provide the $5.3 million in tenant security that the Lease required. As a result, WPH Properties was entitled under the Pledge Agreement to sell the Waterview Membership Interest at a public sale held under Article 9 of the New York Uniform Commercial Code (the "NY UCC").

Both the Supreme Court and the Appellate Division, Second Department denied the defendants' attempts to enjoin the sale and the sale occurred on July 1, 2021. Since the sale has already occurred, injunctive relief is not available under the express terms of the NY UCC.

Even if there were some relief that the defendants could be given here, there is no legal basis for doing so. The sale was commercially reasonable in every respect. Contrary to the defendants' argument, the disposition of collateral at auction to a secured party for a price claimed to be below market value is not a ground for invalidating an otherwise commercially reasonable sale. NY UCC § 9-627(a) explicitly forecloses the defendants' argument. Where the sale is otherwise commercially reasonable and the collateral is sold to the secured party at a price below its fair market value, as the defendants claim, the NY UCC provides not for the invalidation of the sale, but for a specific method of calculating the surplus or deficiency that accounts for the possibility that the sale was at a below market price. The cases cited by the defendants either involve deficiency actions, rather than motions to set aside the sale, or are completely inapposite because they arise in mortgage foreclosure proceedings under the New York Real Property Actions and Proceedings Law ("NY RPAPL"), under which a completely different standard applies.

### STATEMENT OF FACTS

The relevant facts are fully set forth in the accompanying declaration of Alfred E. Donnellan dated November 10, 2021 (the "Donnellan declaration" or "Donnellan dec.") and the

declaration of Nelida Lara dated November 10, 2021 (the "Lara declaration" or "Lara dec.").

**ARGUMENT**

**I**

**The defendants' application for a preliminary injunction should be denied**

The defendants moved for a preliminary injunction and temporary restraining order in the New York State Supreme Court pursuant to CPLR Article 63 based upon the standard for obtaining such relief under New York State law.[2] Now that the defendants have removed the case to this Court, Federal Rule of Civil Procedure 65 governs their application. Under Federal Rule of Bankruptcy Procedure (Fed. R. Bankr. P.) 7065, FRCP 65 applies in bankruptcy proceedings.

To obtain a preliminary injunction under FRCP 65, a movant "must demonstrate irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in favor of the party requesting the preliminary injunction." Drew v. Chase Manhattan Bank, N.A., 185 B.R. 139, 141 (S.D.N.Y.). Because the defendants cannot possibly demonstrate that they are likely to succeed on the merits or that there are sufficiently serious questions as to the merits to justify granting this motion, the Court need not reach the other two elements required for a preliminary injunction.

---

[2] To obtain a preliminary injunction under CPLR Article 63, "a movant must establish, by clear and convincing evidence: (1) a likelihood of success on the merits, (2) irreparable injury absent a preliminary injunction, and (3) a balancing of the equities in the movant's favor." *Alayoff v. Alayoff*, 112 A.D.3d at 564 (2d Dep't 2013), quoting from *Arthur J. Gallagher & Co. v. Marchese*, 96 A.D.3d 791 (2d Dep't 2012).

3

**A. The Supreme Court, Westchester County, and the Appellate Division, Second Department, declined to issue a temporary restraining order and allowed the auction sale to proceed on July 1, 2021.**

Initially, the New York State Supreme Court and the Appellate Division, Second Department, denied the defendants' application for a temporary restraining order made before the sale and allowed the sale to proceed. Donnellan dec., ¶¶ 4-7.[3] At a June 30, 2021 hearing on the application for a temporary restraining order, the Supreme Court stated that HBL and Jozefovic were obligated to pay the $1.6 million security deposit into the landlord's tenant security account, that they failed to do so and that their failure was a default under the Lease. Donnellan dec., ¶ 5, ex. B at 4-5. It has already been determined once, therefore, that HBL defaulted under the lease and that WPH Properties was entitled to sell the Waterview Membership Interest.

**B. Injunctive relief is not available to invalidate or nullify the July 1, 2021 sale.**

Injunctive relief is not available after the sale has occurred, as it has here. NY UCC § 9-625(a) provides that "[i]f it is established that a secured party is not proceeding in accordance with this article, a court may order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions." In *Atlas MF Mezzanine Borrower, LLC v. Macquarie Texas Loan Holder LLC*, 174 A.D.3d 150 (1st Dep't 2019), the Appellate Division, First Department, held that where, as here, a public sale of collateral has already occurred, the remedy of a preliminary injunction invalidating the sale is unavailable to the debtor because NY UCC § 9-625(a) would only apply where a party *is proceeding* to dispose of collateral and not in a situation where the sale has already occurred. The Court stated:

> Courts have interpreted this language to mean that the sale must not have taken
> place in order for injunctive relief to be awarded (*see In re Enron Corp.,* 2005 WL

---

[3] Once the sale occurred, the New York State Supreme Court declined to address the motion for preliminary injunction, finding it to be moot.

3873890, *10, 2005 Bankr. LEXIS 3469 [Bankr. S.D. N.Y. June 16, 2005] [finding that "[u]nder a plain meaning of the statute, (UCC 9–625[a]) would be applicable in circumstances where the secured party is *proceeding* to dispose of the collateral and not in a situation where the disposition of the collateral has already occurred"]). The *Enron* Court stated further that because the sale of the collateral had already occurred in the case before it, the aggrieved party's remedy "would be an action for damages under section 9–625(b) of the UCC and not an invalidation of the sale"(*id.*).[5] Stated otherwise, a debtor may seek to enjoin the sale, which is exactly what Atlas sought to do in its federal action, before the sale occurred. However, after disposition of the collateral, a debtor may seek money damages, as an offending party "is liable for damages in the amount of any loss caused by a failure to comply with [article 9]" (UCC 9–625[b]).

*Id.* at 63. Because the sale has already occurred, injunctive relief invalidating or nullifying it is unavailable.

C.   **The disposition of the collateral to a secured party at a price below fair market value does not invalidate an otherwise commercially reasonable sale.**

Even if an injunction unwinding the sale was available to defendants at this stage, the defendants' motion must still be denied. NY UCC § 9-672 expressly provides that "[t]he fact that a greater amount could have been obtained by a . . . disposition . . . at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the . . . disposition . . . was made in a commercially reasonable manner." In other words, under the NY UCC, a low price alone does not establish commercial unreasonableness. WPH Properties complied with all of the requirements necessary to sell or dispose of the collateral by public sale pursuant to NY UCC Article 9, including the notice requirements, the required method, manner, time, place, of the sale. *See* Donnellan dec., ¶¶ 8-19. In fact, the defendants unsuccessfully sought to enjoin the sale based on alleged procedural deficiencies before it occurred. Donnellan dec., ¶¶ 3-7. Both the Supreme Court, Westchester County, and the Appellate Division, Second Department, declined to enjoin the sale. Donnellan dec., ¶¶ 5-7. Because the sale was commercially reasonable, the defendants are not entitled to injunctive relief nullifying it on any procedural grounds.

5

The defendants argue that the sale was commercially unreasonable because the collateral was sold to WPH Properties – the secured party – at a price below what the defendants claim to be its market value. Defendants' Memorandum of Law dated October 25, 2021 ("Def. br."), at 6. That is wrong. Where the sale is otherwise commercially reasonable and the collateral is sold to the secured party, Article 9 of the NY UCC anticipates that a secured party may be the winning bidder. In those circumstances, as here, the NY UCC provides not for the invalidation of the sale, but for a specific method for calculating the surplus or deficiency to account in determining the obligor's remaining obligation for the possibility that the sale was at a price below fair market value.

Official Comment 10 to NY UCC § 9-615 states:

> Note also that even if the disposition is commercially reasonable, Section 9-615(f) provides a special method for calculating a deficiency or surplus if (i) the transferee in the disposition is the secured party, a person related to the secured party, or a secondary obligor, and (ii) the amount of proceeds of the disposition is significantly below the range of proceeds that a complying disposition to a person other than the secured party, a person related to the secured party, or a secondary obligor would have brought.

NY UCC § 9-615(f) specifies how the surplus of deficiency should be calculated under those circumstances:

> (f) Calculation of surplus or deficiency in disposition to person related to secured party. The surplus or deficiency following a disposition is calculated based on the amount of proceeds that would have been realized in a disposition complying with this part to a transferee other than the secured party, a person related to the secured party, or a secondary obligor if:
>
> (1) the transferee in the disposition is the secured party, a person related to the secured party, or a secondary obligor; and
>
> (2) the amount of proceeds of the disposition is significantly below the range of proceeds that a complying disposition to a person other than the secured party, a person related to the secured party, or a secondary obligor would have brought.

NY UCC § 9-615(f).

In fact, Official Comment 6 to NY UCC § 9-615 expressly states that a low-price disposition to a secured party does not invalidate an otherwise commercially reasonable sale.

6

Official Comment 6 provides:

> 6. **Certain "Low-Price" Dispositions.** Subsection (f) provides a special method for calculating a deficiency or surplus when the secured party, a person related to the secured party (defined in Section 9-102), or a secondary obligor acquires the collateral at a foreclosure disposition. It recognizes that when the foreclosing secured party or a related party is the transferee of the collateral, the secured party sometimes lacks the incentive to maximize the proceeds of disposition. **As a consequence, the disposition may comply with the procedural requirements of this Article (e.g., it is conducted in a commercially reasonable manner following reasonable notice) but nevertheless fetch a low price**.
>
> Subsection (f) adjusts for this lack of incentive. If the proceeds of a disposition of collateral to a secured party, a person related to the secured party, or a secondary obligor are "significantly below the range of proceeds that a complying disposition to a person other than the secured party, a person related to the secured party, or a secondary obligor would have brought," then instead of calculating a deficiency (or surplus) based on the actual net proceeds, the calculation is based upon the amount that would have been received in a commercially reasonable disposition to a person other than the secured party, a person related to the secured party, or a secondary obligor. **Subsection (f) thus rejects the view that the secured party's receipt of such a price necessarily constitutes noncompliance with Part 6**. However, such a price may suggest the need for greater judicial scrutiny. See Section 9-610, Comment 10.

NY UCC § 9-615, Official Comment 6 (emphasis added).

The defendants claim that sale prices below 10% of the collateral's value are consistently deemed unconscionably low and thus commercially unreasonable. Def. br., at 6. The NY UCC cases the defendants cite arise in the context of applications for deficiency judgments, not motions to set aside a sale. *See Paco Corp. v. Vigliarola*, 611 F.Supp. 923 (E.D.N.Y. [McLaughlin, J.] 1985), *aff'd* 835 F.2d 1429 (1987); *108th St. Owners Corp. v. Overseas Commodities Limited*, 238 A.D.2d 324 (2d Dep't 1997); *MTI Systems Corp. v. Hatziemanuel*, 151 A.D.2d 649 (2d Dep't 1989); *National Bank of Delaware County v. Gregory*, 85 A.D.2d 839 (3d Dep't 1981); *Federal Deposit Ins. Corp. v. Herald Square Fabrics Corp.*, 81 A.D.2d 168 (2d Dep't 1981); *National Housing Partnership v. Municipal Capital Appreciation Partners I, L.P.*, 935 A.2d 300 (D.C. Ct. of Appeals 2007). *Cole Manufacturers Trust Co.*, 164 Misc. 741 (Sup. Ct., Kings Cty, [Smith, J.],

1937) involved a private sale of collateral accomplished simply by accounting entries. *Obrecht v. Crawford*, 175 Md. 385 (Md. Ct. of Appeals 1938) is a damages case. *Atlantic City Tire & Rubber Corp. v. Southwark Foundry & Machine Co.*, 289 Pa. 569 (1927) was an assumpsit case. Neither was a UCC case. "The UCC became effective on September 27, 1964 and applies only to contracts entered into on or after that date."*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 249 (2d Cir. 2020). *Central Budget Corp. v. Garrett*, 48 A.D.2d 825 (2d Dep't 1975) actually disproves the defendants' argument ("the mere 'fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not *of itself* sufficient to establish that the sale was *not* made in a commercially reasonable manner,'" citing NY UCC § 9-507(2).

The remaining authorities on which the defendants' argument is based do not apply here because they were mortgage foreclosure cases under the NY RPAPL, not the NY UCC. *See Wright v. Caprarella,* 205 A.D. 559 (2d Dep't 1923); *Chase Home Fin. LLC v. Diaz*, 16 Misc.3d 415 (Sup. Ct., Suffolk Cty. [Jeffrey Arlen Spinner, J.] 2007); *Central Trust Co. Rochester v Alcon Devs.*, 93 Misc.2d 686, 688 (Sup. Ct., Wayne Cty. [Elizabeth W. Pine, J.], 1978); *Alben Affiliates v. Astoria Term,* 34 Misc.2d 246, 248-249 (Sup. Ct., Queens Cty. [John F. Scileppi, J.] 1962); *Chemical Bank & Trust Co. v. Schumann Assoc., Inc.*, 150 Misc. 221 (Sup. Ct.. Kings Cty. [Bonynge, J.], 1934); *Martin Realty Co. v. Bayview Heights Land Co.*, 107 Misc. 140 (Sup. Ct., Kings Cty. [Callaghan, J.] 1919); *Purdy v. Wilkins*, 95 Misc. 706, 7-8 (Sup Ct., Albany Cty. [Hasbrouck, J.] 1916).

The NY RPAPL does not have a provision comparable to NY UCC § 9-615. In a mortgage foreclosure proceeding governed by Article 13 of the NY RPAPL, courts must decide whether a sale should be set aside as a matter of equity. More specifically, a deficiency judgment may be

8

entered after a mortgage foreclosure sale only to the extent that it is found by the court "to be just and equitable." NY RPAPL § 1371(a); *Polish Natl. Alliance of Brooklyn v. White Eagle Hall Co.*.98 A.D.2d 400, 406-407 (2d Dep't 1983) ("In exercising equity powers, a court has the discretion to set aside a judicial sale where fraud, collusion, mistake or misconduct casts suspicion on the fairness of the sale. Mere inadequacy of price, however, is insufficient to vacate a sale, unless there are additional circumstances that warrant invocation of equity powers or unless the price is so inadequate as to shock the court's conscience.") (internal citations and quotations omitted).

Thus, for example, in *Central Trust Co. Rochester v Alcon Devs.*, 93 Misc.2d 686, 688 (Sup. Ct., Wayne Cty. [Elizabeth W. Pine, J.], 1978), the Court set aside a mortgage foreclosure sale that involved significant procedural deficiencies, including notice irregularities, that resulted in an "oppressive" result for the mortgagor. *See also Chemical Bank & Trust Co. v. Schumann Assoc., Inc.*, 150 Misc. 221 (Sup. Ct.. Kings Cty. [Bonynge, J.], 1934) (sale of house valued at over $17,000 at mortgage foreclosure sale for $500 set aside, as a matter of equity, "to relieve the plight of the unfortunate debtor" from this "travesty"); *accord Alben Affiliates v. Astoria Term,* 34 Misc.2d 246, 248-249 (Sup. Ct., Queens Cty. [John F. Scileppi, J.] 1962) (in court's discretion and due to notice irregularities and confusion created by stay of sale, mortgage foreclosure sale resulting in low sale price set aside); *see also Wright v. Caprarella,* 205 A.D. 559 (2d Dep't 1923) (mortgage foreclosure sale set aside under predecessor statute in court's "discretion" based on mistake of counsel for the owner, who missed the sale, inadequacy of price and "very serious consequences to the owner"); *Purdy v. Wilkins*, 95 Misc. 706, 7-8 (Sup Ct., Albany Cty, [Hasbrouck, J.], 1916) ("Provoked to the exercise of discretion," court set aside foreclosure sale where deficiency judgment was an "injustice.").

9

But even though these decisions are not relevant in determining commercial reasonableness in the UCC context, they nevertheless acknowledged that even in a mortgage foreclosure case a low sale price is not, in itself, a basis for setting aside the sale. As the Appellate Division, Second Department, acknowledged in *Polish Natl. Alliance of Brooklyn v. White Eagle Hall Co.*:

> A mortgagee, which bids on the property for less than the amount due, is not required to indulge the useless act of paying itself the amount of its bid. The rule has a sound rationale, for in the absence of a deficiency judgment proceeding (see R.P.A.P.L. 1371), the consequence of the bid is to give full credit to the mortgagor for the amount of the mortgage balance plus the expenses of the sale.

98 A.D.2d at 407.

In other words, since the mortgagee was not seeking to impose a deficiency judgment on the mortgagor, "its bid of $150 was tantamount to the mortgage balance plus the sale expenses and [the mortgagor] was entitled to full credit for that sum." *Id.* at 407. Thus, like the NY UCC Article 9 low-price deficiency calculations, which take into account the regular circumstance of a low bid by a secured creditor, similar adjustments are warranted pursuant to case law applying the NY RPAPL in assessing the fairness of a very low bid by a mortgagee and not a third-party bidder, another common occurrence.

Accordingly, the defendants' argument that the July 1, 2021 sale should be nullified as commercially unreasonable because WPH Properties, the secured party, was the successful bidder for a low price is wrong. Under the NY UCC, the sale to a secured party – even a sale at a nominal price – results simply in a special method of calculating the surplus or deficiency. That methodology and calculation may well be subject to judicial scrutiny if WPH Properties later seeks a deficiency judgment. *See e.g. Federal Deposit Ins. Corp. v. Herald Sq. Fabrics Corp,* 81 A.D.2d 168, 186 (2d Dep't 1981) (triable issue on amount of damages after UCC sale of collateral based on discrepancy between collateral's original sale price and lower sale price upon its post default disposition."). But it is not relevant now and provides no basis to set aside the sale.

10

**D.  The sale was commercially reasonable in every respect.**

Under NY UCC § 9-610(b), commercial reasonableness "hing[es] on the totality of the circumstances, including the good faith efforts of the creditor," *F.D.I.C. v Wrapwell Corp.*, 46 U.C.C. Rep. Serv. 2d 885 (S.D.N.Y. Jan. 3, 2002). In New York, commercial reasonableness means that "a qualifying disposition must be made in the good faith attempt to dispose of the collateral to the parties' mutual best advantage." *Central Budget Corp. v. Garrett*, 48 A.D.2d 825, 825 (2d Dep't 1975).

Rather than adopt an explicit test to assess commercial reasonableness, New York courts consider "accepted business practice" as a guide and emphasize "the aggregate of the circumstances" when reviewing a UCC sale. *Bankers Trust v. Dowler & Co.,* 47 N.Y.2d 128 (1979); *Dougherty v. 425 Dev. Assoc.*, 93 A.D.2d 438, 446-47 (1st Dep't 1983); *In re Zsa Zsa Ltd.,* 352 F. Supp. 665, 670 (S.D.N.Y. 1972), *aff'd,* 475 F.2d 1393 (2d Cir 1973) ("It is the aggregate of circumstances in each case-rather than specific details of the sale taken in isolation-that should be emphasized in a review of the sale"). As the United States Court of Appeals for the Seventh Circuit Court aptly stated, applying New York law, "[i]n the end, the [factfinder] must decide what a reasonable business would have done to maximize the return on the collateral." *Matter of Excello Press, Inc.*, 890 F.2d 896, 906 (7th Cir. 1989).

Here, there was nothing WPH Properties could have done. As fully discussed in the Donnellan declaration, the totality of the circumstances shows that WPH Properties took every possible step to ensure that the sale of the Waterview Membership Interest would be commercially reasonable. WPH Properties fully complied with Article 9's notice requirements and scheduled the sale on 21 days' notice as required under Pledge Agreement. That more than satisfied the requirements of NY UCC § 9-612. WPH Properties advertised the sale the Westchester Business Journal in the weekly issue which circulated from June 21, 2021 through June 28, 2021. Donnellan

11

dec. ¶ 13 New York law "does not require that a seller advertise a [disposition] sale in any specific type of media or for any particular amount of time." *Adobe Oil Field Services, Ltd. v. PNC Bank, N.A. (In re Adobe Trucking, Inc.*), No. 11-7005-RBK, 2011 WL 6258233, at *12 (W.D. Tex. Dec. 15, 2011), *aff'd*, 551 Fed. Appx. 167 (2014). The extent of WPH Properties' advertising of the sale here far surpasses that of other court-approved public sales. *Adobe Trucking, Inc.*, 2011 WL 6258233, at *12 (advertisement of public sale in three local newspapers for one day each was commercially reasonable under NY UCC); *see also Credit Alliance Corp. v. David O. Crump Sand & Fill Co.,* 470 F. Supp. 489, 494-95 (S.D.N.Y. 1979) (advertisement was commercially reasonable where the notices appeared in three local newspapers on November 25-28 and the sale was held on November 30); *Sackman Mortg. Corp.,* 158 B.R. at 936 (notice of a sale was commercially reasonable under NY UCC § 9-504 where the secured party advertised the sale for five days in three widely read local newspapers, several parties responded and inquired about the collateral, although none appeared at the sale.)

In addition, on June 11, 2021, WPH Properties sent a letter to 622 targeted recipients including every nursing home listed on the New York State Department of Health's website and known investors in the nursing home industry notifying them of the sale. Donnellan dec., ¶ 12 & ex. G. The number of potential purchasers contacted by WPH Properties far exceeds those contacted in other court-approved public sales. *See e.g.*, *Leasing Serv. Corp. v. Carbonex, Inc.,* 512 F. Supp. 235, 256 (S.D.N.Y. 1981) (notice of a sale was commercially reasonable where sale was advertised and 26 potential purchasers were sent copies of the notice).

Finally, the sale satisfied Article 9's requirements for a "public disposition." The Official Comment to NY UCC § 9-610 states that:

> [a]lthough the term is not defined, as used in this Article, a "public disposition" is
> one at which the price is determined after the public has had a meaningful

opportunity for competitive bidding. "Meaningful opportunity" is meant to imply that some form of advertisement or public notice must precede the sale (or other disposition) and that the public must have access to the sale (disposition).

These requirements were clearly met. NY UCC § 9-610, Official Comment 7 (Public vs. Private Dispositions) (2019). The sale was publicly advertised and notice was sent to 622 potential purchasers. And the sale was fully accessible to the public. As the advertisement states, the sale is a "public auction" and "[a]ll interested prospective purchasers are invited to become Qualified Bidders."

### E. Metropolitan Commercial Bank's lien on the Waterview Membership Interest does not affect WPH Properties' right to sell the interest.

The defendants argue that Jozefovic's assignment of the Waterview Membership Interest to Metropolitan Commercial Bank ("MCB") to secure a $3 million loan and that MCB perfection of its security interest "prevents a commercially reasonable auction." Affidavit of Jozefovic dated October 25, 2021 (the "Jozefovic aff.") ¶¶ 14-16; Def. br., at 9-10. That argument is incorrect. A junior creditor can sell the collateral subject to the superior interest. But even if the argument were correct, the defendants cannot make it here, because it is based on Jozefovic's breach of the Pledge Agreement.

After pledging the Waterview Membership Interest to WPH Properties, Jozefovic pledged the same interest to MCB. By doing so, Jozefovic breached the Pledge Agreement in two ways. First, he violated his covenant that he would "not enter into any assignment, mortgage, pledge or other instrument which transfers or encumbers all or any part of his interest in" Waterview Hills. Donnellan dec., ex. F, at 2, § 3. Second, by amending the Waterview Hills operating agreement in order to create the membership certificates that MCB required, Jozefovic aff. ¶¶ 15-16, he violated his agreement "not to subsequently further amend or voluntarily permit the amendment of the operating agreement of the Company that would in any manner materially adversely affect this

13

Assignment and/or the rights of the Assignee hereunder without the consent of the Assignee." Donnellan dec., ex. F, at 2, § 4. WPH Properties did not consent to the amendment that allowed for the assignment of the membership certificate to MCB. Jozefovic cannot ask the Court to set aside the sale on the basis of a condition he caused by breaching the Pledge Agreement.

WPH Properties acknowledges that MCB's lien is prior to WPH Properties' lien because MCB perfected first. But the NY UCC nevertheless allows a junior creditor to sell the collateral subject to the senior creditor's lien. And there is no reason that Jozefovic should be allowed to defeat WPH Properties' right to sell the Waterview Membership Interest by subsequently pledging it to MCB in violation of the Pledge Agreement.

First, the fact that MCB has an alleged senior security interest in the Waterview Membership Interest does not prohibit WPH Properties from disposing of the collateral in accordance with Article 9 of the NY UCC. Section 9-610(a) provides that "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." The section does not provide that only the most senior secured creditor may conduct a sale. The Official Comments confirm this. Official Comment 5 to NY UCC § 9-610 states "[d]isposition rights under subsection (a) are not limited to first-priority security interests. Rather, any secured party as to whom there has been a default has the right to dispose of collateral under this subsection." For example, courts have held that a party may foreclose a subordinate membership interest. *CMI II, LLC v. Interactive Brand Dev., Inc.*, 13 Misc.3d 1214(A) (Sup. Ct., N.Y. Cty. [Bernard J. Fried, J.] 2006) ("IIG alleges that plaintiff cannot foreclose on the Collateral because IIG has a more senior security interest. However, the fact that plaintiff's security interest is subordinated does not preclude plaintiff from seeking and obtaining foreclosure. As part of the foreclosure process,

14

plaintiff is entitled to have the amount secured by IIG's senior security interest judicially determined, and to have that amount satisfied out of the sale of the Collateral.")

Second, there is no merit to the defendants' argument that the auction should be invalidated because MCB perfected its security interest "by taking possession of the related certifications," Jozefovic aff. ¶ 15, and "had physical possession of the membership certificates." Jozefovic aff. ¶ 16. The NY UCC does not require that the secured party possess the collateral in order to foreclose. NY UCC § 9-102-73(A) defines a secured party, as relevant here, as "a person in whose favor a security interest is created or provided for under a security agreement . . . ." It does not require that the secured party have possession. Nothing in NY UCC Article 9 provides that possession of certificates is required as a precondition to a UCC Article 9 foreclosure. It requires only that the party foreclosing be a "secured party." *See* NY UCC § 9-601(a). Further, NY UCC § 9-613 does not require that a notice of a sale of collateral under Article 9 state whether the secured party is in possession of the collateral. Indeed, "[s]ection 9-202 declares the policy of Article 9 of the Code stating that 'each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor.'" *In re Yale Exp. Sys., Inc.*, 370 F.2d 433, 437 (2d Cir. 1966).

WPH Properties should not be made to bear any loss of value in its collateral because of Jozefovic's breach of the Pledge Agreement and attempt to defraud WPH Properties and MCB. The sale was commercially reasonable and does not prejudice MCB, since the sale MCB was subject to its security interest. There is no reason to set the sale aside.

### F. The requirement that the New York State Department of Health approve the sale did not prohibit a sale subject to that approval.

The defendants argue that the approval of the New York State Department of Health ("NYSDOH") is a prerequisite for sale of the Waterview Membership Interest. Def. br., at 9-11

WPH Properties agrees, but that is not an obstacle to a commercially reasonable public auction of the Waterview Membership Interest subject to NYSDOH approval. The Terms of Sale provided to all prospective purchasers states that "[t]he Collateral will be sold subject to all licensing and approval requirements of the New York State Department of Health." Donnellan dec., ex. H. Accordingly, there is no merit to defendants' argument that the NYSDOH the approval process invalidates the commercially reasonable July 1, 2021 public auction.

## II

### If the Court were to grant an injunction, Jozefovic should be required to post a $5.3 million bond

FRCP 65(c), entitled "Security," provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." [4]

The defendants will no doubt argue that under Fed. R. Bankr. P. 7065, "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee or debtor in possession without compliance with [FRCP] 65 (c)." In other words, a federal bankruptcy

---

[4] The New York statute governing security, CPLR 6312(b), similarly requires that when a court grants a preliminary injunction it must require the movant to provide an undertaking in an amount to be fixed by the court, that the movant, if it is finally determined that he or she was not entitled to an injunction, will pay to the other party all damages and costs which may be sustained by reason of the injunction. CPLR 6312(b); *Putter v. Singer*, 73 A.D.3d 1147, 1148 (2d Dep't 2010) ("While fixing the amount of an undertaking when granting a motion for a preliminary injunction is a matter within the sound discretion of the court, CPLR 6312(b) requires that the party seeking an injunction give an undertaking."); *Livas v. Mitzner,* 303 A.D.2d 381, 383 (2d Dep't 2003) (same). "The amount of the undertaking . . . must not be based upon speculation and must be rationally related to the damages the nonmoving party might suffer if the court later determines that the relief to which the undertaking relates should not have been granted." *Olympic Ice Cream Co., Inc. v. Sussman*, 151 A.D.3d 872, 874 (2d Dep't 2017) (quoting *Access Medical Group, P.C. v. Straus Family Capital Group, In*c., 44 A.D.3d 975, 975 (2d Dep't 2007)).

16

court has the discretion to dispense with the mandatory security requirement in the exercise of discretion where the applicant for the injunctive relief is a debtor, trustee or debtor in possession. *Halpert v Engine Air Serv.*, 212 F.2d 860 (2d Cir. 1954); *see also In re Carabetta Enterprises, Inc.*, 162 B.R. 399 (D. Conn. [Alan. H.W. Shiff, J.] 1993).

That rule does not apply here, however, because Jozefovic is not the debtor, the trustee or the debtor in possession. Thus, even though the order to show cause by which the interim relief was granted loosely refers to the injunction being sought on behalf of "defendants and third-party plaintiffs," which would include the bankruptcy debtor, HBL, the true applicant for the preliminary injunction here is Jozefovic, because the asset at issue here – Jozefovic's membership interest in Waterview – belongs to him alone. HBL has no stake in that interest. There is, therefore, no basis in this commercial case between two sophisticated parties upon which this Court can dispense with the security requirement against Jozefovic. For the reasons set forth in the Donnellan declaration, the amount of the bond should be $5.3 million. Donnellan dec., ¶ 20-25.

## CONCLUSION

For all of these reasons, WPH Properties respectfully requests that the Court deny defendants' motion for a preliminary injunction in its entirety and award such other relief as the Court deems just.

Dated: White Plains, New York
      November 11, 2021

                           Respectfully submitted,
                           **BINDER & SCHWARTZ**

              By:     /s/Eric B. Fisher
                    Eric B. Fisher
                    Lindsay A. Bush
              366 Madison Avenue, 6th floor
              New York, New York 10017
              Tel.: (212) 510-0708

17

**DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP**

By: _____/s/Alfred E. Donnellan_____
Alfred E. Donnellan
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Tel.: (914) 681-0200

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN,
FORMATO, FERRARA, WOLF & CARONE, LLP**

By: _____/s/Robert A. Spolzino_____
Robert A. Spolzino
81 Main Street, Suite 306
White Plains, New York 10601
Tel.: (914) 607-7010

*Counsel for plaintiff White Plains Healthcare Properties I, LLC and third-party defendants CCC Equities, LLC, Project Equity Consulting, The Congress Companies, Howard Fensterman and William Nicholson*

18