# EXHIBIT B

SUPREME COURT STATE OF NEW YORK

COUNTY OF WESTCHESTER: COMMERCIAL DIV.
----------------------------------------x
WHITE PLAINS HEALTHCARE PROPERTIES I,
LLC,
                        Plaintiffs,

                                              Index No.
          -against-                           60278/20

HBL SNF LLC, et al,
                        Defendants.
----------------------------------------x
                County Courthouse (Via Teams)
                111 Dr. Martin Luther King Blvd.
                White Plains, N.Y. 10601
                June 30, 2021


     B E F O R E :


                HON. GRETCHEN WALSH,
                      Justice
        A P P E A R A N C E S :


           DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR
           Attorneys for Plaintiffs
           One North Lexington Avenue
           White Plains, NY  10601
           BY: ALFRED DONNELLAN, ESQ.
           BY:  NELIDA LARA, ESQ.

           ABRAMS FENSTERMAN
           Attorneys for Plaintiffs
           81 Main Street
           White Plains, NY 10601
           BY: ROBERT SPOLZINO, ESQ.

           MICHELMAN & ROBINSON, LLP
           Attorneys for Defendants HBL SNF, Jozefovic & Neuman
           800 Third Avenue
           New York, NY 10022
           BY: JOHN GIARDINO, ESQ.

           WINDELS MARX
           Attorneys for Commercial Metropolitan Bank
           156 West 56 Street
           New York, NY  10019
           BY:  ROBERT MALATAK, ESQ.
                                    Elizabeth A. DeMasi
                                    Senior Court Reporter

21-07096-shl    Doc 7-2    Filed 11/11/21    Entered 11/11/21 13:18:05    Exhibit Exhibit
B - WPH Transcript from 6.30.21 hearing    Pg 3 of 12

Proceedings                                                          2

1                      THE COURT:  Good morning.

2                      So this is White Plains Health Care Properties

3        against HBL SNF, LLC.

4                      Appearances.  Please.

5                      MR. DONNELLAN:  Alfred Donnellan, Delbello,

6        Donnellan, Weingarten, Wise & Wiederkehr attorneys for

7        plaintiff.

8                      MS. LARA:  Nelida Lara, also Delbello Donnellan and

9        also for plaintiffs.

10                     MR. GIARDINO:  John Giardino, Michelman and

11       Robinson, attorneys for the defendants HBL SNF, Jozefovic

12       and Neuman.

13                     MR. MALATAK:  Robert Malatak, Windels Marx Lane &

14       Mittendorf, counsel for Metropolitan Commercial Bank.

15                     THE COURT:  Good morning, everybody.

16                     So, we are here on the Order to Show Cause filed by

17       HBL joined by Metropolitan to seek an injunction against the

18       foreclosure, sale that is scheduled for tomorrow by White

19       Plains Health Care Properties with regard to Mr. Jozefovic's

20       70 percent membership interest in another entity called

21       Waterview.

22                     I received a black line recently from Mr.

23       Donnellan.  You know, before we get into the Order to Show

24       Cause, I just want to see if there is any way of resolving

25       the issue via this letter of credit that now has been black

1    lined back to you Mr. Giardino.

2          MR. GIARDINO:  Well, I do think that perhaps we are

3    making some progress.  I think that we have no issue at all

4    having that letter of credit issue to support the payment of

5    rent, additional rent or any other charges.

6          The concern that we have about the black line that

7    Mr. Donnellan has submitted, is that it purportedly stands

8    for any default.  Of course this lawsuit is about alleged

9    defaults and a dispute about the defaults.

10          So the concern would be if we grant a letter of

11    credit, it stands in the place of the landlord's unilateral

12    claim that there is a default, we are bringing them in,

13    these very issues are in dispute.

14          So, I have no issue granting this letter of credit

15    to perform the way the $1.6 million rent security account

16    was intended to perform.

17          I am concerned that by expanding it to any alleged

18    defaults, we are not serving that purpose.  And I don't know

19    where we end up, once we have that letter of credit.

20          THE COURT:  Everything else you have no problem

21    with?

22          MR. GIARDINO:  If that letter of credit in the form

23    that Mr. Donnellan has proposed is limited to section 3.2,

24    rent payments, we will issue, we will get that letter of

25    credit issued.

Proceedings                                                        4

1              THE COURT:  Rent, additional rent.

2              MR. GIARDINO:  Rent, additional rent.  Any charges

3    due under Section 3.2, so.  We have no issues with that at

4    all.  That's what we propose to that.

5              MR. DONNELLAN:  Your Honor, the section of the

6    lease that provides for the $1.6 million in cash is not

7    limited to security for rent or additional rent.

8              I copied the language word for word out of the

9    letter of credit agreement that they did not do.  It uses

10   the words event of default.  Which is a defined term in the

11   lease and which is the term that's used on the letter of

12   credit.

13             THE COURT:  We can't come to an agreement, so I

14   will just decide the Order to Show Cause.  That's all.

15             All I am deciding right now is the TRO aspect of

16   it.  And I have read all the papers and I basically come

17   down on the fact that I don't think Mr. Jozefovic has

18   established a right to a TRO relief because I think that he

19   had the obligation to put the 1.6 million in the landlord's

20   rent account which did not occur and they have been trying

21   for some time now to enforce that right.  It's limited to

22   the 1.6.

23             It pains me because I think that this is just going

24   to make a bigger mess of things.  So I do wish that the

25   parties could come to some kind of an agreement with regard

1      to the letter of credit and not cause I think a pretty bad

2      domino effect, but I can't force the parties to agree.

3              And based on the papers that are before me, I don't

4      think Mr. Jozefovic has established a likelihood of success

5      on the merits with regard to his arguments that, you know,

6      that there wasn't a valid assignment here of his membership

7      interest.  You know, the argument about the operating

8      agreement, not permitting it, is overwritten by the fact

9      that we have both the company's signing you know the pledge

10     agreement, all of the members signing that other document

11     which clearly was in furtherance of that.

12             So, every single member was in the know and in

13     agreement that there would be this pledge with regard to Mr.

14     Jozefovic's interest in Waterview to secure the obligations

15     under the lease, which -- and the real obligation here where

16     there has been a default and he could have prevented all of

17     this from happening was the 1.6 million, once that got put

18     in the landlord security deposit that right to that, to

19     foreclose on that membership interest goes by the way side.

20             So, Mr. Donnellan, I hope that you're not going to

21     go beyond the 1.6 million in the sale tomorrow, if it

22     happens.  In terms of the bank, I have read everything

23     you've submitted to me.  And again, while you may have maybe

24     a security at this point with regard to your interests, I

25     can't invalidate what was transferred, you know, back in

1    whatever, 17.  And at that point what was transferred was an

2    intangible.

3            They totally know that they are subordinate to you,

4    that, you know, I know you're concerned because it is going

5    to create all kinds of other defaults, but as long as we get

6    more than your 3 million on your loan, I don't know how much

7    is outstanding and more than, you know.

8            I mean really all you care about is getting at

9    least 3 million tomorrow, right.  If you get your three

10   million even if there is a default you are whole, right, the

11   bank is whole?

12           MR. MALATAK:  I just, I assume so.  I just don't

13   know, your Honor, because I don't know what the indebtedness

14   is.  And this, I believe this is cross defaulted against

15   other obligations.

16           THE COURT:  I can't prevent them from exercising

17   their right.

18           MR. MALATAK:  Could I be heard?

19           THE COURT:  Sure.  You can be heard and I have read

20   everything.  And I have read that bankruptcy case again and

21   I just don't believe that this is not a commercially

22   reasonable sale for them to exercise their right to

23   foreclose on this intangible membership interest which was

24   intangible at the time that it was transferred to them.

25           MR. MALATAK:  But, your Honor, I think that, at the

1    time that it was transferred to them, it was an intangible

2    interest.  But it's no longer an intangible interest.  And I

3    don't think you can put that Jeannie back in the bottle.

4          Now, for example, the code does provide that, you

5    know, an LLC can opt in to Article 8 and in which case --

6          THE COURT:  I know.  But all he did, when he gave

7    that you interest, he was breaching everything that he had

8    agreed to do with White Plains Health Care, he had agreed

9    with White Plains Health Care under that collateral and

10   pledge agreement that he wouldn't be doing what he did with

11   Metropolitan Bank, so.

12         MR. MALATAK:  Well, I mean that's a separate issue.

13         THE COURT:  Well, it is an important issue, it is

14   an important issue.  I mean the bottom line is he has been

15   pledging the same collateral to I don't know to how many

16   people or how many entities.

17         MR. MALATAK:  I apologize, I cut you off.

18         THE COURT:  It's okay, go ahead.

19         MR. MALATAK:  You know at this point we are not

20   dealing with a general intangible any more.  We are dealing

21   with a security interest.

22         THE COURT:  Why does it completely eviscerate what

23   was transferred to them?  Why is that completely

24   eviscerated?  I don't see how it can be.

25         MR. MALATAK:  I am not saying that they no longer

Proceedings                                                    8

1      have an interest, but to the extent that they have an

2      interest, it is an interest in the security, not a general

3      intangible which does not exist any more because of the --

4              THE COURT:  I will let the Second Department decide

5      that.  I am not satisfied.

6              MR. MALATAK:  Well, in that regard, would your

7      Honor then, you know --

8              THE COURT:  I am going to strike out the TRO and

9      you guys can run down to the Appellate Division.  That's why

10     I am trying to work this out.  I would love to be able to

11     work it out so all this goes by the way side and we don't

12     have this horrible domino effect happening tomorrow.

13             But I can't bring the parties to an agreement for

14     whatever reason.  I've tried.  If we had dealt with this a

15     long time ago, we wouldn't be under the gun.

16             We didn't deal with it a long time ago, even though

17     I tried to have everyone get that 1.6 million put somewhere

18     where the plaintiff felt where what they had bargained for

19     was there and there was security there until the end of this

20     case.  And nobody took me up on that and now we are where we

21     are.

22             And if they can come to an agreement on this, which

23     I think that they should, with regard to this letter of

24     credit, then that would be great.

25             But I can't force them to come to an agreement and

1    thereby moot this whole Order to Show Cause.  I mean this

2    whole sale tomorrow.

3              MR. MALATAK:  Would you be amenable to a short stay

4    pending appeal?

5              THE COURT:  No, I am not.  You guys run to the

6    Appellate Division.  This is scheduled for tomorrow.  They

7    have expended a lot of money, this is the second time that

8    they have expended a lot of money trying to get the sale to

9    happen.

10             So, I am not going to stay it.  You can run to down

11   to the Appellate Division right now and you will probably

12   get a stay, which is fine.  I'm not going to feel bad about

13   it.  I am doing what I think is right and I don't think that

14   the bankruptcy case that you gave me is authoritative in

15   this situation.

16             So, it's just totally distinguishable.  That's

17   where I fall on this.

18             You didn't give me any other authority, I know I

19   read the UCC provisions you gave me and everything else and

20   I appreciate that.  But what was transferred to them was an

21   intangible and how they can't somehow then enforce their

22   right with this intangible because Mr. Jozefovic breached

23   his agreements with them and gave another entity a superior

24   lien, the only reason your lien is superior because they

25   messed up and didn't file their UCC financing statement.

1      That's where I land on this.

2              I totally get it, that you're going to run to the

3      Appellate Division and you need to do it and that's why I am

4      trying to give you time to do that.  Okay?

5              MR. GIARDINO:  Your Honor, if I may, I received

6      Mr. Donnellan's counter letter of credit language certainly

7      for joint -- I haven't even had a chance to present it to

8      the client.

9              THE COURT:  I understand that, Mr. Giardino, I have

10     to give people time to run to the Appellate Division.

11             MR. GIARDINO:  Okay.

12             THE COURT:  So you guys can keep trying to sort it

13     out and I hope you do, I hope you sort it out, because I

14     don't think what happens tomorrow is necessarily the right

15     way to go.

16             But, I'm not staying it.  Okay.

17             Anybody else?  So basically it is fully submitted

18     for today, right?

19             MR. SPOLZINO:  Correct your Honor.

20             THE COURT:  So today's return date nobody needs to

21     put in any more papers, right, we are all done?

22             MR. MALATAK:  Yeah.  You received the bank's papers

23     this morning?

24             THE COURT:  Yes, there is a certificate, you show

25     that there is a certificate, right.

21-07096-shl    Doc 7-2    Filed 11/11/21    Entered 11/11/21 13:18:05    Exhibit Exhibit
B - WPH Transcript from 6.30.21 hearing    Pg 12 of 12

Proceedings                                                          11

1            MR. MALATAK:  Yes.

2            THE COURT:  Got it.  All right.  Sorry, I couldn't

3    help everybody.  I tried.

4            Take care.

5            MR. GIARDINO:  Thank you, your Honor.

6            MR. MALATAK:  Thank you.

7              ** *** **

8            Certified to be a true and accurate transcription

9    of the stenographic notes.

10           *Elizabeth DeMasi*

11           Elizabeth DeMasi, CSR

12           Senior Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25