# Exhibit 1 to

# Lara Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,<br><br>Plaintiff,<br><br>– against –<br><br>HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER JOZOFOVIC and MARK NEUMAN,<br><br>Defendants and Third-Party Plaintiff,<br><br>– against –<br><br>CCC EQUITIES, LLC, PROJECT EQUITY CONSULTING, THE CONGRESS COMPANIES, HOWARD FENSTERMAN, and WILLIAM NICHOLSON,<br><br>Third-Party Defendants. | Removed from the Supreme Court of the State of New York, Westchester County<br><br>21 Civ. 9048 (PMH)<br><br>**REPLY DECLARATION OF ALFRED E. DONNELLAN** |

Pursuant to 28 U.S.C. § 1746, Alfred E. Donnellan declares as follows:

1.    I am a member of the law firm of DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, lead counsel for plaintiff White Plains Healthcare Properties I, LLC ("WPH Properties") and third-party defendants, CCC Equities, LLC, Project Equity Consulting, The Congress Companies, Howard Fensterman and William Nicholson (collectively, "third-party defendants").

2.    I submit this reply declaration in further support of the motion of WPH Properties and third-party defendants for an order granting summary judgment in favor of WPH Properties for the relief demanded in the complaint and dismissing the counterclaims and third-party claims asserted by defendants/third-party plaintiffs, HBL SNF, LLC ("HBL"), Lizer Jozefovic ("Jozefovic") and Mark Neuman (collectively, "defendants").

3.    The defendants' assert in their brief in opposition to summary judgment that the

January 7, 2020 notice of default signed by me -- as well as by Joshua Roccapriore as authorized agent of WPH Properties -- is a "nullity. A copy of the fully executed notice of default including delivery receipts is attached as exhibit A. I separately emailed copies of the notice of default to Jozefovic and Mark Zafrin ("Zafrin"), who was then counsel to HBL and Jozefovic.

4.    The defendants claim that I was "an unauthorized and unknown attorney" at the time of the notice of default. Memorandum of law in opposition to motion for summary judgment and in support of motion to strike dated October 25, 2021, at 17. This is false.

5.    In fact, Jozefovic and HBL knew prior to January 7, 2020 that I was counsel to WPH Properties and was authorized to act as counsel in matters concerning the Lease. In my capacity as counsel to WPH Properties, I had extensive dealing with Zafrin and his client Jozefovic prior to January 7, 2020. I negotiated with them the November 20, 2019 letter of intent between HBL and WPH Properties, which set forth the terms of an attempted amicable resolution of HBL's defaults under the Lease.

6.    As counsel to WPH Properties, I attended a number of meetings with Zafrin and Jozefovic in the conference room at my law firm to negotiate the letter of intent during the Fall of 2019. During that same time period, I had numerous phone calls and exchanged emails with Zafrin concerning the letter of intent. And on behalf of WPH Properties, I worked with Zafrin and Jozefovic to finalize and have signed the letter of intent. Attached as exhibit B is select correspondence between Zafrin and myself in November 2019 concerning the letter of intent, the Lease and other issues.

7.    I also negotiated with Zafrin a "pre-negotiation agreement" dated October 25, 2019 between HBL and WPH Properties to facilitate discussions between the parties concerning a possible resolution of differences between them with respect to their rights and obligations under

2

the Lease. Those discussions culminated in the letter of intent. A copy of the pre-negotiation agreement is attached as exhibit C.

WHEREFORE, I respectfully request that this Court grant summary judgment for liability and damages in favor of WPH Properties and against HBL, Jozefovic and Neuman in the amount of $111,420,213.50 and dismiss the defendants' counterclaims and third-party claims.

Dated:       White Plains, New York
             November 5, 2021

_____
Alfred E. Donnellan

3

# Exhibit A to

# Donnellan Reply Declaration

ORIGIN ID:NESA   (914) 681-0200
MARISA WARSHAW
DELBELLO DONNELLAN WEINGARTEN WISE
1 N LEXINGTON AVE

SHIP DATE: 07JAN20
ACTWGT: 0.19 LB
CAD: 114675706/WSXI3400

WHITE PLAINS, NY 10601
UNITED STATES US

BILL SENDER

TO   **MR. MARK NEUMAN**
    **MR. MARK NEUMAN**
    **22 LYNCREST DR**

    **MONSEY NY 10952**
    (914) 681-0200        REF: 0191960-001 MW 1/7/2020
    INV:
    PO:                   DEPT:



FedEx.
Express

**E**

**WED - 08 JAN 8:00P**

TRK#  **7794 9844 8443**       **STANDARD OVERNIGHT**
0201                                    **RES**

                                        **10952**
**EH PSBA**              NY-US  **SWF**





**Marisa Warshaw**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Wednesday, January 8, 2020 1:37 PM |
| **To:** | Marisa Warshaw |
| **Subject:** | FedEx Shipment 779498448443 Delivered |

# Your package has been delivered

## Tracking # 779498448443

Ship date:
Tue, 1/7/2020

Marisa Warshaw
DelBello Donnellan Weingarten
Wise
White Plains, NY 10601
US

Delivered

Delivery date:
Wed, 1/8/2020 1:34 pm

Mr. Mark Neuman
Mr. Mark Neuman
22 LYNCREST DR
MONSEY, NY 10952
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 779498448443 |
| **Status:** | Delivered: 01/08/2020 1:34 PM Signed for By: Signature not required |
| **Reference:** | 0181980-001 MW 1/7/2020 |
| **Signed for by:** | Signature not required |
| **Delivery location:** | MONSEY, NY |
| **Delivered to:** | Residence |
| **Service type:** | FedEx Standard Overnight® |
| **Packaging type:** | FedEx® Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| | Residential Delivery |
| **Standard transit:** | 1/8/2020 by 8:00 pm |

1

ORIGIN ID:NESA        (914) 681-0200
MARISA WARSHAW
DELBELLO DONNELLAN WEINGARTEN WISE
1 N LEXINGTON AVE

WHITE PLAINS, NY 10601
UNITED STATES US

SHIP DATE: 07JAN20
ACTWGT: 0.10 LB
CAD: 114675706/WSXI3400

BILL SENDER

TO  **MR. LIZER JOSEFOVIC, GUARANTOR, IND**
   **MR. LIZER JOSEFOVIC, GUARANTOR, IND**
   **53 MARINER WAY**

   **MONSEY NY 10952**
   (914) 681-0200          REF: 0191960-001 MW 1/7/2020
   INV:
   PO:                     DEPT:





FedEx.
Express

**WED - 08 JAN 8:00P**

**STANDARD OVERNIGHT**

TRK#  **7794 9836 3223**
0201

**RES**

**10952**
NY-US  **SWF**

**EH PSBA**




COPY

**Marisa Warshaw**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Wednesday, January 8, 2020 10:37 AM |
| **To:** | Marisa Warshaw |
| **Subject:** | FedEx Shipment 779498363223 Delivered |

# Your package has been delivered

## Tracking # 779498363223

Ship date:
Tue, 1/7/2020
Marisa Warshaw
DelBello Donnellan Weingarten
Wise
White Plains, NY 10601
US

Delivered

Delivery date:
Wed, 1/8/2020 10:35
am
**Mr. Lizer Josefovic,**
**Guarantor, Ind**
Mr. Lizer Josefovic, Guarantor,
Ind
53 Mariner Way
MONSEY, NY 10952
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | <u>779498363223</u> |
| Status: | Delivered: 01/08/2020 10:35 AM Signed for By: Signature not required |
| Reference: | 0181960-001 MW 1/7/2020 |
| Signed for by: | Signature not required |
| Delivery location: | Monsey, NY |
| Delivered to: | Residence |
| Service type: | FedEx Standard Overnight® |
| Packaging type: | FedEx® Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Deliver Weekday |
| | Residential Delivery |
| Standard transit: | 1/8/2020 by 8:00 pm |

1

ORIGIN ID:NESA      (914) 681-0200
MARISA WARSHAW
DELBELLO DONNELLAN WEINGARTEN WISE
1 N LEXINGTON AVE

WHITE PLAINS, NY 10601
UNITED STATES US

SHIP DATE: 07JAN20
ACTWGT: 0.19 LB
CAD: 114675706/WSXI3400

BILL SENDER

TO **MR. LIZER JOSEFOVIC**
**HBL SNF, LLC**
**1280 ALBANY POST RD**

**CROTON ON HUDSON NY 10520**
(914) 681-0200         REF: 0181960-001 MW 1/7/2020
INV:
PO:                          DEPT:




**FedEx**
Express

**WED - 08 JAN 3:00P**
**STANDARD OVERNIGHT**

TRK# 0201  **7794 9823 5404**

**EH ANIA**            **10520**
                    NY-US  **SWF**





**Marisa Warshaw**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Wednesday, January 8, 2020 9:33 AM |
| **To:** | Marisa Warshaw |
| **Subject:** | FedEx Shipment 779498235404 Delivered |

# Your package has been delivered

## Tracking # 779498235404

Ship date:
Tue, 1/7/2020

Marisa Warshaw
DelBello Donnellan Weingarten
Wise
White Plains, NY 10601
US

Delivery date:
Wed, 1/8/2020 9:27 am

Mr. Lizer Josefovic
HBL SNF, LLC
1280 ALBANY POST RD
CROTON ON HUDSON, NY
10520
US

**Delivered**

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | 779498235404 |
| Status: | Delivered: 01/08/2020 09:27 AM Signed for By: Signature Release on file |
| Reference: | 0181960-001 MW 1/7/2020 |
| Signed for by: | Signature Release on file |
| Delivery location: | CROTON ON HUDSON, NY |
| Service type: | FedEx Standard Overnight® |
| Packaging type: | FedEx® Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Deliver Weekday |
| Standard transit: | 1/8/2020 by 3:00 pm |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 8:32 AM CST on 01/08/2020.

All weights are estimated.

1

ORIGIN ID:NESA      (914) 681-0200
MARISA WARSHAW
DELBELLO DONNELLAN WEINGARTEN WISE
1 N LEXINGTON AVE

WHITE PLAINS, NY 10601
UNITED STATES US

SHIP DATE: 07JAN20
ACTWGT: 0.19 LB
CAD: 114675766/WSXI3400

BILL SENDER

TO    **MR. GERALD NEUMAN**
      **C/O HBL SNF, LLC**
      **1280 ALBANY POST RD**

      **CROTON ON HUDSON NY 10520**
(914) 681-0200          REF: 0191960-001 MW 1/7/2020
INV:
PO:                              DEPT:




FedEx
Express

E

**WED - 08 JAN 3:00P**

**STANDARD OVERNIGHT**

TRK#
0201    **7794 9862 7521**

**EH ANIA**                    **10520**
                          NY-US  **SWF**





**Marisa Warshaw**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Wednesday, January 8, 2020 9:32 AM |
| **To:** | Marisa Warshaw |
| **Subject:** | FedEx Shipment 779498627521 Delivered |

# Your package has been delivered

## Tracking # 779498627521

Ship date:
Tue, 1/7/2020

Marisa Warshaw
DelBello Donnellan Weingarten
Wise
White Plains, NY 10601
US

Delivered

Delivery date:
Wed, 1/8/2020 9:27 am

Mr. Gerald Neuman
c/o HBL SNF, LLC
1280 ALBANY POST RD
CROTON ON HUDSON, NY
10520
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | 779498627521 |
| Status: | Delivered: 01/08/2020 09:27 AM Signed for By: Signature Release on file |
| Reference: | 0181960-001 MW 1/7/2020 |
| Signed for by: | Signature Release on file |
| Delivery location: | CROTON ON HUDSON, NY |
| Service type: | FedEx Standard Overnight® |
| Packaging type: | FedEx® Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Deliver Weekday |
| Standard transit: | 1/8/2020 by 3:00 pm |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 8:32 AM CST on 01/08/2020.

All weights are estimated.

1

ORIGIN ID:NESA     (914) 681-0200
MARISA WARSHAW
DELBELLO DONNELLAN WEINGARTEN WISE
1 N LEXINGTON AVE

WHITE PLAINS, NY 10601
UNITED STATES US

SHIP DATE: 07-JAN20
ACTWGT: 0.19 LB
CAD: 114675706/WSXI3400

BILL SENDER

TO   **MARK ZAFRIN, ESQ.**
**MICHELMAN & ROBINSON**
**800 3RD AVE**
**24TH FLOOR**
**NEW YORK NY 10022**
(914) 681-0200        REF: 0191960-001 MW 1/7/2020
INV:
PO:                    DEPT:





**FedEx.**
Express

**E**



**WED - 08 JAN 3:00P**
**STANDARD OVERNIGHT**

TRK#
0201   **7794 9853 9658**

**E3 JRBA**

10022
NY-US **EWR**



**Marisa Warshaw**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Wednesday, January 8, 2020 9:32 AM |
| **To:** | Marisa Warshaw |
| **Subject:** | FedEx Shipment 779498539658 Delivered |

# Your package has been delivered

## Tracking # 779498539658

Ship date:
Tue, 1/7/2020

Marisa Warshaw
DelBello Donnellan Weingarten
Wise
White Plains, NY 10601
US

Delivery date:
Wed, 1/8/2020 9:27 am

Mark Zafrin, Esq.
Michelman & Robinson
24th Floor
800 3RD AVE
NEW YORK, NY 10022
US

**Delivered**

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | <u>779498539658</u> |
| Status: | Delivered: 01/08/2020 09:27 AM Signed for By: E.ELAINE |
| Reference: | 0181960-001 MW 1/7/2020 |
| Signed for by: | E.ELAINE |
| Delivery location: | NEW YORK, NY |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx Standard Overnight® |
| Packaging type: | FedEx® Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Deliver Weekday |
| Standard transit: | 1/8/2020 by 3:00 pm |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 8:32 AM CST on 01/08/2020.

# DELBELLO DONNELLAN WEINGARTEN
# WISE & WIEDERKEHR, LLP

**Alfred E. Donnellan**
**Partner**
aed@ddw-law.com

COUNSELLORS AT LAW

THE GATEWAY BUILDING
ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NEW YORK 10601
(914) 681-0200
FACSIMILE (914) 684-0288

Connecticut Office
1111 SUMMER STREET
STAMFORD, CT 06905
(203) 298-0000

January 7, 2020

BY EMAIL lizerj@watersedgeusa.com
BY FEDERAL EXPRESS

HBL SNF, LLC
1280 Albany Post Road
Croton-on-Hudson, NY 10520
Attn: Lizer Josefovic

## NOTICE OF DEFAULT
## AND LANDLORD'S ELECTION TO TERMINATE LEASE AND
## ACCELERATE ALL RENTS DUE FOR THE BALANCE OF THE LEASE TERM

### PREMISES:  116-120 Church Street, White Plains, New York ("the Leased Premises")

Mr. Josefovic:

We are attorneys for your Landlord, White Plains Health Care Properties I, LLC.

**PLEASE TAKE NOTICE**, that HBL SNF, LLC ("HBL") is in material violation of the provisions of its November 19, 2015 Lease, for the above referenced premises ("the Lease"), and the November 20, 2019 Letter of Intent (the "LOI"), the terms of which are in full force and effect (the "LOI"), and is in **DEFAULT** thereof, as follows:

1.  Lease Section 3.2, and LOI Para 6) d) ii) – Payment of Rent:  HBL has failed or refused to pay the following Rent:
    a.  Rent due for Sept. 30, 2019 – Dec. 31, 2019, totaling $10,831.79.
    b.  Additional Rent due for Jan. 01 - 31, 2020, due Jan. 1, 2020, totaling $40,000.00.

2.  Lease Section 4.2, and LOI Para 6) b) - Payment of Real Estate Taxes: HBL has failed to pay the following Real Estate Tax payments:
    a.  Real Estate Taxes for the period 07/01/19 - 12/31/19, specifically the Tenant's prorated portion thereof, (exclusive of late fees, costs, penalties and interest per municipal regulations and per the Lease), totaling $61,456.39.
    b.  Real Estate Taxes for the period Jan. 01, 2020 – June 30, 2020 totaling $121,587.12

1569918
0181960-001

HBL SNF, LLC
Attn: Lizer Josefovic
January 7, 2020
Page 2

3. LOI Para 6) b), and Lease Section 5.2 – Payment of Utility Deposits and Municipal Maintenance Escrows: HBL has failed to pay the following Utility Deposits and Municipal Maintenance Escrows:
   a. Utility Deposits totaling $60,356.10
   b. Municipal Maintenance Escrows totaling $5,500.00

4. Lease Section 4.1, LOI Section 6) j) - Utility Charges: HBL has failed to pay the following Utility Charges:
   a. ConEdison invoice paid by the Landlord to avoid power shutoff, in the amount of $2,972.84.

5. Lease Article VI, including Section 6.2; LOI Para 6) h) – Delivery of Insurance Certificates.
   a. HBL has failed to deliver certificates of insurance to Landlord in accordance with Article VI and Section 6.2 of the Lease.

6. Lease Section 7.4 (g) and (j) – Reporting and other Obligations:
   a. HBL has failed or refused to deliver to the Landlord all Medicare, Medicaid and other provider agreements and reimbursement rate sheets for the Facility.
   b. HBL has failed or refused to deliver to the Landlord all Medicare, Medicaid and other provider updated reimbursement rate sheets for the Facility.

7. Lease Section 7.4 (a) – Reporting and other Obligations:
   a. HBL has failed or refused to deliver to the Landlord the required financial reporting required under the Lease.

8. Lease Section 7.4 (B) (vi) – Reporting and other Obligations:
   a. HBL has failed or refused to deliver to the Landlord the required written reports providing an operational overview of significant events and circumstances at the Facility during each prior month of the Term of the Lease.

9. Lease Section 7.1(a)(ii), as amended by LOI Para 6) d) i) – Security Deposit.
   a. HBL has failed or refused to deliver to the Landlord by December 1, 2019 the security deposit of $1,000,000.00, to secure full and timely payment and performance of Tenant's obligations under the Lease.

10. Lease Section 7.1(a)(iii), as amended by LOI Para 6) e) – Additional Security Deposit.
    a. HBL has failed to deliver the blocked account agreement prohibiting any liquidation of the of $1,600,000.00 held by JPMorgan Chase Bank, N.A. in the controlled account number ███████7272.

11. Lease Section 4.1, 3.2 (c), and 9.1 (b) – Payment of Late Fees and Costs
    a. HBL has failed to pay late fees and costs related to the above failures to pay its obligations under the Lease and the LOI in the timeframes required thereunder, as set forth in the attached accounting, totaling $23,425.09

HBL SNF, LLC
Attn: Lizer Josefovic
January 7, 2020
Page 3

A true and accurate accounting of the amounts due and owing under the Lease and the LOI is attached herewith.

By reason of the aforementioned material Defaults under the Lease and the LOI, the Landlord, hereby exercises its right under Section 16.1 of the Lease to terminate the Lease as well as Tenant's right of possession of the Leased Premises, effective January 13, 2020 at 5.00 PM NYC time.

**PLEASE TAKE FURTHER NOTICE**, that, in accordance with Section 16.1 of the Lease, all rent for the balance of the term of the Lease is accelerated, and pursuant to said lease provision, HBL is obligated to pay the Landlord $84,073,989.91, being the present value of such accelerated rent, discounted at the rate of 6% *per annum*.

Landlord reserves all other rights and remedies at law or in equity as against the Tenant, all guarantors of the Lease, and the holders of any funds allocated or designated for Landlord's benefit.

Landlord further reserves all rights arising from the Collateral Assignment and Pledge of Membership Interest and Security Agreement dated August 11, 2017 ("the Pledge"), including but not limited to all rights to enforce the Pledge through a private or public sale of the assignor's interest in Waterview Acquisition I, LLC or through a judicial foreclosure of the assignee's security interest therein.

Very truly yours,

ALFRED E. DONNELLAN

**AUTHORIZED AND APPROVED:**

White Plains Health Care Properties I, LLC

Joshua Roccapriore
Authorized Representative

cc:   By Email (lizerj@watersedgeusa.com) & Federal Express
      Lizer Josefovic, Guarantor, Individually
      53 Mariner Way
      Monsey, NY 10952

1569918
0181960-001

HBL SNF, LLC
Attn: Lizer Josefovic
January 7, 2020
Page 4

By Email (markn@epicmgt.com) & Federal Express
Mark Neuman, Guarantor, Individually
22 Lyncrest Drive
Monsey, NY 10952

By Email (mzafrin@mrllp.com) & Federal Express
Michelman & Robinson
800 Third Avenue, 24th Floor
New York, NY 10022
*Attn: Mark Zafrin, Esq.*

By Federal Express
Gerald Neuman, Individually
c/o HBL SNF, LLC
1280 Albany Post Road
Croton-on-Hudson, NY 10520

1569918
0181960-001

**WHITE PLAINS HEALTH CARE PROPERTIES I, LLC**
c/o **THE CONGRESS COMPANIES**
General Contractors, Construction Managers, Property Managers, Development Services
BOSTON:
West Peabody Executive Center
2 Bourbon Street
Peabody, MA 01960
Phone:  978-535-6700
Fax:    978-535-6701

7-Jan-19

## NOTICE OF AMOUNTS AND DELIVERABLES DUE UNDER LEASE & LOI of 11/20/19

Gentlemen: Pursuant to the Lease and the LOI dated November 20, 2019, the following are due:

| | AMOUNTS PAYABLE | Due Date | Amt Due | Amounts Paid | Amt Past Due |
|---|---|---|---|---|---|
| 1 | Rent January, 2020 (See Note 1 Below) | 01/01/20 | $ 546,096.50 | $ 506,096.50 | $ 40,000.00 |
| 2 | Rent 9/30/19 - 11/30/19 | 12/01/19 | $ 10,831.79 | $ - | $ 10,831.79 |
| | SUBTOTAL RENT AND ADDITIONAL RENT: | | $ 556,928.29 | $ 506,096.50 | $ 50,831.79 |
| 3 | RE Taxes  7/1/19-12/31/19, Tenant portion: 09/30/19-12/31/19 | 12/01/19 | $ 61,456.39 | $ - | $ 61,456.39 |
| 4 | RE Taxes for the period 1/1/20 - 6/30/20 | 12/01/19 | $ 121,587.12 | $ - | $ 121,587.12 |
| | SUBTOTAL REAL ESTATE TAXES | | $ 183,043.51 | $ - | $ 183,043.51 |
| 5 | Utility Deposits | 12/01/19 | $ 60,356.10 | $ - | $ 60,356.10 |
| 6 | Municipal Deposits | 12/01/19 | $ 5,500.00 | $ - | $ 5,500.00 |
| 7 | ConEdison Electric Invoice | 12/17/19 | $ 2,972.84 | $ - | $ 2,972.84 |
| | *Subtotal* | | $ 68,828.94 | $ - | $ 68,828.94 |
| | *TOTAL RENT, RE TAXES, & OTHER* | | $ 808,800.74 | $ 506,096.50 | $ 302,704.24 |
| 8 | Security Deposit 1st payment | 12/01/19 | $ 1,000,000.00 | $ - | $ 1,000,000.00 |
| | *TOTAL AMTS DUE EXCLUDING LATE FEES & COSTS* | | $ 1,808,800.74 | $ 506,096.50 | $ 1,302,704.24 |
| 9 | Interest on past due real estate taxes on a per-diem basis: | 12/15/19 | $ 3,039.68 | $ - | $ 3,039.68 |
| 10 | Late Fees of 5% on Items 1,2,3,5,6,7 | 12/15/19 | $ 9,055.86 | $ - | $ 9,055.86 |
| 11 | Interest on Items 1,2,3,5 & 6 at the Overdue Rate (Prime+5%) | 12/15/19 | $ 11,329.55 | $ - | $ 11,329.55 |
| | *TOTAL LATE FEES AND COSTS* | | $ 23,425.09 | $ - | $ 23,425.09 |
| | *TOTAL AMOUNTS DUE* | | $ 1,832,225.83 | $ 506,096.50 | $ 1,326,129.33 |

**ADDITIONAL NOTICE OF ITEMS DUE: As required per the Lease and LOI , please provide the following:**

1  Notice is hereby made to that Jan. 2020 & all subsequent Rent shall be due in the
amount of:  $546,096.50, calculated as: $506,096.50 rent plus $40,000.00 additional rent                    *2nd Notice*

2  Notice is hereby made to provide all Medicare and Medicaid provider
Agreements and rates.                                                                                              *2nd Notice*

3  Notice is hereby made to provide Annual Budget, Capital Expenditures, Operating
Budget, Annual Financial Reporting, monthly financial reporting Financial
Reporting, Variance Reporting, Unaudited Financial Reports

4  Notice is hereby made to provide per a written report of significant events at the
facility including:  Copies of all documents, reports. licenses and certificates
from NY DOH pertaining to the Operations of the Facility                                                           *2nd Notice*

5  Notice is hereby made to  provide: Evidence of Insurance, including all
required coverages under the lease, and all additional insureds.                                                   *2nd Notice*

# Exhibit C to

# Donnellan Reply Declaration

## PRE-NEGOTIATION AGREEMENT

AGREEMENT made this 25th day of October 2019, by and between White Plains Health Care Properties I, LLC ("White Plains Health") and HBL SNF, LLC ("HBL") (together "the Parties").

WHEREAS, White Plains Health and HBL were parties to a certain lease dated November 19, 2015 ("Lease") concerning the premises at 116-120 Church Street, White Plains, New York ("the Premises");

WHEREAS, on October 17, 2019, White Plains Health served HBL with a certain Notice of Default and Landlord's Election to Terminate Lease and Accelerate All Rents Due for the Balance of the Lease Term dated October 17, 2019 ("the Notice");

WHEREAS, the Parties desire to enter into discussions (the "**Discussions**") concerning a possible resolution of differences between them with respect to their rights and obligations under the Lease and the Notice. The Parties have agreed to enter into the Discussions on the terms and conditions set forth in this Pre-Negotiation Agreement (the "**Agreement**") which: (a) when executed and delivered by the Parties will constitute a binding agreement between the Parties with respect to the Discussions; and (b) will not be modified except by a written agreement executed and delivered by the Parties.

NOW, THEREFORE, in consideration of the mutual agreements, covenants and provisions contained herein, the adequacy and receipt of which are hereby acknowledged, the Parties agree as follows:

1. <u>Discussions</u>. The Parties have commenced or intend to commence the Discussions concerning the potential resolution of issues between them arising under the Lease and the Notice on terms agreeable to the Parties. The Parties agree that they may each terminate the Discussions at any time, in such Party's absolute discretion, for any reason or for no reason, and without liability of any kind.

2. <u>No Obligation/No Waiver</u>. The Parties agree that neither party will incur any obligation or liability or waive any rights, remedies, claims and/or defenses by virtue of the commencement, continuance or termination of the Discussions, or the passage of time associated with the Discussions unless and until a Settlement Agreement is executed and delivered by the Parties, and then only to the extent provided in the Settlement Agreement.

3. <u>The Discussions are Deemed Confidential and Not Admissible in Judicial or Quasi-Judicial Proceedings</u>. The parties agree that the Discussions shall be deemed to be "**Confidential Information**", and shall not be (i) filed with any court; or (ii) otherwise made public or disclosed to any individual or entity other than those specified herein without prior written consent of all Parties. Confidential Information shall not be disclosed in any way to any person or entity other than: on behalf of a Party, any of

their members, directors, officers, employees, advisors, or other agents who need to know such information solely for the purpose of evaluating or negotiating any aspect of the potential settlement and counsel for the Parties. The Parties agree that they will ensure that each of their representatives to whom the Confidential Information is disclosed shall be aware of the confidentiality obligations under this agreement.

4. <u>Advice of Counsel.</u> Each Party hereby acknowledges that this is a legally binding agreement that might affect such Party's rights. Each represents to the other that it has received legal advice from independent, competent counsel of its choice regarding the meaning and legal significance of this Agreement.

5. <u>Judicial Interpretation</u>. This Agreement will be governed by and construed in accordance with the law of the State of New York. No presumption that the terms of a document will be more strictly construed against the party who prepared the same will be applied in construing this Agreement.

6. <u>Construction.</u> Paragraph headings used in this Agreement are for convenience only and will not be used to interpret any term of this Agreement.

7. <u>Authority.</u> Each Party executing this Agreement represents that such Party has the full authority and legal power to do so.

8. <u>Survival.</u> The provisions of this Agreement will survive the termination of the Discussions.

9. <u>Non-Waiver/No Tolling.</u> Notwithstanding anything to the contrary contained in this Agreement, nothing herein shall be deemed to waive or diminish any of the Parties' claims or defenses, or to toll any dates, deadlines or time periods contained in the Notice.

10. <u>Modifications.</u> This Agreement may be changed, waived, modified or terminated only by written and executed instrument signed by all Parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first set forth above.

White Plains Health Care Properties I, LLC

By: _____
Name: _____
Title: _____


HBL SNF, LLC

By: _____
Name: _____
Title: _____

# Exhibit B to

# Donnellan Reply Declaration

# DELBELLO DONNELLAN WEINGARTEN
## WISE & WIEDERKEHR, LLP

**Alfred E. Donnellan**
Partner
aed@ddw-law.com

COUNSELLORS AT LAW

THE GATEWAY BUILDING
ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NEW YORK 10601
(914) 681-0200
FACSIMILE (914) 684-0288

Connecticut Office
1111 SUMMER STREET
STAMFORD, CT 06905
(203) 298-0000

November 7, 2019

Mark Zafrin, Esq.
Michelman & Robinson, LLP
800 Third Avenue, 24th Floor
New York, New York 10022

   **Re: *White Plains Healthcare Properties with HBL-SNF, LLC ("HBL")***

Dear Mark:

  This is in response to your November 5, 2019 letter. With respect to certain statements contained therein, please be advised as follows:

1. As to your statement: *"We are trying to find a way to pay rent to your client, however at this time due to the inability of the Landlord to obtain a permanent CO the conditions under which my client could rationally pay rent or even be obligated to pay rent do not exist."*

   The plain words of the Lease are clear, the Commencement Date is conditioned upon only "(i) the date of issuance of a permanent or temporary Certificate of Occupancy for the Facility and (ii) the date that New York State Department of Health (hereinafter sometimes, "DOH") determines that the Landlord's Work is sufficiently complete as constructed (but not necessarily the Tenant's operations) to accept patients...". The landlord delivered a temporary C of O on August 22, 2019. There is no requirement for Permanent C of O in the Lease. Apparently DOH now wants this for the Tenant's operations which are explicitly excluded from the Landlord's obligations under the lease and as to the Date of Commencement.

2. *"At this point the Department of Health ("DOH") has determined that the Landlord's Work is not "sufficiently complete as constructed to accept patients" Annexed hereto is the final email from Chris Chow where he states that he cannot issue an operating certificate until the DOH receives a copy of the permanent CO. The DOH has taken the position that as soon as they get the CO, everything will start falling into place."*

   This is simply not true. The Department was clear that the building was "sufficiently complete as constructed (but not necessarily the Tenant's operations)" (Lease Section 3.1 (a)) on 09/30/19, as per Chris Chow's email of that date, and as per the Architect's Certification.

It was Tenant who, in bad faith, withheld the certification to DOH until October 23, 2019. He did so, as he told Mr. Nicholson on October 3, to try to avoid the payment of Rent. The permanent C of O is required for the Tenant's *operations* (the Tenant's Operating Certificate), as per Chow's email of 09/30/19.

Further, the email string that you provided clearly shows that neither your client's DOH consultant Andrew Blatt of Pinnacle, nor even Chris Chow of DOH knew that the TCO would not now suffice for your client's operations. Mr. Blatt did not even know what provisional approval was (a term that is nowhere referenced in the Lease). The email that you provided clearly display the Tenant and its consultants not knowing what they needed to get their own operations approved by DOH. This is on the Tenant not the Landlord.

No one knew that DOH decided to ask for a Permanent C of O (vs a TCO). It is it not required in the Lease. Neither your client and nor its professionals were aware of this apparent change in DOH's procedures. However, since it impacts "the Tenant's operations" (Lease Section 3.1 (a)) your client is desperately attempting to shift this responsibility to the Landlord.

3. As to the statement: *"Mr. Nicholson told my client that your partner Mark Weingarten will be at the Building Department today and should give us some clarity as to when the permanent CO will be issued. Should the CO be issued today and given to the DOH we have told you on more than one occasion that we will be in position to pay rent and start admitting patients in December."*

This is not true. Mr. Nicholson did not tell you client that "Mark Weingarten will be at the Building Department today". Mr. Nicholson told your client that that Mr. Weingarten would reach out to the people at City Hall to try to help expedite the Permanent C of O, for your client's operations needs.

Further, Mr. Nicholson was clear with your client that he should review the Lease which in plain terms says "(*but not necessarily the Tenant's operations*)" as to the criteria for the Commencement Date and payment of Rent.

Mr. Nicholson offered to help your client accomplish what was needed for its operations with DOH; but was clear at all times that the Landlord's criteria under the Lease Commencement had been met. And Mr. Nicholson demanded the November rent.

4. As to your request for the costs of the project:

Your October 31, 2019 4:22 PM email requested "The final cost certification".

Your November 1, 2019 5:29 PM email clarified that it was not in fact "the final cost certification" but rather "a statement to show what was the total cost of the building, land, hard construction debt service etc.". We are working on this now and will forward that to you within 24 hours.

5. As to *"a series of emails and attachments which demonstrate that the punch list is far from complete and that there are clearly numerous loose ends to be tied up by our respective clients and the building needs to become truly ready for occupancy under the punch list.",* and as to the numerous punchlist attached to your November 5, 20019 12:52 PM email:

This attempt to create the illusion that the building is not fit for occupancy is futile, for the following reasons: The documents you transmitted, while voluminous are virtually all irrelevant and outdated. Your client's physical plant and management personnel are well aware of this. Specifically:

- You transmitted the following punchlists
  o  May 5, 2019 Floor 2 patient rooms Backpunch
  o  May 5, 2019 Floor 3 Patient Rooms Backpunch
  o  May 5, 2019 Floor 5 Common and Staff Areas Backpunch
  o  May 5, 2019 Floor 3-4 Common and Staff Areas Backpunch

  These punchlists are long completed, as your client's staff is fully aware. The futility of transmitting what your client knows were really rolling Pre-punch tracking lists compiled as far back as May 2019, which have long been completed and which we were patent enough to share with your Client's personnel, is transparent.

  A Con Ed notice your file "white plains 11052019". This is the result of Con Ed's equipment mis- functioning. It has nothing to do with the Landlord's work. We are addressing this, notwithstanding that we have no obligation to do so under the Lease, since the Lease has commenced and we delivered the keys to the Tenant. Notwithstanding, we had ConEd complete the repair/replacement of their gas regulators today for you. We then performed bleeding the gas lines and restarting all equip with our licensed plumbers and HVAC techs, including gas boilers and hot water heater. This is not covered under your warranties, since the Work we performed for you it is the result of your utility provider's equipment. We will send you an invoice for the costs of this building maintenance once the costs are compiled.

- Punchlist printed on November 1, 2019 at 08:35 am EDT with approximately 30 items: 11 are Subcontractor warranties, none of which the Landlord owes to the Tenant under the Lease (you will note that all manufacturers warranties were previously provided), but will be provided as a courtesy to your client, since it is usual and customary in the industry. The remainder of the items are all immaterial, and having no bearing upon occupancy, and most are since completed.

- The Date of Substantial Completion per the AIA G704 is September 30, 2019. Had any of the punchlist items been material enough to preclude occupancy, at

that point neither the Architect nor DOH would have determined that the Landlords work was sufficiently complete.

- White Plains Monetized Punchlist dated 10/16/219, transmitted internally, shows a list of approximately 22 items all either warranties from subs which have since been provided, or cosmetic, immaterial cleaning or otherwise insignificant items, most of which were since completed.

- The most recent status of the punchlist is attached to the LOI. It is minimal, its value is a mere $3,800, and it has no impact whatsoever upon occupancy or suitability of the building for its intended purpose. Both the Architect and DOH have so determined.

- White plains additional Punchlist Items document:
  - As to the Blinds: This is a valid obligation which the Landlord will deliver if and when the Tenant is no longer in Default. We suspended this work when we observed the Tenant failing or refusing to deliver the deposits and working capital set forth in the Lease 7.1, and 7.7, and other obligations under the Lease.

  - The Cable issue for CATV is a red herring. There is no specification in the Landlord's contract with the Tenant as to which wire is required for the CATV. The Landlord acknowledges its obligation to deliver functional CATV. It is the Landlord's obligation to insure proper performance. The Landlord has done so. The work as installed is performing as required, and has been completed, and fully tested. The Engineering calculations are attached.

- This is all a school of red herrings. The Architect's decision is final on all construction matters in any event (per the Development Agreement, p. 8, Article XI). The Architect signed both (1) the AIA G704 determining that the building was sufficiently constructed for its intended use on September 30, 2019, and (2) signed the DOH Completed Construction Certification Letter on 06/18/19.

Very truly yours,

ALFRED E. DONNELLAN

# PRE-NEGOTIATION AGREEMENT

AGREEMENT made this 25th day of October 2019, by and between White Plains Health Care Properties I, LLC ("White Plains Health") and HBL SNF, LLC ("HBL") (together "the Parties").

WHEREAS, White Plains Health and HBL were parties to a certain lease dated November 19, 2015 ("Lease") concerning the premises at 116-120 Church Street, White Plains, New York ("the Premises");

WHEREAS, on October 17, 2019, White Plains Health served HBL with a certain Notice of Default and Landlord's Election to Terminate Lease and Accelerate All Rents Due for the Balance of the Lease Term dated October 17, 2019 ("the Notice");

WHEREAS, the Parties desire to enter into discussions (the "**Discussions**") concerning a possible resolution of differences between them with respect to their rights and obligations under the Lease and the Notice. The Parties have agreed to enter into the Discussions on the terms and conditions set forth in this Pre-Negotiation Agreement (the "**Agreement**") which: (a) when executed and delivered by the Parties will constitute a binding agreement between the Parties with respect to the Discussions; and (b) will not be modified except by a written agreement executed and delivered by the Parties.

NOW, THEREFORE, in consideration of the mutual agreements, covenants and provisions contained herein, the adequacy and receipt of which are hereby acknowledged, the Parties agree as follows:

1. <u>Discussions</u>. The Parties have commenced or intend to commence the Discussions concerning the potential resolution of issues between them arising under the Lease and the Notice on terms agreeable to the Parties. The Parties agree that they may each terminate the Discussions at any time, in such Party's absolute discretion, for any reason or for no reason, and without liability of any kind.

2. <u>No Obligation/No Waiver</u>. The Parties agree that neither party will incur any obligation or liability or waive any rights, remedies, claims and/or defenses by virtue of the commencement, continuance or termination of the Discussions, or the passage of time associated with the Discussions unless and until a Settlement Agreement is executed and delivered by the Parties, and then only to the extent provided in the Settlement Agreement.

3. <u>The Discussions are Deemed Confidential and Not Admissible in Judicial or Quasi-Judicial Proceedings</u>. The parties agree that the Discussions shall be deemed to be "**Confidential Information**", and shall not be (i) filed with any court; or (ii) otherwise made public or disclosed to any individual or entity other than those specified herein without prior written consent of all Parties. Confidential Information shall not be disclosed in any way to any person or entity other than: on behalf of a Party, any of

their members, directors, officers, employees, advisors, or other agents who need to know such information solely for the purpose of evaluating or negotiating any aspect of the potential settlement and counsel for the Parties. The Parties agree that they will ensure that each of their representatives to whom the Confidential Information is disclosed shall be aware of the confidentiality obligations under this agreement.

4. <u>Advice of Counsel.</u> Each Party hereby acknowledges that this is a legally binding agreement that might affect such Party's rights. Each represents to the other that it has received legal advice from independent, competent counsel of its choice regarding the meaning and legal significance of this Agreement.

5. <u>Judicial Interpretation</u>. This Agreement will be governed by and construed in accordance with the law of the State of New York. No presumption that the terms of a document will be more strictly construed against the party who prepared the same will be applied in construing this Agreement.

6. <u>Construction.</u> Paragraph headings used in this Agreement are for convenience only and will not be used to interpret any term of this Agreement.

7. <u>Authority.</u> Each Party executing this Agreement represents that such Party has the full authority and legal power to do so.

8. <u>Survival.</u> The provisions of this Agreement will survive the termination of the Discussions.

9. <u>Non-Waiver/No Tolling.</u> Notwithstanding anything to the contrary contained in this Agreement, nothing herein shall be deemed to waive or diminish any of the Parties' claims or defenses, or to toll any dates, deadlines or time periods contained in the Notice.

10. <u>Modifications.</u> This Agreement may be changed, waived, modified or terminated only by written and executed instrument signed by all Parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first set forth above.

White Plains Health Care Properties I, LLC

By: _____
Name: _____
Title: _____


HBL SNF, LLC

By: _____
Name: _____
Title: _____

Exhibit C to

Donnellan Reply Declaration

## PRE-NEGOTIATION AGREEMENT

AGREEMENT made this 25th day of October 2019, by and between White Plains Health Care Properties I, LLC ("White Plains Health") and HBL SNF, LLC ("HBL") (together "the Parties").

WHEREAS, White Plains Health and HBL were parties to a certain lease dated November 19, 2015 ("Lease") concerning the premises at 116-120 Church Street, White Plains, New York ("the Premises");

WHEREAS, on October 17, 2019, White Plains Health served HBL with a certain Notice of Default and Landlord's Election to Terminate Lease and Accelerate All Rents Due for the Balance of the Lease Term dated October 17, 2019 ("the Notice");

WHEREAS, the Parties desire to enter into discussions (the "**Discussions**") concerning a possible resolution of differences between them with respect to their rights and obligations under the Lease and the Notice. The Parties have agreed to enter into the Discussions on the terms and conditions set forth in this Pre-Negotiation Agreement (the "**Agreement**") which: (a) when executed and delivered by the Parties will constitute a binding agreement between the Parties with respect to the Discussions; and (b) will not be modified except by a written agreement executed and delivered by the Parties.

NOW, THEREFORE, in consideration of the mutual agreements, covenants and provisions contained herein, the adequacy and receipt of which are hereby acknowledged, the Parties agree as follows:

1. <u>Discussions</u>. The Parties have commenced or intend to commence the Discussions concerning the potential resolution of issues between them arising under the Lease and the Notice on terms agreeable to the Parties. The Parties agree that they may each terminate the Discussions at any time, in such Party's absolute discretion, for any reason or for no reason, and without liability of any kind.

2. <u>No Obligation/No Waiver</u>. The Parties agree that neither party will incur any obligation or liability or waive any rights, remedies, claims and/or defenses by virtue of the commencement, continuance or termination of the Discussions, or the passage of time associated with the Discussions unless and until a Settlement Agreement is executed and delivered by the Parties, and then only to the extent provided in the Settlement Agreement.

3. <u>The Discussions are Deemed Confidential and Not Admissible in Judicial or Quasi-Judicial Proceedings</u>. The parties agree that the Discussions shall be deemed to be "**Confidential Information**", and shall not be (i) filed with any court; or (ii) otherwise made public or disclosed to any individual or entity other than those specified herein without prior written consent of all Parties. Confidential Information shall not be disclosed in any way to any person or entity other than: on behalf of a Party, any of

their members, directors, officers, employees, advisors, or other agents who need to know such information solely for the purpose of evaluating or negotiating any aspect of the potential settlement and counsel for the Parties. The Parties agree that they will ensure that each of their representatives to whom the Confidential Information is disclosed shall be aware of the confidentiality obligations under this agreement.

4. <u>Advice of Counsel.</u> Each Party hereby acknowledges that this is a legally binding agreement that might affect such Party's rights. Each represents to the other that it has received legal advice from independent, competent counsel of its choice regarding the meaning and legal significance of this Agreement.

5. <u>Judicial Interpretation</u>. This Agreement will be governed by and construed in accordance with the law of the State of New York. No presumption that the terms of a document will be more strictly construed against the party who prepared the same will be applied in construing this Agreement.

6. <u>Construction.</u> Paragraph headings used in this Agreement are for convenience only and will not be used to interpret any term of this Agreement.

7. <u>Authority.</u> Each Party executing this Agreement represents that such Party has the full authority and legal power to do so.

8. <u>Survival.</u> The provisions of this Agreement will survive the termination of the Discussions.

9. <u>Non-Waiver/No Tolling.</u> Notwithstanding anything to the contrary contained in this Agreement, nothing herein shall be deemed to waive or diminish any of the Parties' claims or defenses, or to toll any dates, deadlines or time periods contained in the Notice.

10. <u>Modifications.</u> This Agreement may be changed, waived, modified or terminated only by written and executed instrument signed by all Parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first set forth above.

White Plains Health Care Properties I, LLC

By: _____
Name: _____
Title: _____

HBL SNF, LLC

By: _____
Name: _____
Title: _____