# Exhibit 3 to

# Lara Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,<br><br>                                                      Plaintiff,<br>– against –<br><br>HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER JOZOFOVIC and MARK NEUMAN,<br><br>         Defendants and Third-Party Plaintiff,<br><br>– against –<br><br>CCC EQUITIES, LLC, PROJECT EQUITY CONSULTING, THE CONGRESS COMPANIES, HOWARD FENSTERMAN, and WILLIAM NICHOLSON,<br><br>                            Third-Party Defendants. | Removed from the Supreme Court of the State of New York, Westchester County<br><br>21 Civ. 9048 (PMH)<br><br>**REPLY DECLARATION OF WILLIAM NICHOLSON** |

Pursuant to 28 U.S.C. § 1746, William A. Nicholson declares as follows:

1. I am one of the managing members of plaintiff White Plains Healthcare Properties I, LLC ("WPH Properties"). I am also a third-party defendant. I submit this declaration, based upon my personal knowledge, in reply to the affidavit of Lizer Jozefovic and in further support of the motion of WPH Properties and the third-party defendants for an order granting summary judgment in favor of WPH Properties and dismissing the counterclaims and third-party claims asserted by defendants/third-party plaintiffs, HBL SNF, LLC ("HBL"), Lizer Jozefovic ("Jozefovic") and Mark Neuman ("Neuman") (collectively, "defendants").

2. The defendants' opposition to the motion for summary judgment is based on a series of demonstrably false statements, meritless claims and arguments that are immaterial to the issues before the Court. The principal issue on this motion is whether HBL defaulted under the lease. Clearly, it did, if for no other reasons than that it never provided the $5.3 million in security it was

required to provide before it took occupancy of the premises in 2019. The accompanying declaration of our counsel, Alfred E. Donnellan, Esq., and the accompanying reply memorandum of law address the notice issues and legal issues with respect to the termination of the lease. The purpose of this declaration is to respond to the factual misstatements the defendants have made in opposition to the motion and to identify the parts of the moving papers that have already addressed those issues.

3.  The lease required that HBL shall have delivered to WPH Properties "60 days prior to the anticipated Commencement Date," a security deposit consisting of $3.7 million in cash or letter of credit, and an additional $1.6 million from an identified bank account. Nicholson Aff. ¶ 6, Exhibit 12, Lease § 7.1(a)(ii) and (iii). There can be no dispute that HBL has never done that. There is no dispute that HBL occupies the property. HBL admits that it took occupancy of the facility on September 30, 2019. Nicholson Aff. ¶ 6, Exhibit 11, Notice to Admit, No. 1. The security deposit was due, therefore, in July 2019. It has never been paid – not even a penny. The lease defines that as a material default. Nicholson aff., Exhibit 12, Lease, Schedule 3.1, §16.1 (xxvi).

4.  The defendants' argument that they satisfied their obligation to provide a security deposit by funding the $1.6 million "RSA" and executing the documents necessary for Fensterman to become a signatory on that account is both false, as set forth in the Fensterman affidavit, misleading and immaterial. As more fully discussed in the accompanying memorandum of law, HBL's security deposit obligation was not satisfied by depositing $1.6 million in its own account, regardless of who could sign on that account. The funds were required to be deposited into WPH Properties' tenant security account. Nicholson aff., ex. 12, § 7.1(a)(iii); Fensterman aff., ¶ 4. That

2

never happened and the defendants do not even claim that it did. In addition, the lease required HBL to post an additional $3.7 million in security in cash or letter of credit. Nicholson aff, ex. 12, § 7.1(a)(ii). Again, that never happened and the defendants do not even claim that it did. They simply ignore that obligation, and their undisputed default of it.

5. Jozefovic's lengthy discussion of the history of this project, presumably intended to divert the Court's attention from the undisputed evidence that HBL breached the lease by failing to provide the security deposit, is likewise false and immaterial. WPH Properties is not, and has never been, in default of any of its obligations under any of its agreements with the defendants. My affidavit in support of the motion addresses all of Jozefovic's claims in that regard. Nicholson Aff. ¶¶ 11-13, 40-41.

6. WPH Properties did not finish construction late or overbudget. As fully explained in my affidavit, and contrary to the assertions made by Jozefovic, Jozefovic aff., ¶¶ 28-30, the development agreement did not require that the building be substantially completed within 20 months. Nicholson aff., ex. 40. Jozefovic's allegation that "White Plains failed to complete the Facility on schedule" Jozefovic aff., ¶ 28 is therefore without any basis. Nicholson aff., ¶ 40.

7. Jozefovic's baseless claim that there were "cost overruns" on the project, Jozefovic aff., ¶¶ 49-50, is belied by the development agreement, in which HBL "acknowledge[d] and agree[d]" that "the actual total cost of the Project ("Project Cost") as of the date hereof [November 20, 2015] is approximately $60.0 million, is not possible to exactly ascertain as of the date of this Agreement due to circumstances beyond the control of all parties to this Agreement and is projected to be greater than the Approved Project Cost." Nicholson aff., ¶ 45 & ex. 13, Article IV(A).

8. Jozefovic apparently relies on the application filed with the New York State Department of Health stating a total project cost as a basis for its claim of alleged cost overruns. Jozefovic aff., ¶ 17. But HBL, not WPH Properties, was responsible to "file and diligently pursue with DOH all applications required to increase the Approved Project Cost such that it then equals the best estimate of the Project Cost." Nicholson aff., ¶ 45 & ex. 13, Article IV(A).

9. In any event, even if there were cost overruns on the project, those costs are irrelevant. Any cost overruns would have no effect on HBL or the lease. HBL is not a partner in the ownership of the property. HBL would incur no additional cost or any increased rent and certainly don't excuse HBL from paying the security deposit or from their other defaults under the lease.

10. Jozefovic alleges that "[o]n April 18, 2016, NYSDOH notified White Plains that it considered the Facility an 'abandoned project,' which required White Plains to obtain a new Certificate of Need in order to proceed." Jozefovic aff., ¶ 29. But it was HBL that was responsible for all of the approvals required from the New York State Department of Health. Nicholson aff., ex. 13, Article II(C).

11. Even if WPH Properties had defaulted in the construction of the property (which it clearly did not), however, the defendants have either waived or released that claim and therefore cannot assert a counterclaim on that basis. Nicholson aff., ¶¶ 34-39.

12. Jozefovic's claims that the terms of the amended lease were substantially different from, and less favorable to, HBL the original 2015 lease, Jozefovic aff., ¶¶ 38-39, is also irrelevant, and false. In fact, the renegotiated lease was substantially more favorable to HBL. Nicholson aff., ¶ 5. In particular, Jozefovic is just wrong or untruthful when he claims in his affidavit the development agreement provides that rent was to be paid at $360,000 per month. The development

4

agreement does not even address the amount of the rent. Jozefovic aff., ¶ 21. The lease expressly obligated HBL to pay WPH Properties annual fixed rent of $6,073,158 in monthly installments of $506,096.50 and other amounts which are defined as "Additional Rent." Tabor aff., ¶ 7; Nicholson aff., Exhibit 12, Lease, § 3.2.

13. It is true that WPH Properties has "accepted millions in rent payments." Deft's Memo of Law at 1. WPH Properties accepted that rent because HBL owed it millions of dollars in rent. And it owes millions more. The lease provides that if HBL holds over after its default has resulted in the termination of the lease, HBL is a month-to-month tenant obligated to pay rent monthly at a rent equal to 300 percent of the most recent monthly rent payable by HBL under the lease. Tabor aff. ¶ 12; Nicholson aff., Exhibit 12, Lease, § 20.13. Although HBL has paid base rent since the lease was terminated, it has never paid holdover rent, as the lease requires. In addition, the lease provides that upon the occurrence of a default by HBL, WPH Properties may accelerate the payment of all rent due for the balance of the term and declare the rent presently due and payable in full, requiring HBL to pay to WPH Properties the present value of the accelerated Rent. Tabor aff., ¶ 15; Nicholson aff., Exhibit 12, Lease, §16.1. In the notice of default, WPH Properties terminated the lease and accelerated the rent and declared all of the rent under the lease immediately due and owing. Tabor aff., ¶¶ 14-16 & Exhibit 26, Notice of Default. HBL has not paid any of the accelerated rent that is due and owing. Tabor aff., ¶ 16, ex. 27; Donnellan aff., Exhibit 11, Notice to Admit, no. 7. The present value of the accelerated lease payments that HBL is obligated to pay WPH Properties is $82,369,770. Tabor aff., ¶ 16 & Exhibit. 27.

14. Jozefovic's claims with respect to the November 20, 2019 letter of intent are equally baseless. As fully explained in the Nicholson affidavit, the $2.2 million paid by HBL under the

letter of intent was not in payment of any of HBL's obligations under the lease. It was a non-refundable payment for the purchase of the facility. Nicholson aff., ¶ 32. HBL breached the letter of intent in a number of ways and therefore is not entitled to a return of the $2.2 million, which, again, was non-refundable in any event. Nicholson aff., ¶ 32.

15. The defendants' claims based on the 2015 term sheet are similarly without merit. Jozefovic aff., ¶¶ 23-26; 58-59. As my earlier affidavit explains, the merger clause contained in the 2017 lease precludes reliance on prior agreements. Nicholson aff., ¶ 44. The term sheet was not, in any event, a binding agreement. By its express terms, it was intended only to "clarify the information shared at the meeting of 4/22/2015." Nicholson aff., ¶ 44.

16. Further, and also contrary to Jozefovic's claim, Jozefovic aff., ¶¶ 31-35, 51, HBL cannot assert a claim based on WPH Properties' failure to obtain permanent financing or financing in particular amounts or terms because, in the letter of intent, HBL waived "any claims by the Tenant that the Landlord is or ever was required to deliver a mortgage of any particular amount, terms, amortization or interest rate, for Medicaid rate setting or any other purpose" and "any claims related to the Cost Certification." Nicholson aff., ex. 17, ¶ 8. WPH Properties would have obtained permanent financing long before its construction loan was due if HBL had not continually and repeatedly defaulted and refused or failed to cure those defaults. Nicholson aff., ¶ 42. Finally, the costs incurred by WPH Properties as a result of its inability to obtain permanent financing have not been passed along to HBL. Nicholson aff., ¶ 43.

17. There is, in short, nothing in the Jozefovic affidavit or in any of the other arguments the defendants have made that even raises a triable issue of fact with respect to HBL's defaults under the lease, the defendants' liability for those defaults or any affirmative defense or

counterclaim the defendants' have raised. WPH Properties and the counterclaim defendants are, therefore, entitled to summary judgment.

Dated:  Danvers, Massachusetts
        November 5, 2021

_____
William A. Nicholson