# Exhibit 4 to

# Lara Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,<br><br>                                               Plaintiff,<br><br>– against –<br><br>HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER JOZOFOVIC and MARK NEUMAN,<br><br>       Defendants and Third-Party Plaintiff,<br><br>– against –<br><br>CCC EQUITIES, LLC, PROJECT EQUITY CONSULTING, THE CONGRESS COMPANIES, HOWARD FENSTERMAN, and WILLIAM NICHOLSON,<br><br>                         Third-Party Defendants. | Removed from the Supreme Court of the State of New York, Westchester County<br><br>21 Civ. 9048 (PMH) |

**REPLY MEMORANDUM OF LAW BY PLAINTIFF AND THIRD-PARTY DEFENDANTS IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**BINDER & SCHWARTZ**
366 Madison Avenue, 6th floor
New York, New York 10017
Tel.: (212) 510-0708

– and –

**DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP**
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Tel.: (914) 681-0200

– and –

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN FORMATO, FERRARA, WOLF & CARONE, LLP**
81 Main Street, Suite 306
White Plains, New York 10601
Tel: (914) 607-7010

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..iii

PRELIMINARY STATEMENT……………………………………………………………………1

ARGUMENT…………………………………………………………………………………....…1

    I.      WPH Properties properly terminated the lease based on HBL's material breach, including its failure to pay the required security deposit………………………………………………………………………………1

          A.  HBL does not dispute that it materially breached the lease by failing to pay the security deposit……………………………………………2

          B.  HBL has materially breached the lease in numerous other respects………………3

          C.  The notice of default was proper…………….…………………………………...3

          D.  WPH Properties' loan agreement with Security Benefit does not prohibit WPH Properties from terminating HBL's lease………………………….5

          E.  WPH Properties did not waive any of HBL's material breaches of the lease…………………………………………………………………...6

          F.  HBL cannot salvage its lease by claiming unjust enrichment…………………….8

    II.     HBL is liable for holdover rent and accelerated rent……………………………….8

    III.    WPH Properties is entitled to judgment for breach of the letter of intent…………….9

    IV.    The defendants' affirmative defenses and counterclaims should be dismissed……...10

          A.  The defendants' opposition to the motion fails to address the evidence defeating their affirmative defenses………………………………..10

          B.  HBL released its claims against WPH Properties when it signed the lease…………………………………………………………………..10

          C.  The defendants' remaining counterclaims have no merit………………………..11

    V.     The defendants are bound by their default in responding to the notice to admit…………………………………………………………………..12

    VI.    The motion for summary judgment is not premature……………………………...…13

CONCLUSION……………...……………………………………………………………………14

# TABLE OF AUTHORITIES

Case(s):                                                                                                                              Page(s):

*A.H.A. Gen. Const., Inc. v. New York City Hous. Auth.*,
    92 N.Y.2d 20, 31 (1998)……………………..…………………………………………9

*Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings, LLC*,
    114 A.D.3d 888, 889 (2d Dep't 2014)…………………………………………………8

*Alsens American. Portland Cement Works v. Degnon Contracting. Co.*,
    222 N.Y. 34, 37 (1917)…………………………………………………………………7

*Beacon Terminal Corp. v. Chemprene, Inc.*,
    75 A.D.2d 350, 355-56 (2d Dep't 1980)……………………………………………..…7

*Center for Specialty Care, Inc. v. CSC Acquisition I, LLC*,
    185 A.D.3d 34, 42 (1st Dep't 2020)……………………………………..……………10

*Coby Elecs. Co., Ltd. v. Toshiba Corp.*,
    108 A.D.3d 419, 420 (1st Dep't 2012), aff'd as modified, 108 A.D.3d 419 (2013)….…10

*Fifty States Management Corp. v. Pioneer Auto Parts, Inc.*,
    46 N.Y.2d 573, 577 (1979)………………………………………………………..…8

*Georgetown Unsold Shares, LLC v. Ledet*,
    130 A.D.3d 160, 163-164 (2d Dep't 2015)…………………………………..…7, 8

*J. Petrocelli Construction, Inc. v. Realm Electrical Contractors, Inc.*,
    15 A.D.3d 444, 446 (2d Dep't 2005)……………………………………………..…9

*Jefpaul Garage Corp. v. Presbyterian Hosp.*,
    61 N.Y.2d 442, 446 (1984)……………………………………….......……………6

*Kallen v. Kassin*,
    200 A.D.2d 557, 558 (2d Dep't 1994)……………………………..………………2

*Kuris v. Kuris*,
    No. 46317/07S, 2009 WL 1194548, *5 (Sup. Ct., Kings Cty. April 28, 2009)………..…4

*Liberty Diner v. 2635 Food Corp.*,
    264 A.D.2d 439, 440 (2d Dep't 1999)……………………………………………….5

*Luna Park Housing Corp. v. Besser*,
    38 A.D.2d 613, 714 (2d Dep't 1972)………………………………………...…6, 7

*Markowitz v. Landau*,
    171 A.D.2d 564, 565 (1st Dep't 1991)……………..……………………………2

*Meadowbrook-Richman, Inc. v Cicchiello*,
    273 A.D.2d 6, 6 (2d Dep't 2000). …………………………………………………12

*Morales v. Solomon Mgt. Co., LLC*,
    38 A.D.3d 381 (1st Dep't 2007)…………………………………………………11

*Owego Properties v. Campfield*,
    182 A.D.2d 1058, 1059 (3d Dep't 1992)………………………………………….5

*Prime Realty Holdings Co. v. Alpine Group, Inc.*,
    225 A.D.2d 533, 534 (2d Dep't 1996)……………………………………………5

*QP III 143 45 Sanford Avenue, LLC v. Spinner*,
    108 A.D.3d 558, 559 (2d Dep't 2013). …………………………...…………………4

*Rivera v. Wycoff Heights Medical Center*,
    113 A.D.3d 667, 670-71 (2d Dep't 2014)……………………...…………………11

*Rudman v. Cowles Communications*,
    30 N.Y.2d 1, 13 (1972)……………………………………………………………6

*Ruttura & Sons Const. Co. v. J. Petrocelli Const., Inc.*,
    257 A.D.2d 614, 615 (1999)……………………………………..…………………13

*Schonfeld v. Thompson*,
    243 A.D.2d 343, 343 (1st Dep't 1997)……………………..……………………11

*Sebring, LLC v. Elegence Restaurant Furniture Corp.*,
    188 A.D.3d 744, 746 (2d Dep't 2020)………………………………………….8, 9

*Siegel v Kentucky Fried Chicken of Long Is., Inc.*,
    108 A.D.2d 218, 221 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 792 (1986)………………………4

*Sullivan v. Brevard Associates*,
    66 N.Y.2d 489, 495 (1985)………………………………………………...………7

*Tredwall v. Doncourt*,
    18 App. Div. 219 (2d Dep't 1897)……………………………………...………4

*U.W. Marx, Inc. v. Koko Contracting, Inc.*,
    124 A.D.3d 1121, 1122-23 (3d Dep't 2015)…………………………………….9

<u>Statutes:</u>

CPLR 3212(f)…………………………………..………………………………….12, 13

**PRELIMINARY STATEMENT**

Plaintiff WPH Properties and the third-party defendants, by their attorneys, Binder & Schwartz and DelBello, Donnellan, Weingarten, Wise & Wiederkehr, LLP and Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, respectfully submit this reply memorandum in further support of their motion for summary judgment for the relief demanded in the complaint against defendants Lizer Jozefovic and Mark Neuman.[1]

**ARGUMENT**

**I**

**WPH Properties properly terminated the lease based on HBL's material breach, including its failure to pay the required security deposit**

WPH Properties terminated the lease because, among other things, HBL materially breached the lease by failing to pay the $5.3 million security deposit the lease required. WPH Properties satisfied all of the legal requirements for terminating the lease. The defendants' argument that notice of termination was ineffective is meritless, given that notice was indisputably delivered by an attorney known by the tenant to represent the landlord. HBL's claim that WPH Properties waived the defaults is similarly baseless, since, under settled New York case law, a landlord's receipt of post-default rent payments is not a waiver. Further, the lease expressly provides that WPH Properties does not waive its right to enforce the lease terms. And the defendants "unjust enrichment" argument is simply frivolous.

---

[1] The affidavit of Lizer Jozefovic in opposition dated October 25, 2021 states that Jozefovic submits his affidavit in opposition to the motion and in support of defendants' cross-motion to strike WPH Properties' notice to admit dated June 2, 2021. However, defendants have not filed or served any notice of cross-motion. WPH Properties and third-party defendants nevertheless also submit this memorandum of law in opposition to the procedurally defective cross-motion.

1

### A. HBL does not dispute that it materially breached the lease by failing to pay the security deposit.

HBL materially breached the lease by failing to post the $5.3 million security deposit. The lease requires that HBL deliver to WPH Properties "60 days prior to the anticipated Commencement Date," (i) a security deposit consisting of $3.7 million in cash or letter of credit and (ii) an additional $1.6 million from an identified bank account. Nicholson aff, ex. 12, § 7.1(a)(ii). HBL admits that it took occupancy of the facility on September 30, 2019. Nicholson aff, ex. 11 (notice to admit), no. 1. The security deposit was due, therefore, in July 2019. It was not delivered then and has never been delivered since. These facts are undisputed.

Failure to provide the security deposit is a material breach of the lease entitling the landlord to terminate the lease. Nicholson aff., ex. 12, Schedule 3.1, §16.1(xxvi); *see Kallen v. Kassin*, 200 A.D.2d 557, 558 (2d Dep't 1994); *Markowitz v. Landau*, 171 A.D.2d 564, 565 (1st Dep't 1991). Accordingly, WPH Properties had the right to terminate the lease and did terminate the lease based upon HBL's material default for more than two years.

The defendants oppose summary judgment on the ground that HBL "complied with its obligation to deliver security deposits by funding the [rent security account] and tendering signatory authority to White Plains, which White Plains failed to complete." Def. br., at 16. As fully explained in the affidavit of Howard Fensterman dated August 18, 2021 (the "Fensterman aff."), however, that is false. But even if it were true, HBL did not provide Mr. Fensterman with the full authority necessary to ensure that the balance in the Waterview JPM Accounts was not reduced to below $1.6 million. Nicholson aff., ex. 16; Fensterman aff., ¶ 3.

What is more important, and dispositive, is that the defendants do not deny that HBL failed to provide the $3.7 million security deposit required by section 7.1(a)(iii) of the lease and that HBL

2

also failed (and continues to this date to refuse) to deliver the $1.6 million Additional Security Deposit in WPH Properties' rent security deposit account as required by section 7.1(a)(ii) of the lease, a breach of both the pledge agreement and the lease. Nicholson aff., ex. 12, § 7.1(a)(iii); Fensterman aff., ¶ 4.

Instead, the defendants base their opposition on the claim that WPH Properties "has never previously demanded that HBL provide a $3.7 million letter of credit or additional security deposits." Def. br., at 16. That is completely irrelevant and false. Notwithstanding the fact that the lease imposes no obligation on the landlord to demand the tenant's performance, WPH Properties did in fact provide numerous written requests for delivery of the security deposit.

The defendants also reassert their claim that "White Plains waived any issues regarding security deposits by choosing to accept HBL's Fixed Rent Payments," Def. br., at 16, but that is wrong as a matter of law for the reasons that are discussed below.

**B.  HBL has materially breached the lease in numerous other respects.**

Notwithstanding the defendants' claims to the contrary, HBL has committed numerous other breaches of the lease. The Nicholson affidavit and Tabor affidavit describe those defaults in detail. The accompanying reply declaration of Edward O. Tabor dated November 5, 2021 responds to the defendants' assertions disputing HBL's defaults in paying rent, real estate taxes timely, utility charges and deposits and municipal escrows and failure to provide documents and information required under the lease.

**C.  The notice of default was proper.**

The defendants' claim that the January 7, 2020 notice of default is somehow defective because it "does not contain the same claims that White Plains currently alleges," Def. br., at 17, is unadulterated fantasy. The notice of default details each and every default under the lease

3

upon which WPH Properties relies in this motion. *Compare* Nicholson aff., ex. 26 *with* Pl. br., at 2-7.

HBL's assertion that the notice of default was "fatally flawed" because the "decision to serve the Notice of Default via an unauthorized and unknown attorney and representative makes the Notice of Default a nullity," Def. br., at 17-18, is a silly and completely baseless argument. The notice of default was signed by Alfred Donnellan, WPH Properties' counsel and WPH Properties' authorized representative, Joshua Roccapriore, with whom Jozefovic and his staff dealt with on a regular basis during the construction of the facility. Donnellan Aff., ¶ 4, ex. A. The notice of default begins by stating that "[w]e are the attorneys for your landlord, White Plains Healthcare Properties I, LLC." Nicholson aff., ex. 26. An attorney is an agent for his client, authorized to act on the client's behalf. *See Tredwall v. Doncourt*, 18 App. Div. 219 (2d Dep't 1897); *Kuris v. Kuris*, No. 46317/07S, 2009 WL 1194548, *5 (Sup. Ct., Kings Cty. April 28, 2009).

*Siegel v. Kentucky Fried Chicken of Long Is., Inc.*, 108 A.D.2d 218, 221 (2d Dep't 1985), *aff'd,* 67 N.Y.2d 792 (1986), upon which the defendants rely, is not to the contrary. As the Appellate Division, Second Department, has subsequently noted:

> Siegel is limited to the 'factual peculiarities' of the lease in that case. The lease in *Siegel* . . . designated certain rights that were to be exercised by "the 'Landlord *or* Landlord's agent[ ]" and designated the landlord's attorney by name, while the three-day forfeiture notice that was the subject of that dispute was sent by another attorney, who was unknown to the tenant.

*QP III 143 45 Sanford Avenue, LLC v. Spinner*, 108 A.D.3d 558, 559 (2d Dep't 2013).

Here, HBL was fully aware prior to the January 7, 2020 notice of default that Mr. Donnellan was counsel to WPH Properties and had extensive dealings with him, including numerous in person meetings at Mr. Donnellan's office attended by Jozefovic and Neuman. Reply declaration of Alfred E. Donnellan dated November 5, 2021 (the "Donnellan reply decl."), ¶¶ 3-7.

4

Under these circumstances, courts have routinely enforced a landlord's rights under a lease as communicated to the tenant by the landlord's counsel. *See Liberty Diner v. 2635 Food Corp.*, 264 A.D.2d 439, 440 (2d Dep't 1999) (landlord effectively terminated the subject lease through its demand for rent sent by its attorney to the attorney for the tenant, stating that the "attorney representing [the landlord] was named in the lease and was known to [the tenant] by virtue of communications the attorney had with [the tenant] regarding the lease."); *Prime Realty Holdings Co. v. Alpine Group, Inc.*, 225 A.D.2d 533, 534 (2d Dep't 1996) ("The record amply supports the Supreme Court's determination that the plaintiff was aware, at the time it received the notice of cancellation, that the defendant's attorney was authorized to act as its agent in matters concerning the leased premises."); *Owego Properties v. Campfield*, 182 A.D.2d 1058, 1059 (3d Dep't 1992) (Rejecting the tenant's claim that a notice to cure signed by the landlord's agent was ineffective on the grounds that it did not include an authorization and was not signed the by landlord or the agent identified in the lease and stating that "[t]he record amply demonstrates that respondent knew at the time he received the notice to cure that Sarkisian was authorized to act as petitioner's agent.").

**D. WPH Properties' loan agreement with Security Benefit does not prohibit WPH Properties from terminating HBL's lease.**

The fact that WPH Properties' loan agreement with its construction lender, Security Benefit Corporation ("Security Benefit"), provides that the lease would not be terminated without Security Benefit's consent does not somehow prohibit WPH Properties from terminating the lease because of HBL's defaults. Def. br. at 10-11; *see also* Jozefovic aff., ex. F, § 3.5(vi). The tenant, HBL, is not a party to the loan agreement, nor are any of the other defendants. The loan agreement provides that "[t]he Loan Documents are for the sole benefit of Lender and Borrower and are not for the benefit of any third party." Jozefovic aff., ex. F, § 7.3. Nor do the loan agreement and the lease

5

"constitute an integrated agreement with both White Plains and HBL bound to the terms of the Loan Agreement." Def. br., at 10. The loan agreement is between WPH Properties and Security Benefit and is dated August 18, 2017. Jozefovic aff., ex. F. The parties to the lease are WPH Properties and HBL. The original lease is dated 2015 and the (amended) lease that is currently in effect is dated November 19, 2019. Nicholson aff., exs. 12, 35. As a matter of law, agreements between different parties executed years apart are not integrated agreements. *See Rudman v. Cowles Communications*, 30 N.Y.2d 1, 13 (1972) ("Recognizing that the agreements involved formally different parties, and actually executed on different dates . . . the conclusion of separateness becomes all but inescapable.").

**E. WPH Properties did not waive any of HBL's material breaches of the lease.**

HBL's argument that WPH Properties waived its right to enforce the terms of the lease by attempting to work with HBL to resolve its defaults has no basis in law or fact. The express provisions of the lease foreclose the defendants' argument that there was an implied waiver of the lease defaults. The lease provides that:

> Neither any failure nor any delay on the part of any party hereto in insisting upon strict performance of any term condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, or any other document or instrument entered into or delivered in connection herewith or pursuant hereto, shall operate s or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege. . . .

Nicholson aff., ex. 12, § 20.3. And section 20.2 of the lease forecloses implied waivers by conduct by requiring that any waiver be in writing. Nicholson aff., ex. 12, § 20.2 ("No waiver shall be effective unless set forth in writing and signed by the party against whom such waiver is asserted."). New York courts have routinely enforced nonwaiver clauses contained in leases. *See Jefpaul Garage Corp. v. Presbyterian Hosp.*, 61 N.Y.2d 442, 446 (1984); *Luna Park Housing*

6

*Corp. v. Besser*, 38 A.D.2d 613, 714 (2d Dep't 1972).

Nor did WPH Properties waive any of its rights under the lease by entering into the letter of intent. The parties entered into the letter of intent when HBL defaulted within weeks of taking possession. Its purpose was to resolve HBL's defaults without terminating the lease. Nicholson aff., ¶¶ 19-21. The letter of intent expressly provides that "[t]he parties shall remain as Landlord and Tenant pursuant to the existing Lease until such time as the Transaction closes." Ex. 17, ¶ 1(h). It thus requires HBL to comply with all of the terms of the lease, except insofar as they had been modified by the letter of intent. And while the letter of intent does include a waiver provision, that provision provides only for waivers by the tenant, HBL, not by WPH Properties. Ex. 17, ¶ 8. These terms preclude any finding that WPH Properties abandoned a known right, which is essential to a waiver. *See Beacon Terminal Corp. v. Chemprene, Inc.*, 75 A.D.2d 350, 355-56 (2d Dep't 1980) (quoting *Alsens American. Portland Cement Works v. Degnon Contracting. Co*., 222 N.Y. 34, 37 (1917)). WPH Properties' decision to postpone declaring a default under the lease to allow the parties time to attempt to resolve HBL's default was not a waiver.

Additionally, the parties entered into a pre-negotiation agreement which expressly provides that:

> The Parties agree that neither party will incur any obligation or liability or waive any rights, remedies, claims and/or defenses by virtue of the commencement, continuance or termination of the Discussions, or the passage of time associated with the Discussions unless and until a Settlement Agreement is executed and delivered by the Parties, and then only to the extent provided in the Settlement Agreement.

Donnellan reply decl., ex. C.

Finally, as a matter of law, WPH Properties' post-default acceptance of rent did not waive HBL's defaults. *See Sullivan v. Brevard Associates*, 66 N.Y.2d 489, 495 (1985); *Georgetown*

7

*Unsold Shares, LLC v. Ledet*, 130 A.D.3d 160, 163-164 (2d Dep't 2015). In any event section 20.2 of the Lease expressly requires that any waiver be in writing. The defendants do not, and cannot possibly, claim that WPH Properties agreed in writing to waive the default under the lease in exchange for HBL's rent payments.

    **F. HBL cannot salvage its lease by claiming unjust enrichment.**

The defendants claim that WPH Properties will be "unjustly enriched" if their summary judgment motion is granted because HBL has added "value to the facility," Def. br., at 13. HBL does not plead unjust enrichment as a defense. In order to state an unjust enrichment claim, "[w]hat is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it.'" *Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings, LLC*, 114 A.D.3d 888, 889 (2d Dep't 2014). HBL is not in that position. HBL was a tenant under the lease that defaulted. Its right are defined by the lease.

WPH Properties seeks in this motion to do nothing more than recover the damages it has sustained on account of HBL's breaches, including the amounts provided for under the lease when the tenant defaults. The defendants' claim that compensating WPH Properties for its damages and the amounts provided for under the lease for HBL's default would result in "unjustly enrichment" is absurd.

## II

## HBL is liable for holdover rent and accelerated rent

The provisions of the lease requiring the payment of accelerated and holdover rent are fully enforceable. *See Fifty States Management Corp. v. Pioneer Auto Parts, Inc.*, 46 N.Y.2d 573, 577 (1979) (accelerated rent); *Sebring, LLC v. Elegence Restaurant Furniture Corp.*, 188

A.D.3d 744, 746 (2d Dep't 2020) (holdover rent). The only basis on which the defendants assert that HBL is not liable for accelerated or holdover rent is that "White Plains does not have the right to terminate the Amended Lease because it failed to obtain Security Benefit's prior consent, and White Plains waived its right to enforce the Amended Lease by choosing to accept HBL's Fixed Rent Payments each month without protest." Def. br., at 17. As previously argued, that is wrong. *See* pages 1-5, *supra*.

### III

### WPH Properties is entitled to judgment for breach of the letter of intent

HBL breached the letter of intent within ten days of signing it by failing to provide the first $1 million in security. Nicholson aff., ¶ 21; Tabor aff., ¶ 18. HBL's material breach in providing the first $1 million of the security deposit released WPH Properties of its obligations under the letter of intent, including its obligations with respect to the FF&E. *See J. Petrocelli Construction, Inc. v. Realm Electrical Contractors, Inc.*, 15 A.D.3d 444, 446 (2d Dep't 2005) ("[o]nce it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts, such as conditions precedent"); *U.W. Marx, Inc. v. Koko Contracting, Inc.*, 124 A.D.3d 1121, 1122-23 (3d Dep't 2015).

HBL is also mistaken in its claim that the letter of intent is not enforceable because the closing under the letter of intent did not occur by April 20, 2020, Def. br., at 20-21. Because HBL caused the failure to close the transaction by April 20, 2020 by breaching the letter of intent, it cannot take advantage of the closing date requirement as a basis for avoiding its obligations. *A.H.A. Gen. Const., Inc. v. New York City Hous. Auth.,* 92 N.Y.2d 20, 31 (1998) ("[A] party to a contract "cannot rely on the failure of another to perform a condition precedent where he has frustrated or

9

prevented the occurrence of the condition.") (citations and quotation marks omitted); *see also Center for Specialty Care, Inc. v. CSC Acquisition I, LLC*, 185 A.D.3d 34, 42 (1st Dep't 2020); *Coby Elecs. Co., Ltd. v. Toshiba Corp.*, 108 A.D.3d 419, 420 (1st Dep't 2012), *aff'd as modified*, 108 A.D.3d 419 (2013) ("A party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition'").

### IV

### The defendants' affirmative defenses and counterclaims should be dismissed

**A. The defendants' opposition to the motion fails to address the evidence defeating their affirmative defenses.**

In response to WPH Properties detailed recitation of the evidence warranting dismissal of the defendants' affirmative defenses, the defendants do nothing more than rehash those defenses, in conclusory fashion without addressing the substance of WPH Properties' evidence. Def. br., at 19-20. The defendants' conclusory arguments change nothing. As fully set forth in the Nicholson affidavit, the affirmative defenses should be dismissed. Nicholson aff., ¶¶ 22-27.

**B. HBL released its claims against WPH Properties when it signed the lease.**

When it executed the lease, HBL "RELEASE[D] LANDLORD FROM ALL CLAIMS WHICH TENANT OR ANY AGENT, REPRESENTATIVE, AFFILIATE, EMPLOYEE, DIRECTOR, OFFICER, PARTNER, MANAGER, MEMBER, SERVANT, SHAREHOLDER, TRUSTEE OR OTHER PERSON OR ENTITY ACTING ON TENANT'S BEHALF OR OTHERWISE RELATED TO OR AFFILIATED WITH TENANT ARISING FROM OR RELATED TO ANY MATTER OR THING RELATED TO OR IN CONNECTION WITH THE LEASED PREMISES, INCLUDING THE INFORMATION AND ANY PHYSICAL OR ENVIRONMENTAL CONDITIONS." Lease ¶ 5.6. All of the claims made by the defendants here

10

against WPH Properties concern the development, construction and financing of the facility. The claims therefore all "arise from or are related to or in connection with" the facility, and necessarily fall within the scope of the release. Pl. br., at 9-11.

In response, the defendants argue that section 5.6(b) is ineffective because it is "broad" and "does not reference HBL's specific claims." Def. br., at 21. Whether the release is operative here depends whether the plain language of the release covers the subject matter, not on whether the release is "broad" or whether it "references specific claims." *Rivera v. Wycoff Heights Medical Center*, 113 A.D.3d 667, 670-71 (2d Dep't 2014) *Morales v. Solomon Mgt. Co., LLC*, 38 A.D.3d 381 (1st Dep't 2007), upon which the defendants rely, Def. br., at 21, is completely inapposite. In *Morales*, the Appellate Division First Department simply held that the release at issue there, by its terms, covered only a 1998 accident, not an earlier 1997 incident. *Id*. at 382.

**C. The defendants' remaining counterclaims have no merit.**

The defendants are not entitled to an accounting because there was no fiduciary relationship between the defendants and WPH Properties. HBL and WPH Properties were parties to a conventional business transaction, nothing more. That does not give rise to a fiduciary relationship. *Schonfeld v. Thompson*, 243 A.D.2d 343, 343 (1st Dep't 1997); *see also* Pl. br. at 13-14.

The $2,200,000 disbursement to WPH Properties was not a loan. Although the term sheet states that the "$2,200,000.00 disbursement to WPHCP is to be characterized as a noninterest bearing loan," the development agreement provides that it is an advance payment against HBL's obligation to pay for furniture, fixtures and equipment. And even if it was a loan, it was a non interest bearing one, so the defendants have no claim for interest. Pl. br., at 14-15.

The third counterclaim against WPH Properties for breach of the development agreement and lease must be dismissed solely on the basis of the release. But even without the release, it must

11

be dismissed because it fails to state a cause of action. Pl. br., at 15-17;

The defendants' claim based on alleged fraudulent misrepresentations as against WPH Properties have been released and, as against the third-party defendants, those claims are neither meritorious nor viable for a number of reasons. Pl. br., at 17-21.

The defendants' counterclaim claim based on alleged "bad faith" is not viable because there is no cause of action for "bad faith" in itself. The "bad faith" claim is also based on the same alleged facts and circumstances and is also duplicative of the breach of contract claim. Pl. br., at 22. In their opposition brief, the defendants claim that WPH Properties has "unclean hands," Def. br., at 24, but the defendants have asserted no counterclaims based on "unclean hands," nor would such a claim be cognizable.

## V

**The defendants are bound by their default in responding to the notice to admit**

The defendants do not dispute that the notice to admit was served on June 2, 2021 and they have not responded to it in any manner whatever during the almost five months since then. Donnellan aff., ¶¶ 19 and ex. 11, 20. By ignoring and failing to respond to the notice to admit, the defendants have admitted each of the facts that are the subject of the notice to admit. Affirmation of Alfred E. Donnellan dated November 5, 2021, ¶¶ 19-21; *see also* CPLR 3123(a).

The notice to admit is entirely proper. The notice to admit here did not request that defendants admit ultimate issue in this case (whether the defendants had defaulted under the lease). It sought admissions concerning facts that are relevant to that determination. That is fully consistent with use of a notice to admit to dispose of questions of fact "that are easily provable." *Meadowbrook-Richman, Inc. v. Cicchiello*, 273 A.D.2d 6, 6 (2d Dep't 2000).

## VI

**The motion for summary judgment is not premature.**

In order to avoid summary judgment by relying on CPLR 3212(f), the non-moving party must establish "from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot then be stated." The only affidavit the defendants submitted in opposition to the motion for summary judgment was the affidavit of Lizer Jozefovic sworn to October 25, 2021. That affidavit does not articulate any evidentiary basis for the need for discovery. It only states, in conclusory terms, that HBL claims a need for certain documents and depositions without articulating any reason why that information is necessary. "A determination of summary judgment cannot be avoided by a claimed need for discovery unless some evidentiary basis is offered to suggest that discovery may lead to relevant evidence." *Ruttura & Sons Const. Co. v. J. Petrocelli Const., Inc.*, 257 A.D.2d 614, 615 (1999). And to the extent that the defendants seek an accounting, they run into the same problem as their cause of action for an accounting – there is no fiduciary relationship or other basis here for an accounting.

**CONCLUSION**

For all of these reasons, WPH Properties and third-party defendants respectfully request summary judgment against HBL, Jozefovic and Neuman in the amount of $111,420,213.50 and judgment dismissing the claims asserted by the defendants.

Respectfully submitted,

**BINDER & SCHWARTZ**

By: /s/ Eric B. Fisher
/s/ Lindsay A. Bush
Eric B. Fisher
Lindsay A. Bush
366 Madison Avenue, 6th floor
New York, New York 10017
Tel.: (212) 510-0708

**DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP**

By: /s/ Alfred E. Donnellan
Alfred E. Donnellan
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Tel.: (914) 681-0200

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**

By: /s/ Robert A. Spolzino
Robert A. Spolzino
81 Main Street, Suite 306
White Plains, New York 10601
Tel.: (914) 607-7010

*Counsel for plaintiff White Plains Healthcare Properties I, LLC and third-party defendants CCC Equities, LLC, Project Equity Consulting, The Congress Companies, Howard Fensterman and William Nicholson*

Dated:   White Plains, New York
         November 5, 2021