# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---

WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,

                              Plaintiff,

– against –

HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER
JOZOFOVIC and MARK NEUMAN,

                              Defendants.

Index No. 60278/2020

**FIRST AMENDED
VERIFIED COMPLAINT**

---

Plaintiff, White Plains Healthcare Properties I, LLC ("WPH Properties"), by its attorneys, DelBello, Donnellan, Weingarten, Wise & Wiederkehr, LLP and Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, for its amended verified complaint against defendants, HBL SNF, LLC ("HBL"), Lizer Jozefovic a/k/a Lizer Jozofovic ("Jozefovic") and Mark Neuman ("Neuman"), alleges:

### NATURE OF THE CASE

1. This action concerns HBL's material default of its obligations under an amended and restated operating lease dated as of November 19, 2015 (the "Lease"), by which WPH Properties leased to HBL a brand new, state-of-the-art, 160-bed skilled nursing facility that WPH Properties constructed at 116-120 Church Street, White Plains, New York.

2. WPH Properties had constructed the nursing facility and entered into the Lease with HBL dated November 19, 2015. The Lease was amended and restated in 2017. It provided that HBL would operate the facility for 30 years. The Lease commenced on September 30, 2019. HBL took possession of the facility on September 30, 2019. By the end of October 2019, HBL had

1

defaulted.

3. On January 7, 2020, WPH Properties served notice of default and elected to terminate the Lease and accelerate all rents due. This action seeks to recover from HBL the Rent it owes and the other damages its defaults have caused and to enforce the unconditional guaranties of HBL's performance under the Lease given by Neuman and Jozefovic.

## PARTIES AND VENUE

4. WPH Properties is a limited liability company duly organized and existing under the laws of the State of Massachusetts, with its principal place of business at 2 Bourbon Street, Suite 200, Peabody, Massachusetts. WPH Properties is duly authorized to do business in the State of New York.

5. HBL was and is a limited liability company duly organized and existing under the laws of the State of New York with an address and place of business at 537 Route 22, Purdys, New York.

6. Jozefovic is an individual residing at 53 Mariner Way, Monsey, New York, with a business address and place of business at HBL, 537 Route 22, Purdys, New York.

7. Neuman is an individual residing at 22 Lyncrest Drive, Monsey, New York, with a business address and place of business at HBL, 537 Route 22, Purdys, New York.

8. Pursuant to CPLR § 503(a), venue is properly designated in Westchester County based on the residences of WPH Properties and HBL, because a substantial part of the events giving rise to the claim occurred in Westchester County and because HBL and WPH Properties agreed in the Lease that any action or proceeding arising out of the Lease be brought in Westchester County. Lease § 20.1(b).

## FACTS

9. WPH Properties is and was at all relevant times the owner of the real property known as 116-120 Church Street, White Plains, New York (the "Real Property").

10. WPH Properties constructed a brand new, state-of-the-art, 160-bed skilled nursing facility on the Real Property.

## THE LEASE

11. In 2017, WPH Properties, as landlord, and HBL, as tenant, entered into the amended and restated Lease, dated as of November 19, 2015, under which WPH Properties leased to HBL the Real Property and the improvements to be constructed on the Real Property, together with other assets, all as defined in Section 2.1 of the Lease (the "Facility"). A true and accurate copy of the Lease is annexed to this complaint as **Exhibit 1** and is incorporated into this complaint by reference.

12. WPH Properties obtained a certificate of occupancy for the Facility on August 22, 2019.

13. HBL entered into possession of the Facility on September 30, 2019.

14. The Lease provided for a term of 30 years, with three 10-year options to the tenant, unless sooner terminated. Exhibit 1, Lease, § 3.1.

15. The Lease obligated HBL to pay WPH Properties annual fixed rent of $6,073,158 in monthly installments of $506,096.50 (the "Fixed Rent"). Exhibit 1, Lease, § 3.2.

16. The Lease also obligated HBL to pay WPH Properties other amounts which are defined as "Additional Rent." Fixed Rent and Additional Rent are referred to collectively as "Rent."

17. The Lease obligated HBL to pay all charges for electricity, steam, telephone, cable, gas, oil, water, sewer and all other services or utilities used on or related to the Premises during the Term. Exhibit 1, Lease, § 4.1.

18. The Lease obligated HBL to pay, before penalties are incurred, all real estate taxes, assessments, utility charges and other taxes. Exhibit 1, Lease, § 4.2.

19. The Lease obligated HBL to keep the Premises in good condition and repair including, at HBL's sole cost and expense, payment of all utility service and maintenance deposits and expenses relating to the Premises. Exhibit 1, Lease, § 5.2.

20. The Lease obligated HBL to deliver a guarantee of all obligations owed by HBL under the Lease from Jozefovic (the "Jozefovic Guaranty") and from Neuman (the "Neuman Guaranty"). Exhibit 1, Lease, § 7.1.

21. A true and accurate copy of the Jozefovic Guaranty is annexed to this complaint as **Exhibit 2**.

22. A true and accurate copy of the Neuman Guaranty is annexed to this complaint as **Exhibit 3**.

23. Pursuant to the Jozefovic Guaranty, Jozefovic absolutely, unconditionally and irrevocably guaranteed the full and prompt payment of all rent, sums and charges of every type and nature payable by HBL under the Lease, whether due by acceleration or otherwise, and the full, timely and complete performance of all obligations to be performed by HBL under the Lease, including obligations that survive termination of the Lease.

24. The Jozefovic Guaranty is an absolute and unconditional guaranty of payment and of performance and is enforceable against Jozefovic without the necessity of any notice of

4

nonpayment, nonperformance or nonobservance, or any notice or demand, all of which Jozefovic expressly waived.

25. Pursuant to the Neuman Guaranty, Neuman absolutely, unconditionally and irrevocably guaranteed the full and prompt payment of all rent, sums and charges of every type and nature payable by HBL under the Lease, whether due by acceleration or otherwise, and the full, timely and complete performance of all obligations to be performed by HBL under the Lease, including obligations that survive termination of the Lease.

26. The Neuman Guaranty is an absolute and unconditional guaranty of payment and of performance and is enforceable against Neuman without the necessity of any notice of nonpayment, nonperformance or nonobservance, or any notice or demand, all of which Neuman expressly waived.

27. The Lease obligated HBL to deliver to WPH Properties, before the commencement date of the Lease, an agreement by Capital Funding Group by which Capital Funding Group agreed to allow HBL to draw down on its credit line each month so as to enable Capital Funding Group to pay the Fixed Rent each month directly to WPH Properties on the commencement date and for the following 11 months. Exhibit 1, Lease, § 7.1.

28. The Lease obligated HBL to deliver to WPH Properties, before the commencement date of the Lease, an unconditional letter of credit or cash in the amount of $3,700,000 to secure the full and timely performance of its obligations under the Lease. Exhibit 1, Lease, § 7.1.

29. The Lease obligated HBL to deliver to WPH Properties, before the commencement date of the Lease, $1,600,000 as an additional security deposit. Exhibit 1, Lease, § 7.1.

30. The Lease obligated HBL to provide WPH Properties all reports, statements and

inspections as defined in the Lease, including all Medicare, Medicaid and other provider agreements and reimbursement rates for the Facility, updated reimbursement rates, financial reporting and written reports providing an operational overview of significant events and circumstances on a monthly basis. Exhibit 1, Lease, § 7.4.

31. The Lease obligated HBL to maintain working capital accounts in specified amounts. Exhibit 1, Lease, § 7.7.

32. The Lease provides that HBL will be in default of the Lease if, among other things, (i) HBL fails to pay any installment of Rent within five days of the date when Rent was due; (ii) HBL defaults in the prompt and full performance of any other of its obligations and fails to correct that failure within 30 days of receipt of written notice from WPH Properties of the default; (iii) HBL fails to give WPH Properties timely notice or timely deliver copies of documents as required by Section 7.4 of the Lease; (iv) HBL defaults or breaches the provisions of Section 7.4(b); (v) a Guarantor defaults beyond expiration of any applicable cure period; or (vi) any governmental authority assesses a fine or penalty against HBL in an amount in excess of $75,000. Exhibit 1, Lease, § 16.1.

33. WPH Properties performed all of the conditions on its part required by the Lease.

34. The Lease provides in Section 16.1 that upon the occurrence of a default by HBL, WPH Properties may, upon five days written notice, terminate the Lease, accelerate the payment of all Rent for the balance of the Term and declare the Rent presently due and payable in full, requiring HBL to pay to WPH Properties the present value of the accelerated Rent.

35. Section 16.1 of the Lease also provides that upon the occurrence of a default, and in addition to all of the other remedies provided for in the Lease, WPH Properties is immediately

entitled to retain the security deposit required by Section 7.1 of the Lease and HBL has no further claim, right, title or interest therein to the extent of WPH Properties' claims.

36. Section 16.1 of the Lease also provides that upon the occurrence of a default and the commencement of an action for Rent or for any other amount due under the Lease, HBL must pay to WPH Properties all of the expenses, including reasonable attorneys' fees, incurred by WPH Properties to enforce the Lease.

37. In addition, under the terms of the Lease, HBL's continuation in occupancy after termination does not constitute a renewal of the Lease, but HBL becomes a tenant month-to-month for a rental of 300% of the most recent Rent payable by HBL under the Lease. Exhibit 1, Lease, § 201.13.

## THE JOZEFOVIC SECURITY AGREEMENT

38. On August 11, 2017 Jozefovic executed a Collateral Assignment and Pledge of Membership Interest and Security Agreement (the "Jozefovic Security Agreement"), assigning to WPH Properties' nominee a first and superior security interest in Jozefovic's interest in Waterview Acquisition I, LLC (the "Jozefovic Waterview Collateral") in order to secure the obligations under the Jozefovic Security Agreement and under the Lease. A true and accurate copy of the Jozefovic Security Agreement is annexed to this complaint as **Exhibit 4**.

39. The Jozefovic Security Agreement provides that Jozefovic has not and will not enter into any assignment, mortgage, pledge or other instrument which transfers or encumbers all or any part of the Jozefovic Waterview Collateral. Exhibit 4, Jozefovic Security Agreement § 3

40. The Jozefovic Security Agreement further provides that Jozefovic agrees not to subsequently further amend or voluntarily permit the amendment of the Waterview Acquisition I,

LLC Operating Agreement that would in any manner materially adversely affect the Jozefovic Security Agreement and/or the rights of WPH Properties. Exhibit 4, Jozefovic Security Agreement § 4

41. On September 15, 2020 WPH Properties duly perfected its security interest with respect to the Jozefovic Waterview Collateral by filing a UCC financing statement.

42. Upon information and belief, in or around December 2019, Jozefovic assigned the Jozefovic Waterview Collateral to Metropolitan Commercial Bank ("MCB") to secure Jozefovic's obligation to repay a $3,000,000 loan from MCB to Jozefovic.

43. Upon information and belief, to effectuate Jozefovic's assignment of the Jozefovic Waterview Collateral to MCB, *Jozefovic agreed to and voluntarily permitted the amendment of the Waterview Acquisition I, LLC Operating Agreement.*

44. Jozefovic breached his obligations under the Jozefovic Security Agreement by agreeing to and voluntarily permitting the amendment of the Waterview Acquisition I, LLC Operating Agreement and assigning the Jozefovic Waterview Collateral to MCB.

45. Jozefovic further breached the Jozefovic Security Agreement by failing to take all of the necessary steps to add Howard Fensterman, a principal of WPH Properties, as a co-signatory to the JP Morgan Chase accounts identified therein as required by the Jozefovic Security Agreement.

46. Jozefovic and HBL breached their obligation to post the $1,600,000 additional security deposit required by the Jozefovic Security Agreement and the Lease.

47. Jozefovic's moving of funds into a separate account that he controls does not satisfy the obligation to post the $1.6 million additional security deposit as required by the Jozefovic

Security Agreement and the Lease.

48. Jozefovic's and HBL's failure to satisfy the obligation to post the $1.6 million additional security deposit constitutes a breach of the Jozefovic Security Agreement and a breach of the Lease.

49. The Jozefovic Security Agreement provides that Jozefovic pledges, assigns and grants a first and superior security interest in and to all of his rights, title and interest as a member of Waterview Acquisition I, LLC to WPH Properties in order to secure the obligations under the Jozefovic Security Agreement and under the Lease.

50. Pursuant to the remedies granted to WPH Properties under the UCC and the Jozefovic Security Agreement, in the event of a default, WPH Properties is entitled, among other remedies, to dispose of the Jozefovic Waterview Collateral at a public sale.

51. Jozefovic breached the Jozefovic Security Agreement and materially and adversely affected the Jozefovic Waterview Collateral and the rights of WPH Properties by (i) agreeing to and voluntarily permitting the amendment of the Waterview Acquisition I, LLC Operating Agreement and (ii) assigning the Jozefovic Waterview Collateral to MCB to secure Jozefovic's obligation to repay a $3,000,000 loan from MCB to Jozefovic.

52. As a result of Jozefovic breaching the Jozefovic Security Agreement by amending the operating agreement and assigning the Jozefovic Waterview Collateral to MCB, any purchaser of the Jozefovic Waterview Collateral at public sale by WPH Properties will purchase the Jozefovic Waterview Collateral subject to MCB's senior security interest in the collateral.

53. Jozefovic's breach of the Jozefovic Security Agreement therefore has caused WPH Properties damages in the amount of $3,000,000, the amount of Jozefovic's obligation to MCB

secured by Jozefovic's illicit assignment of the same collateral to MCB.

### HBL BREACHED ITS OBLIGATIONS UNDER THE LEASE

54. HBL failed to perform its obligations, materially defaulting under the Lease, almost immediately after taking possession of the Premises.

55. HBL failed to pay Rent as required by the Lease.

56. HBL failed to pay real estate taxes as required by the Lease.

57. HBL failed to pay utility deposits as required by the Lease.

58. HBL failed to pay municipal maintenance escrows as required by the Lease.

59. HBL failed to pay utility charges as required by the Lease.

60. HBL failed or refused to deliver certificates of insurance as required by the Lease.

61. HBL failed to deliver to WPH Properties all Medicare, Medicaid and other provider agreements and reimbursement rate sheets for the Facility, as required by the Lease.

62. HBL failed to deliver to WPH Properties all Medicare, Medicaid and other provider updated rate sheets, as required by the Lease.

63. HBL failed to deliver to WPH Properties the required financial reporting, as required by the Lease.

64. HBL failed to deliver to WPH Properties the required written reporting providing an operational overview of significant events and circumstances at the Facility during each prior month of the term of the Lease, as required by the Lease.

65. HBL failed or refused to deliver to WPH Properties the security deposits, as required by the Lease.

66. HBL failed to deliver and maintain the required credit line in an amount equal to

12 months' rent, as required by the Lease.

67.　HBL failed to have and maintain the working capital account required by the Lease.

68.　HBL failed to pay late fees and costs, as required by the Lease.

### THE LETTER OF INTENT

69.　After HBL defaulted, WPH Properties negotiated in good faith with HBL in an attempt to avoid termination of the Lease, despite HBL's default.

70.　On November 20, 2019, WPH Properties and HBL entered into a Letter of Intent (the "LOI") in which WPH Properties and HBL agreed that WPH Properties would sell the Facility for $73,000,000 to a Delaware Statutory Trust in which Jozefovic and Neuman would have a 77.5 percent interest and WPH Properties or its designees would have a 22.5 percent interest.

71.　A true and accurate copy of the LOI is annexed to this complaint as **Exhibit 5**.

72.　The LOI provides for the Lease to be amended to require that HBL pay the November 2019 rent by November 18, 2019, the December rent by December 5, 2019 and all real estate taxes and utility payments by December 1, 2019, that by December 5, 2019 HBL reimburse WPH Properties for $65,856 in municipal and utility deposits, that HBL enter into a Deposit Account Control Agreement with MNB requiring MNB to draw on the account first to pay the rent.

73.　The LOI further provides for the Lease to be amended so that the $3,700,000 security deposit required by Section 7.1(a)(ii) is reduced to $2,000,000, $1,000,000 of which was required to be paid by HBL on or before December 1, 2019 or the date on which WPH Properties obtained a permanent certificate of occupancy for the Facility (which was granted on November 14, 2019), whichever was later, and the balance of which was required to be paid on April 1, 2020,

11

which was the Closing date required by the LOI.

74. In addition, the LOI provides for the Lease to be amended so that in lieu of providing the additional $1,600,000 in security required by Section 7.1(a)(iii) of the Lease, HBL would be required to enter into an agreement with JP Morgan Chase Bank prohibiting liquidation of that account until the second $1,000,000 in security required by the LOI had been paid.

75. The LOI also provides for the Lease to be amended to require HBL to obtain a single working capital line of credit in the amount of $8,000,000 by December 1, 2019.

76. HBL defaulted and breached its obligations under the LOI by failing to pay rent, failing to pay the municipal and utility payments to WPH Properties, failing to pay the real estate taxes and utility payments, failing to enter into the Deposit Account Control Agreement, failing to enter into the agreement with JP Morgan Chase Bank, by failing to pay the first $1,000,000 security deposit as required by the LOI and by failing to obtain the $8,000,000 working capital credit line, and by failing to meet the required Closing date of April 1, 2020.

77. WPH Properties performed all conditions on its part required by the LOI.

78. Solely as a result of HBL's breach of the LOI, WPH Properties did not sell the property to the Delaware Statutory Trust, causing damage to WPH Properties, and WPH Properties incurred interest and late charges on its loans, all of which are the direct result of HBL's breach of the LOI.

**NOTICE OF DEFAULT, TERMINATION OF THE LEASE AND ACCELERATION OF RENT**

79. On January 7, 2020, while the LOI was in effect, WPH Properties served a "Notice of Default And Landlord's Election To Terminate Lease And Accelerate All Rents Due For The Balance of the Lease Term" upon HBL (the "Notice of Default").

80. A true and accurate copy of the Notice of Default is annexed to this complaint as **Exhibit 6** and incorporated into this complaint by reference.

81. The Notice of Default contains a true and accurate accounting of the amounts then due and owing under the Lease and LOI.

82. The Notice of Default gave HBL notice that by reason of HBL's defaults under the Lease, WPH Properties had exercised its right under Section 16.1 of the Lease to terminate the Lease, effective January 13, 2020.

83. The Notice of Default further gave HBL notice that pursuant to Section 16.1 of the Lease all Rent for the balance of the Term was accelerated and HBL became obligated to pay WPH Properties the present value of the accelerated rent, discounted at a rate of 6% per annum.

84. HBL continued, and still continues, to occupy the Premises, despite WPH Properties' termination of the Lease.

85. Because HBL has held over after its default resulted in termination of the Lease, HBL is a tenant month-to-month at a rent equal to 300% of the most recent Rent payable by HBL under the Lease. Exhibit 1, Lease, § 20.13.

86. HBL has failed to perform its obligations as a tenant month-to-month by failing to pay rent in the amount of 300% of the most recent Rent payable by HBL under the Lease, remitting only the base rent which had been payable before WPH Properties terminated the Lease.

87. HBL is in default with respect to its obligations under the Lease and its obligations as a month-to-month tenant following termination of the Lease effective January 13, 2020.

### AMOUNTS DUE

88. As a result of HBL's defaults, HBL is obligated to pay to WPH Properties, as of

August 25, 2020, the sum of $113,832,987.54 (the "Amounts Due"), as follows: (i) holdover rent and rent, $7,096,182.79; (ii) municipal and utility deposits, $26,725.35; (iii) security and working capital deposits, $9,800,000.00; (iv) late fees, default fees, costs and professional fees, $1,948,753.00; and (v) accelerated rent, $94,961,326.40.

89.     HBL is obligated to pay to WPH Properties the Amounts Due in full, plus any amounts that have accrued since August 25, 2020.

90.     HBL has failed or refused to pay the Amounts Due.

91.     WPH Properties has fully performed all obligations required to be performed on its part with respect to the Lease, the LOI, HBL's month-to-month tenancy after the termination of the Lease, the Jozefovic Guaranty, the Neuman Guaranty, the HBL Security Agreement, the Jozefovic HBL Security Agreement and the Neuman HBL Security Agreement.

### FIRST CAUSE OF ACTION AGAINST HBL
### (BREACH OF CONTRACT)

92.     WPH Properties repeats and re-alleges each and every allegation set forth in paragraphs "1" through "91" with the same force and effect as if fully set forth here.

93.     By reason of HBL's material default and breach of its obligations pursuant to the Lease and its obligations as a month-to month tenant after termination of the lease, WPH Properties is entitled to judgment against HBL for the Amounts Due, together with the other and further amounts that may come due between the date of this complaint and the entry of judgment, plus interest from the date of the default as provided by law.

### SECOND CAUSE OF ACTION AGAINST HBL
### (BREACH OF CONTRACT)

94.     WPH Properties repeats and re-alleges each and every allegation set forth in

14

paragraphs "1" through "93" with the same force and effect as if fully set forth here.

95. By reason of HBL's material default and breach of its obligations pursuant to the LOI, WPH Properties is entitled to judgment against HBL in an amount to be determined at trial.

### THIRD CAUSE OF ACTION AGAINST JOZEFOVIC
### (ENFORCING GUARANTY)

96. WPH Properties repeats and re-alleges each and every allegation set forth in paragraphs "1" through "95" with the same force and effect as if fully set forth here.

97. By reason of HBL's default in the performance of its obligations under the Lease, WPH Properties is entitled to judgment against Jozefovic for the Amounts Due pursuant to the terms of the Jozefovic Guaranty.

### FOURTH CAUSE OF ACTION AGAINST NEUMAN
### (ENFORCING GUARANTY)

98. WPH Properties repeats and re-alleges each and every allegation set forth in paragraphs "1" through "97" with the same force and effect as if fully set forth here.

99. By reason of HBL's default in the performance of its obligations under the Lease, WPH Properties is entitled to judgment against Neuman for the Amounts Due pursuant to the terms of the Neuman Guaranty.

### FIFTH CAUSE OF ACTION AGAINST JOZEFOVIC
### (BREACH OF CONTRACT)

100. WPH Properties repeats and re-alleges each and every allegation set forth in paragraphs "1" through "99" with the same force and effect as if fully set forth here.

101. By reason of Jozefovic's default in the performance of his obligations under the Jozefovic Security Agreement and HBL's default in the performance of its obligations under the Lease, WPH Properties is entitled to judgment against Jozefovic in the amount of $3,000,000.00.

**WHEREFORE**, WPH Properties demands judgment as follows:

1.  On its First cause of action, against HBL in the amount of $113,832,987.54, together with the other and further amounts that may come due between the date of this complaint and the entry of judgment, plus interest from the date of the default as provided by law; and

2.  On its Second Cause of Action, against HBL, in an amount to be determined at trial; and

3.  On its Third Cause of Action, against Jozefovic in the amount of $113,832,987.54, together with the other and further amounts that have come due since August 25, 2020 and may come due between the date of this complaint and the entry of judgment, plus interest from the date of the default as provided by law; and

4.  On its Fourth Cause of Action, against Neuman in the amount of $113,832,987.54, together with the other and further amounts that have come due since August 25, 2020 and may come due between the date of this complaint and the entry of judgment, plus interest from the date of the default as provided by law; and

5.  On its Fifth Cause of Action, against Jozefovic in the amount of $3,000,000.00; and

6.  On all causes of action, awarding costs, disbursements and attorneys' fees against HBL pursuant to the provisions of the Lease and against Jozefovic and Neuman pursuant to the provisions of the Jozefovic Guaranty and the Neuman Guaranty; and

7. Awarding such other and further relief as the Court may deem just and proper.

Dated: White Plains, New York
March 19, 2021

DelBello Donnellan Weingarten Wise & Wiederkehr, LLP
*Lead Counsel for Plaintiff White Plains Healthcare Properties I, LLC*

By: *Alfred E. Donnellan*
Alfred E. Donnellan, Esq.
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200

Abrams, Fensterman, Fensterman, Eisman, Formato,
Ferrara, Wolf & Carone, LLP
*Co-Counsel for Plaintiff White Plains Healthcare Properties I, LLC*
Robert A. Spolzino, Esq.
81 Main Street, Suite 306
White Plains, New York 10601
(914) 607-7010

17

## VERIFICATION

COMMONWEALTH OF MASSACHUSETTS  )
) ss:
COUNTY OF ESSEX  )

William A. Nicholson, being duly sworn, deposes and says:

I am the Manager of plaintiff, White Plains Healthcare Properties I, LLC. I have read the annexed Amended Verified Complaint, know the contents thereof and the same are true to my own knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.

William A. Nicholson

Sworn to before me this
4th day of March 2021

Notary Public

18