**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re:

HBL SNF, LLC, d/b/a EPIC REHABILITATION
AND NURSING AT WHITE PLAINS,

                                Debtor.
------------------------------------------------------------------------x
WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,

                                Plaintiff,

                against

HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER
JOZEFOVIC, and MARK NEUMAN,

        Defendants and Third-Party Plaintiffs,

                against

CCC EQUITIES, LLC, PROJECT EQUITY
CONSULTING, THE CONGRESS COMPANIES,
HOWARD FENSTERMAN, WILLIAM NICHOLSON, and
METROPOLITAN COMMERCIAL BANK

                Third-Party Defendants
------------------------------------------------------------------------x

Chapter 11

Case No. 21-22623 (SHL)

Adversary Proceeding

Case No. 21-07096 (SHL)

**WHITE PLAINS HEALTHCARE PROPERTIES I, LLC'S STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT ON LEASE TERMINATION ISSUE</u>**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7056-1(b) of this Court, Plaintiff White Plains Healthcare Properties I, LLC ("**Plaintiff**" or the "**Landlord**") submits this Statement of Undisputed Facts in Support of Its Motion for Summary Judgment seeking a ruling that defendant HBL SNF, LLC ("**Defendant**" or the "**Tenant**") defaulted under the Lease (defined below), and that the Landlord properly terminated the Lease. Pursuant to 7056-1(e) of the Local Rules of the United States Bankruptcy Court for the Southern District of New York, each statement of material fact is followed by a citation to evidence that would be admissible at trial.

I. **The Lease Requirements and Tenant's Defaults**

1. In July 2017, Landlord and Tenant entered into the amended and restated Lease of the Real Property, dated as of November 19, 2015 (the "**Lease**"), relating to the operation of a 160-bed skilled nursing facility (the "**Facility**") located at 116-120 Church Street, White Plains, New York. Nicholson Aff. ¶ 12.[1]

2. The Lease states, in relevant part:

This instrument contains the entire agreement between the Parties hereto with respect to the subject matter hereof. All representations, promises and prior or contemporaneous undertakings between such Parties are merged into an expressed in this instrument, and any and all prior agreements between such Parties are hereby canceled. The agreements contained in this instrument shall not be amended, modified, or supplemented except by a written agreement duly executed by both Landlord and Tenant.

Nicholson Aff. Ex. 12 § 20.6.

---

[1] References herein to the Nicholson Affidavit are to the Affidavit of William A. Nicholson, dated August 18, 2021, filed in the Supreme Court of the State of New York, County of Westchester, Index No. 60278/2020 (NYSCEF Doc. No. 196).

3. Tenant began occupancy under the Lease as of September 30, 2019. Nicholson Aff. ¶ 6.

### A. The Tenant Failed to Provide the Security Deposit

4. The Lease required the Tenant to provide a security deposit. *See generally* Nicholson Aff. Ex. 12 § 7.1.

5. With respect to the security deposit, the Lease required that 60 days prior to commencement of the Lease, Tenant deliver to Landlord a Letter of Credit or cash in the amount of $3,700,000 "to secure the full and timely payment and performance of Tenant's obligations under [the] Lease." Nicholson Aff. Ex. 12 § 7.1(a)(ii).

6. Tenant's failure to deliver the $3,700,000 through delivery of a Letter of Credit or cash "shall be deemed a Lease Default by Tenant." Nicholson Aff. Ex. 12 § 7.1(a)(ii).

7. The Lease also required that, 60 days prior to commencement of the Lease, the $1,600,000 held by Tenant in a specified account at JPMorgan Chase Bank, N.A. ("**JPMorgan**") "shall be delivered by Tenant to Landlord and released by Tenant to Landlord to be held as an additional Security Deposit by Landlord." Nicholson Aff. Ex. 12 § 7.1(a)(iii).

8. Failure to deliver the additional security deposit is a default under the Lease. Nicholson Aff. Ex. 12 §§ 7.1(a)(iii), 16.1(xxvi).

9. Tenant failed to deliver a security deposit in the form of a Letter of Credit or cash in the amount of $3,700,000, sixty days prior to the Lease commencement date. Reply Nicholson Decl. ¶ 3.[2]

---

[2] References herein to the Reply Nicholson Declaration are to the Reply Declaration of William A. Nicholson, dated November 5, 2021, filed in this adversary proceeding, Case No. 21-07096 (SHL) (Adv. Dkt. No. 1-40).

3

10. Tenant has never delivered a security deposit in the form of a Letter of Credit or cash in the amount of $3,700,000. Reply Nicholson Decl. ¶ 3.

11. Tenant failed to provide an additional cash security deposit by failing to deliver to Landlord $1.6 million held in Tenant's JPMorgan account number ending in *7272, sixty days prior to the Lease commencement date. Reply Nicholson Decl. ¶ 4.

12. Tenant has never delivered the $1.6 million held in Tenant's JPMorgan account to Landlord or otherwise delivered an additional cash security deposit in the amount of $1.6 million. Reply Nicholson Decl. ¶ 4.

**B.    Additional Tenant Defaults**

13. In addition to the failure to deliver the security deposit or the additional security deposit, Tenant materially breached the Lease in numerous other respects. *See generally* Tabor Decl. ¶¶ 4-12.[3]

**1.    Failure to Timely Pay Rent**

14. Tenant was required under the Lease to pay rent to the Landlord every month in the amount of $506,096.50. Nicholson Aff. Ex. 12 § 3.2(a).

15. The monthly rent is due and payable on the first business day of each calendar month. Nicholson Aff. Ex. 12 § 3.2(d).

16. Rent for any period that is less than a full calendar month shall be prorated on a daily basis. Nicholson Aff. Ex. 12 § 3.2(d).

17. Rent paid more than 5 days after the due date incurs a late charge equal to 5% of the unpaid portion of the rent. Nicholson Aff. Ex. 12 § 3.2(e).

---

[3] References herein to the Tabor Declaration are to the Reply Declaration of Edward O. Tabor, dated November 5, 2021, filed in this adversary proceeding, Case No. 21-07096 (SHL) (Adv. Dkt. No. 1-41).

18.     Tenant failed to pay rent in a timely manner and has incurred late and interest charges in an amount in excess of $220,784.14.  Tabor Aff. ¶ 8; *id.* Ex. 25.[4]

19.     Exhibit 25 to the Tabor Affidavit is a chart showing: (i) the amount of rent due from September 30, 2019 through July 31, 2021, (ii) the due date for each payment, (iii) the amounts paid by Tenant, (iv) the date Landlord received each rent payment, (v) the number of days late, if any, for each payment, and (vi) the late charges and overdue interest accrued.

### 2.    Failure to Pay Real Estate Taxes in a Timely Manner

20.     Tenant is required to pay all real estate taxes, assessments, and other taxes in a timely manner before penalties on any such payments are incurred.  Nicholson Aff. Ex. 12 § 4.2.

21.     Tenant failed to pay real estate taxes in a timely manner, resulting in interest at the overdue rate in the amount of $2,621.94.  Tabor Aff. ¶ 31; *id.* Ex. 38.

### 3.    Failure to Pay Utility Charges and Deposits, and Municipal Maintenance Escrows

22.     The Lease required Tenant to pay all charges or deposits for electricity, steam, telephone, cable, gas, oil, water, sewer, and all other services and utilities used on or related to the Facility.  Nicholson Aff. Ex. 12 § 4.1.

23.     The Lease also requires Tenant to keep the Facility in good condition and repair including, at Tenant's sole cost and expense, payment of all utility service and maintenance deposits and expenses.  Nicholson Aff. Ex. 12 § 5.2.

24.     Tenant failed to pay (i) certain utility charges to Con Edison, and (ii) utility deposits and municipal maintenance escrows, totaling $71,472.69.  Tenant has reimbursed

---

[4] References herein to the Tabor Affidavit are to the Affidavit of Edward O. Tabor, dated August 18, 2021, filed in the Supreme Court of the State of New York, County of Westchester, Index No. 60278/2020 (NYSCEF Doc. No. 212).

5

Landlord for a portion of these charges in the amount of $41,175.00. Tenant still owes the Landlord $35,921.44. Tabor Aff. ¶ 32; *id.* Ex. 33.

### 4. Failure to Deliver Required Certificates of Insurance

25. The Lease requires Tenant to deliver, upon commencement of the Lease, certificates of insurance showing that each type of insurance required under Article VI of the Lease is in full force and effect and cannot be canceled or modified absent prior written notice to the Landlord. Nicholson Aff. Ex. 12 § 6.2.

26. Tenant failed to deliver any certificates of insurance until January 28, 2020 – several weeks after the Landlord had already sent the notice to Tenant exercising its right to terminate the Lease. Tabor Aff. ¶ 34; *id.* Ex. 39. The Tenant provided a subsequent certificate of insurance on July 28, 2021. *Id.*

27. In addition to being untimely, the certificates of insurance that were provided do not fully comply with the Lease requirements. Tabor Aff. ¶ 34; *id.* Exs. 39, 40.

28. The certificates of insurance illustrate that the policy limits obtained by Tenant are significantly lower than the requirements set forth in Section 6.1 of the Lease. An analysis of the amount of the deficiencies is set forth as Exhibit 40 to the Tabor Affidavit.

### 5. Failure to Deliver Medicare, Medicaid, and Other Provider Agreements and Information

29. The Lease requires Tenant to deliver all Medicare, Medicaid, and other provider agreements within 30 days of receipt by Tenant, and reimbursement rate sheets within 10 days of receipt by Tenant. Nicholson Aff. Ex. 12 § 7.4(g) & (j).

30. Tenant has never delivered any Medicare and Medicaid provider agreements to Landlord. Tabor Aff. ¶ 36.

6

31.     Tenant failed to provide Medicaid reimbursement rate sheets until July 2021, and has never provided the required Medicare documentation or any revised or amended reimbursement rate sheets.  Tabor Aff. ¶ 36; *id.* Ex. 41.

### 6.    Failure to Provide Financial and Operational Reporting

32.     The Lease requires Tenant to provide to Landlord the following financial and operational reporting: (i) an annual budget; (ii) unaudited monthly financial statements; (iii) "a written report providing an operational overview of significant events and circumstances at the facility during the prior month, during the first six months of the Term and then quarterly thereafter, including, but not limited to, clinical events, employee relations and staffing matters"; and (iv) copies of all federal income tax returns within fifteen days after filing.  Nicholson Aff. Ex. 12 §§ 7.4(a)(i), 7.4(a)(iii), 7.4(a)(vi).

33.     Tenant failed to deliver the required financial and operational reporting.  Tabor Aff. ¶ 38.

### II.    Non-Waiver and Release Provisions in the Lease

34.     The Lease contains non-waiver provisions to ensure that any efforts by Landlord to resolve disputes arising under the Lease are not deemed to waive those breaches.  Nicholson Aff. Ex. 12 §§ 20.2, 20.3.

35.     Specifically, Section 20.3 of the Lease provides:

> Neither any failure nor any delay on the part of any party hereto in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, or any other document or instrument entered into or delivered in connection herewith or pursuant hereto, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege.  A waiver of one default with respect to any Person shall not be construed to be a waiver of any subsequent default with respect to such Person or any other Person or to impair any remedy, right or power consequent thereon.

36. Section 20.2 of the Lease further states that "[t]he waiver by either party of a breach or violation of any provision of this Lease shall not operate as, or be construed to be a waiver of, any subsequent breach of the same or other provision hereof. No waiver shall be effective unless set forth in writing and signed by the party against whom such waiver is asserted."

37. The Lease further states:

> EFFECTIVE AS OF THE DATE OF THIS LEASE, TENANT SHALL RELEASE LANDLORD FROM ALL CLAIMS WHICH TENANT OR ANY AGENT, REPRESENTATIVE, AFFILIATE, EMPLOYEE, DIRECTOR, OFFICER, PARTNER, MANAGER, MEMBER, SERVANT, SHAREHOLDER, TRUSTEE OR OTHER PERSON OR ENTITY ACTING ON TENANT'S BEHALF OR OTHERWISE RELATED TO OR AFFILIATED WITH TENANT ARISING FROM OR RELATED TO ANY MATTER OR THING RELATED TO OR IN CONNECTION WITH THE LEASED PREMISES, INCLUDING THE INFORMATION AD ANY PHYSICAL OR ENVIRONMENTAL CONDITIONS, AND TENANT SHALL NOT LOOK TO LANDLORD IN CONNECTION WITH THE FOREGOING FOR ANY REDRESS OR RELIEF . . . . EXCEPT AS TO MATTERS SPECIFICALLY SET FORTH IN THIS LEASE: (A) TENANT WILL ACQUIRE THE LEASED PREMISES SOLELY ON THE BASIS OF ITS OWN PHYSICAL AND FINANCIAL EXAMINATIONS, REVIEWS AND INSPECTIONS, AND (B) WITHOUT LIMITING THE FOREGOING, WAIVES ANY RIGHT IT OTHERWISE MAY HAVE AT LAW OR IN EQUITY AGAINST LANDLORD WITH RESPECT TO ANY ASPECT OF LEASED PREMISES.

Nicholson Aff. Ex. 12 § 5.6(b).

### III.    The Letter of Intent

38. In November 2019, the parties entered into a letter of intent (the "**LOI**") as part of an effort to resolve the accumulation of issues arising from the Tenant's numerous breaches. Nicholson Aff. ¶ 19.

39. The Tenant failed to comply with the terms of the LOI, including failing to timely deliver sums promised pursuant to the LOI. Nicholson Aff. Ex. 17 § 10.

8

40. Due to Tenant's failure to comply with its terms, the LOI did not lead to a completed transaction.  Nicholson Aff. ¶ 21.

**IV.    Termination of the Lease**

41. The following is a list of specifically enumerated Tenant defaults under the Lease: (i) failure to pay any installment of rent within five (5) days after the date when due; (ii) failure to timely deliver documents required under Sections 7.4(c) through (o) of the Lease; (iii) failure to procure the insurance coverage required by the Lease; and (iv) failure to deliver all or any portion of the security deposit.  Nicholson Aff. Ex. 12 §§ 16.1(i), (xv), (xxvi), (xxxv).

42. It is also a default under the Lease if Tenant defaults in "the prompt and full performance of any other of Tenant's covenants, obligations or agreements hereunder which are not specifically enumerated herein as a Lease Default and fails to correct such failure within thirty (30) days of receipt of written notice from Landlord of such default."  Nicholson Aff. Ex. 12 § 16.1(ii).

43. Upon the occurrence of a default under the Lease, "Landlord may, if Landlord so elects, upon five (5) days written notice of such election, forthwith terminate this Lease and Tenant's right to possession of the Leased Premises."  Nicholson Aff. Ex. 12 § 16.1(a).

44. Upon the occurrence of a default the Landlord may in its "sole and absolute discretion, accelerate the payment of all Rent for the balance of the Term and declare the same presently due and payable in full."  Nicholson Aff. Ex. 12 § 16.1(a).

45. On January 7, 2020, Landlord sent a termination notice to Tenant exercising its right to terminate the Lease.  Tabor Aff. ¶¶ 9, 10; *id.* Ex. 26.

46. Accordingly, the Lease's termination took effect five days later on January 12, 2020, and, as of January 12, 2020, Tenant's right to possession of the Leased Premises came to an end.

47. Notwithstanding the Lease termination, Tenant continues to occupy the Facility.

Tabor Decl. ¶ 6.

| | |
|---|---|
| Dated: February 11, 2022<br>New York, New York | Respectfully submitted,<br><br>BINDER & SCHWARTZ LLP<br><br>/s/ Eric B. Fisher<br>Eric B. Fisher<br>Lindsay A. Bush<br>366 Madison Avenue, 6th Floor<br>New York, NY 10017<br>Tel.: (212) 510-7272<br>Email: efisher@binderschwartz.com<br>Email: lbush@binderschwartz.com<br><br>-and-<br><br>DELBELLO DONNELLAN WEINGARTEN WISE &<br>WIEDERKEHR, LLP<br>Alfred E. Donnellan<br>One North Lexington Avenue, 11th Floor<br>White Plains, New York 10601<br>Tel.: (914) 681-0200<br>Email: aed@ddw-law.com<br><br>ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN,<br>FORMATO, FERRARA, WOLF & CARONE, LLP<br>Robert A. Spolzino<br>81 Main Street, Suite 306<br>White Plains, New York 10601<br>Tel.: (914) 607-7010<br>Email: RSpolzino@Abramslaw.com<br><br>*Counsel for White Plains Healthcare Properties I, LLC* |