# **<u>Exhibit 7</u>**



**THE CONGRESS COMPANIES**
West Peabody Executive Center, 2 Bourbon Street, Suite 200, Peabody MA, 01960     Phone: 978.535.6700   Fax: 978.535.6701

# Transmittal Cover Sheet

| WHITE PLAINS HEALTHCARE | Project # 415 | White Plains Healthcare Properties I, LLC |
|---|---|---|
| 120 Church Street<br>White Plains, NY 10601 | Tel: 978.535.6700  Fax: 978.535.6701 | |

| **Date: 03/12/2019** | **Reference Number:    140** |
|---|---|
| **Transmitted To** | **Transmitted By** |
| Lizer Jozefovic<br>Skyview Rehabilitation & Healthcare<br>1280 Albany Post Road<br>Croton-on-Hudson, NY 10520<br>Tel: 914.271.5151<br>Fax: 914.271.4455 | Kim Jackson<br>White Plains Healthcare Properties I, LLC<br>2 Bourbon Street<br>Peabody, MA 01960<br>Tel: 978.535.6700 ext. 125<br>Fax: 978.535.6701 |
| **Package Transmitted For** | **Delivered Via** |
| Information | Email/Overnight UPS Delivery |
| **Cc:** | |
| Howard Fensterman, Abrams Fensterman Fensterman Eisman Formato Ferrara & Wolf<br>Mark Zafrin, Michelman & Robinson LLP<br>Joshua Roccapriore, White Plains Healthcare Properties I, LLC | |
| **Remarks** | |

Enclosed for your use and information, please find the following document:

* WPHC Tenant Lease Notice

If you require further assistance please contact Joshua Roccapriore, Owner's Representative at (978) 535-6700 ext. 135 or via email: jroccapriore@congressconstruction.com

Thank you.

encl.



# THE CONGRESS COMPANIES
General Contractors, Construction Managers, Property Managers, Development Services

| | |
|---|---|
| BOSTON:<br>West Peabody Executive Center<br>2 Bourbon Street<br>Peabody, MA 01960<br>Phone: 978-535-6700<br>Fax:    978-535-6701<br>inquire@congressconstruction.com | NEW YORK:<br>1111 Marcus Ave.<br>Building A, Suite LL08<br>Lake Success, NY 11042<br>Phone: 516-328-6490<br>Fax:    516-328-6464 |

March 12, 2019

HBL SNF, LLC                                **Via: Email & UPS Overnight Delivery**
1280 Albany Post Road                       (lizerj@watersedgeusa.com)
Croton-on-Hudson, NY 10520

ATT: Lizer Josefovic

Re:     **White Plains Institute for Rehabilitation and Healthcare**
        **Lease Notice**

Dear Lizer,

As reviewed in our Owner-Tenant Meetings, as well as the "Tenant Deliverables – Business Coordination Items" List, please accept this writing as Notice under the Lease Section 7.1, Security Deposit/Guaranty, particularly Article VII, Section 7.1, (a) (i), (ii) and (iii), a copy of which is attached for your convenience.

Please also accept this writing as the 30-day Notice under Article VIII of the Development Agreement), a copy of which is attached for your convenience.

The anticipated Commencement Date is on or around May 15, 2019. We will continue to keep you fully informed as construction progresses.

The Commencement Date is defined under the Lease, Section 3.1, and is essentially the date at which a permanent or temporary Certificate of Occupancy is issued, as well as the date that NY DOH determines that the Landlord's Work is sufficiently complete as constructed to accept patients.

If you have any questions, please do not hesitate to contact me.

Thank you.

Regards,

*[signature]*

Joshua Roccapriore
Owner's Representative
WHITE PLAINS HEALTHCARE PROPERTIES I, LLC.

1
Congress Construction Corp.
Congress Building Corp.
PCE Management
PCE Properties

WPH0005529

Cc:   Michelman and Robinson        Email Only
      800 Third Avenue, 24th Floor
      New York, New York 10022
      ATT: Mark Zafrin, Esq.

      White Plains Health Care Properties I, LLC    Email Only
      Abrams Fensterman
      1111 Marcus Avenue
      Lake Success, New York 11042
      ATT: Howard Fensterman

2
Congress Construction Corp.
Congress Building Corp.
PCE Management
PCE Properties

WPH0005530

A. The Developer shall have obtained all Approvals for the development of the Project based upon the Outline Plans and Specifications, 3d Edition, 160 Beds. The Parties acknowledge that all necessary land use approvals for the development of the Project have been previously obtained based upon the approved Outline Plans and Specifications, 2nd Edition, 179 Beds. The Operator/Tenant agrees to assist and fully cooperate with Developer in connection with obtaining the Approvals.

B. The Developer shall have obtained a Construction Loan or other financing acceptable to the Developer and the DOH which upon completion shall convert to permanent mortgage financing (the "**Permanent Financing**") in an amount which is at least 75% of the Project Cost.

C. The Operator/Tenant shall have obtained all DOH Approvals.

With regard to each of the foregoing contingencies (the "**Contingencies**") each Party agrees to exert, vigorously and expeditiously, all necessary efforts on its behalf to initiate or assist in the satisfaction of each of the Contingencies. Each Party agrees to do nothing that would be detrimental to the satisfaction of the Contingencies.

## ARTICLE VIII
## SUBSTANTIAL COMPLETION DATE

The "Substantial Completion Date" shall mean the date which is the later of: (i) the date specified in the AIA Form G704, duly executed and certified by the Architect, that the Project was substantially completed and in substantial compliance with the Plans and Specifications for the Project, (ii) the date Developer delivers a Temporary Certificate of Occupancy (the "TCO") for the Project, and (iii) the date the DOH approves the Project as constructed (but not necessarily the Operator/Tenant's operations) to accept patients, provided, however, if the Developer is unable to obtain the TCO or Permanent CO because of the actions or inactions of the Operator/Tenant, its employees or agents including, but not limited to, a delay in obtaining the necessary DOH approvals then delivery of the TCO shall not be a condition under this clause (i); Developer will give Operator/Tenant thirty (30) days' notice of the date Developer expects to be the Substantial Completion Date.

## ARTICLE IX
## HOLD HARMLESS

A. Developer agrees to indemnify and hold harmless Operator/Tenant, and its managers, officers and employees from and against any and all claims, including reasonable legal fees, liability costs and expenses to the extent arising out of Developer's breach of this Agreement or in connection with, the work undertaken in the Project by the Developer.

(d) <u>Transfers</u>. Consistent with Section 2.2, in connection with any assignment of Landlord's interest under this Lease and the assumption of this Lease by a new landlord, the original Landlord named herein and each successor in interest shall have the right to transfer all amounts deposited pursuant to the provisions of this Section 4.3 and not used pursuant to this Section 4.3 to such assignee (as the subsequent holder of Landlord's interest in this Lease) and upon such transfer, the original Landlord named herein or the applicable successor in interest transferring the deposits shall thereupon be completely released from all liability with respect to such deposits so transferred and Tenant shall look solely to said assignee, as the subsequent holder of Landlord's interest under this Lease, in reference thereto.

(e) <u>Security</u>. All amounts deposited with Landlord pursuant to the provisions of this Section 4.3 shall be held by Landlord as additional security for the payment and performance of Tenant's obligations under this Lease and, upon the occurrence and during the continuance of any Lease Default, Landlord may, in its sole and absolute discretion, apply such amounts towards payment or performance of such obligations.

(f) <u>Return</u>. Upon the expiration or earlier termination of this Lease, as long as all of the Rent and any and all other obligations due under this Lease have been fully paid and performed, any sums then held by Landlord under this Section 4.3 shall be refunded to Tenant, and subject to the rights of a Mortgagee, together with all interest, if any, earned thereon and all income, if any, earned therefrom; provided, however, that if a Lease Default has occurred and is continuing, all of such sums may be applied by Landlord towards any amounts owed to Landlord pursuant to this Lease.

(g) <u>Receipts</u>. Tenant shall deliver to Landlord copies of all claims and bills in relation to the Impositions and insurance premiums promptly upon receipt thereof by Tenant.

This Article and the obligations herein shall survive expiration or earlier termination of this Lease.

## ARTICLE V

## LANDLORD'S WORK, MAINTENANCE AND REPAIR; IMPROVEMENTS

Section 5.1    <u>Landlord's Work</u>.  (a) Landlord shall cause the Facility to be constructed ("**Landlord's Work**").

(b)    Landlord will give Tenant thirty (30) days' notice of the date Landlord expects to be the Substantial Completion Date. On or prior to the Substantial Completion Date, Landlord and Tenant shall jointly prepare a list of the items for the Facility that remain to be completed or corrected, set a dollar value for the cost to complete the work, and fix time for their completion or correction (collectively the "**Punchlist**").

(c)    Notwithstanding anything in this lease to the contrary, on and after the Substantial Completion Date Tenant shall be deemed to have agreed Landlord has completed Landlord's Work to Tenant's complete satisfaction, except for (i) the Punchlist, (ii) such items of decoration or mechanical adjustment of which Tenant gives Landlord written notice within thirty

14

Section 6.2    Certificates of Insurance. Upon the Commencement Date of this Lease, Tenant shall furnish Landlord, Mortgagee and other third parties which Landlord shall designate with appropriate certificates of insurance on acceptable Acord forms, together with an additional insurance endorsement showing that each type of insurance required under this Article VI is in full force and effect and not cancelable or modifiable without thirty (30) days prior written notice to Landlord, and upon request of Landlord or one or more of such additional insureds, deliver copies of such insurance policies. Tenant will provide Landlord with acceptable certificates of insurance pursuant to this Section 6.2 evidencing the renewal of such Policies ten (10) Business Days prior to the Policies' expiration date. Tenant acknowledges that all such certificates shall name Landlord, its successors and assigns, and Mortgagee, its successors and assigns, as additional insureds on the general liability and umbrella policies and as a loss payee/mortgagee, as their interests may appear, on the property and boiler and machinery policies.

Section 6.3    Waiver of Subrogation. Landlord and Tenant hereby waive all rights of recovery for causes of action which either has or may have or which may arise hereafter against the other for any damage to the Leased Premises or the property or business of either of them or of anyone claiming through either of them, by way of subrogation or otherwise, caused by any of the perils covered by a special form policy of property insurance or contents insurance or by any other insurance for damage to property carried by the party whose property was damaged; provided, however, that the foregoing waiver shall apply only if and to the extent that a waiver of subrogation for property damage is not prohibited in the State of New York, has been consented to by the applicable insurance carrier, and only to the extent of such insurance coverage.

## ARTICLE VII

## SECURITY, ACCESS AND REPORTING OBLIGATIONS, WORKING CAPITAL

Section 7.1    Security Deposit/Guaranty.

(a)    Contemporaneously with the execution of this Lease, Tenant, shall deliver a guarantee of this Lease (the "Guaranty") from Lizer Josefovic and Mark Neuman (collectively, the "Guarantors") in the form of Exhibit "B" attached hereto, or in form and amounts as may be otherwise required by the Landlord and Landlord's first and second Mortgagee. As further security for the Tenants performance under the Lease, the Tenant hereby agrees as follows:

(i)    Tenant shall post at such times as required by Landlord's first and second Mortgagee, and Landlord in its reasonable discretion (but at least 45 days prior to the Commencement Date), and from time to time such Letters of Credit and/or reserves in such amounts and under such terms as required by Landlord's first and second Mortgagee, and Landlord in its reasonable discretion.

(ii)    Tenant shall deposit at the time required by Landlord's first and second Mortgagee, and Landlord in its reasonable discretion, a sum in cash in an amount equal to the greater of (A) an amount determined by Landlord's first and second Mortgagee, and (B) one year's Fixed Rent with Landlord to be held by Landlord as a security

25