# Exhibit 12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------------------------------------------------------ X

SECURITY BENEFIT LIFE INSURANCE COMPANY,    :
SECURITY BENEFIT CORPORATION,               :
                                            :
                        *Plaintiffs*,       :
                                            :         Index No.
            -against-                       :
                                            :
WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,  :        **VERIFIED COMPLAINT**
WILLIAM A. NICHOLSON, HOWARD FENSTERMAN,    :
MATTHEW BARBARA, PAUL BARBARA, NEW YORK     :
STATE DEPARTMENT OF TAXATION, CITY OF       :
WHITE PLAINS FINANCE DEPARTMENT, and        :
JOHN DOE NOS. 1-10,                         :
                                            :
                        *Defendants*.       :
                                            :
The Names of the "John Doe" Defendants Being Fictitious    :
and Unknown to Plaintiffs, the Persons and Firms Intended  :
Being Those Who May Be in Possession of, or May Have       :
Possessory, Lien or Other Interests in, the Premises Herein :
Described.                                                  :

------------------------------------------------------------------------ X

Plaintiffs Security Benefit Corporation ("Agent"), a Kansas corporation, and Security

Benefit Life Insurance Company ("Security Benefit" and together with Agent, the "Lender"), a

Kansas insurance company, by their attorneys, DLA Piper LLP (US), as for their Verified

Complaint against the defendants, allege as follows:

## NATURE OF THE ACTION

1.        Lender brings this action to foreclose on real property and improvements in the

County of Westchester and State of New York, known as Section 125.67, Block 3 Lot 1 in the

City of White Plains and located at 120 Church Street (the "Mortgaged Property"). The Mortgaged

Property secures a $38.5 million loan made to Defendant White Plains Healthcare Properties I,

LLC ("Borrower"). Borrower first defaulted on the loan in 2019, long before the COVID-19

pandemic and related government shutdown orders took effect, and failed to pay back all principal and outstanding interest due on the August 1, 2020 maturity date.  Lender also sues the individual guarantors who promised to pay the amounts due and owing if Borrower failed to perform, and who promised to cover any deficiencies that arise after application of the proceeds from a public foreclosure auction of the Mortgaged Property.

## **THE PARTIES**

2.      Security Benefit Life Insurance Company is, and at all relevant times hereinafter mentioned was, an insurance company, organized and existing under the laws of the State of Kansas, with an address at One Security Benefit Place, Topeka, KS 66626-0001.

3.      Agent is, and at all relevant times hereinafter mentioned was, a corporation organized and existing under the laws of the State of Kansas, with an address at One Security Benefit Place, Topeka, KS 66626-0001.

4.      Upon information and belief, Borrower is a limited liability company organized and existing under the laws of the State of Massachusetts, with an address at West Peabody Executive Center, Suite 200, 2 Bourbon Street, Peabody, MA 01960, and is the fee simple owner of the Mortgaged Property.

5.      Upon information and belief, Defendant William A. Nicholson, an individual who at all times hereinafter mentioned was a resident of the State of Massachusetts, is named as a defendant because William A. Nicholson made certain promises and guarantees concerning Borrower's performance under the Loan Documents (as defined herein), as contained in the Guaranty Agreement dated August 18, 2017 (the "Guaranty").

6.      Upon information and belief, Defendant Howard Fensterman is, and at all times hereinafter mentioned was, an individual and a resident of the State of New York, and is named as

a defendant because Howard Fensterman also made certain promises and guarantees concerning Borrower's performance under the Loan Documents, as defined herein, and as contained in the Guaranty.

7.      Upon information and belief, Defendant Matthew Barbara is, and at all times hereinafter mentioned was, an individual and a resident of the State of New York, and is named as a defendant because Matthew Barbara also made certain promises and guarantees concerning Borrower's performance under the Loan Documents, as defined herein, and as contained in the Guaranty.

8.      Upon information and belief, Defendant Paul Barbara (together with Defendant William A. Nicholson, Defendant Howard Fensterman, and Defendant Matthew Barbara, the "Guarantors") is, and at all times hereinafter mentioned was, an individual and a resident of the State of New York, and is named as a defendant because Paul Barbara also made certain promises and guarantees concerning Borrower's performance under the Loan Documents, as defined herein, and as contained in the Guaranty.

9.      Upon information and belief, Defendant New York State Department of Taxation and Finance has a principal place of business located at the Office of Counsel, Building 9, W.A. Harriman Campus, Albany, New York 12227, and is made a defendant in this action because it has or may have an interest in or lien against the Mortgaged Property by virtue of any unpaid New York State Franchise taxes, license or maintenance fees which may be due and owing from Borrower.

10.     Upon information and belief, Defendant City of White Plains Finance Department has a principal place of business located at 255 Main Street, Room 102, White Plains, New York 10601, and is made a defendant in this action because it has or may have an interest in or lien

against the Mortgaged Property by virtue of any unpaid City of White Plains taxes, license or maintenance fees which may be due and owing from Borrower.

11.      Upon information and belief, the "John Doe" defendants constitute those persons or corporations or firms that may be in possession of, or may have contract, possessory, lien or other interests in, the Mortgaged Property.

## JURISDICTION AND VENUE

12.      The Court may exercise jurisdiction over Borrower because Borrower irrevocably submitted to the jurisdiction and venue of this Court in the Loan Documents, as defined herein.

13.      The Court may exercise jurisdiction over the Guarantors because they irrevocably submitted to the jurisdiction and venue of the Court in the Guaranty. This Court may also exercise jurisdiction over Defendants Howard Fensterman, Matthew Barbara, and Paul Barbara pursuant to C.P.L.R. Section 301, and over Defendant William A. Nicholson pursuant to C.P.L.R. Section 302.

14.      Lender's collateral—among other things, the real property interest, improvements and personal property securing repayment of the $38,500,000.00 loan described below—is located in the State of New York and, accordingly, pursuant to C.P.L.R. Section 301, and R.P.A.P.L. Article 1, Section 121, this Court has jurisdiction to grant the relief required by Lender in this Verified Complaint.

15.      As to all Defendants, venue is proper in Westchester County pursuant to C.P.L.R. Sections 507 and 509.

## THE MORTGAGED PROPERTY

16.      The Mortgaged Property that is the subject of this action consists of one lot known as Section 125.67, Block 3 Lot 1 in the City of White Plains and located at 120 Church Street, with

appurtenances thereto and improvements thereon, all as more specifically described in Schedule A annexed hereto.

## **THE LOAN DOCUMENTS**

17.     On or about August 18, 2017, Borrower and Lender entered into a Construction Loan Agreement (the "Loan Agreement"), whereby Lender agreed to make a Building Loan to Borrower in the amount of $30,293,625, in which all or a portion of the Building Loan Costs would be advanced to Borrower, consisting solely of costs and improvements as defined in Section 2 of the New York Lien Law (the "Building Loan"), and whereby Lender further agreed to make additional loan advances to Borrower for other costs with respect to the Project in the amount of $8,206,375 (the "Project Loan", collectively with the Building Loan referred to as the "Loan") for a total indebtedness of $38,500,000.   The Loan Agreement was duly recorded in the County Clerk's Office on August 25, 2017, at Control No. 5962984.   A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 1.**

18.     On or about August 18, 2017, Borrower, for the purpose of evidencing its indebtedness to Lender of the sum of $38,500,000, executed and delivered to Lender a promissory note dated August 18, 2017 (the "Note"), whereby Borrower was bound and promised to pay Lender such sum, with interest thereon, at the rate therein provided.   A true and correct copy of the Note is attached hereto as **Exhibit 2**.

19.     As collateral security for the payment of this indebtedness, Borrower simultaneously therewith executed, acknowledged, and delivered to Lender a mortgage dated August 18, 2017 (the "Mortgage").   The Mortgage was duly recorded in the County Clerk's office on August 31, 2017, at Control No. 572363745 and the mortgage recording tax was then and there duly paid.   A true and correct copy of the Mortgage is attached hereto as **Exhibit 3**.

5

20.     The Mortgage granted Lender a security interest in the real property described in Schedule A, improvements, fixtures, equipment, personal property, and leases and rents, among other items described in Section 1.1 of the Mortgage, associated with the Mortgaged Property. (Mortgage § 1.1.)

21.     On August 18, 2017, Borrower also executed, acknowledged, and delivered to Lender an Assignment of Leases and Rents dated August 18, 2017 ("Assignment," and together with the Mortgage, the Note, the Loan Agreement, and all documents or instruments referenced in the definition of Loan Documents in the Mortgage and the Loan Agreement, and all other documents or instruments securing the repayment of the obligations of Borrower to Lender, the "Loan Documents"), as further collateral security for the payment of the indebtedness. The Assignment of Leases and Rents was duly recorded in the County Clerk's office on August 31, 2017, at Control No. 572363749. A true and correct copy of the Assignment is attached hereto as **Exhibit 4**.

22.     The Assignment absolutely and unconditionally assigned and granted to Lender's Agent, for Lender's benefit, among other things, all of Borrower's right, title and interest in the all existing and future Leases of the Borrower affecting the use, enjoyment or occupancy of all or any portion of any space in that certain lot or piece of land, more particularly described in Schedule A annexed hereto, as well as all Rents, as defined in the Loan Agreement. (Assignment § 1.1.)

23.     The Loan Documents were delivered to Lender in due course.

24.     Lender is the owner and holder of the Loan Documents, and is authorized to exercise all of its rights with respect to the Loan Documents.

## THE GUARANTY

25.     On or about August 18, 2017, the Guarantors executed and delivered to Lender the
Guaranty.  A true and correct copy of the Guaranty is attached hereto as **Exhibit 5**.

26.     Under the terms of the Guaranty, the Guarantors jointly and severally,
unconditionally, absolutely and irrevocably guaranteed payment (and not merely collectability) of
and agreed to pay, protect, defend and save harmless Lender for, from and against, and indemnify
Lender for, from and against any and all liabilities, obligations, actual losses, damages, costs and
expenses (including, without limitation, reasonable attorneys' fees), causes of action, suits, claims,
demands, and judgment of any nature or description whatsoever, which may at any time be
imposed upon, incurred by or awarded against Lender as a result of, among other things,
misapplication, misappropriation or conversion by Borrower, Guarantor, or any Affiliate of any of
them of any Rents.  (Guaranty § 1(a)(vii).)

27.     The Guarantors also agreed that the Guaranty was an absolute, irrevocable and
unconditional guaranty of payment and performance, and each party Guarantor would be jointly
and severally liable for the payment and performance of the Guaranteed Obligations, as defined in
the Guaranty, as a primary obligor. (Guaranty § 4(a).)

28.     The Guarantors further agreed that in the event of the occurrence of a Default under
the Loan Documents, the Guaranteed Obligations would become immediately due and payable at
the election of the Lender's Agent and the Guarantor shall, on demand and without presentment,
protest, notice of protest, further notice of nonpayment or of dishonor, default or nonperformance,
or notice of acceleration or of intent to accelerate, or any other notice whatsoever, would pay the
amounts due to Agent or Lender, and pay all Losses that may arise in consequence of such Event
of Default (including, without limitation, all reasonable attorneys' fees and expenses, investigation

costs, court costs, and any and all other costs and expenses actually incurred by Agent or Lender in connection with the collection and enforcement of the Guaranty). (Guaranty § 4(b).)

29.     Under Section 4(c) of the Guaranty, the Guarantors specifically agreed that suit may be brought or demand may be made against Borrower or against any or all parties who have signed the Guaranty, or against any one or more of them, separately or together, without impairing the rights of Lender against any party hereto. (Guaranty § 4(c).)

## BORROWER'S OBLIGATIONS AND DEFAULTS

### Borrower's Obligations under the Loan Documents

30.     Pursuant to Section 3.1(a) of the Mortgage, Borrower agreed to make due and punctual payment of the Secured Indebtedness, as defined under Section 2.2 of the Mortgage to include:

(i)     The Note;

(ii)    All indebtedness, liabilities, duties, covenants, promises and other obligations owed by Borrower to Mortgagee and/or Lender pursuant to the Loan Documents, expressly excluding, however, any obligations of Guarantor under any Guarantor Document and any obligations under any other guaranty executed by a third party, whether now existing or hereafter arising, and whether joint or several, direct or indirect, primary or secondary, fixed or contingent, liquidated or unliquidated, and the cost of collection of all such amounts; and

(iii)   All amounts that Lender may from time to time advance pursuant to the terms and conditions of this Security Instrument with respect to an obligation secured by a lien or encumbrance prior to the lien of this Security Instrument or for the protection of this Security Instrument, together with interest thereon.

(Mortgage §§ 2.2; 3.1(a).)

31.     Under the Loan Agreement, Borrower agreed that all accrued and unpaid interest would be due and payable on the first day of each calendar month commencing on September 1, 2017 until the Maturity Date, *i.e.*, August 1, 2020, and that the entire principal balance of the Loan then unpaid and all accrued interest is due and payable in full on the Maturity Date.  (Loan Agreement § 2.12.)

32.     If Borrower failed to make any payment due under the terms of the Loan Agreement or the Note within five days after such payment was due, Borrower agreed to pay a late charge equal to 5% of such payment.  (Loan Agreement §2.8.)

33.     In addition to the monetary obligation described above, Borrower also agreed to fulfill certain other obligations under the Loan Documents, including, *inter alia*:

- To establish a Cash Management Account, not later than 60 days prior to the anticipated rent commencement date under the Operating Lease, in the name of Borrower for the sole and exclusive benefit of Agent (on behalf of Lender) into which Borrower shall deposit, or cause to be deposited, all revenue generated at the Mortgaged Property (Loan Agreement § 8.1(a));

- To send a Tenant Direction Notice to direct the sole tenant, HBL SNF, LLC, to pay rent directly into the Cash Management Account set up for Lender's exclusive benefit (Loan Agreement § 8.1(b));

- To deposit all revenue generated by the Mortgaged Property and received by the Borrower into the Cash Management Account (Loan Agreement § 8.1(b));

- To deliver the Financial Statements and other statements and information at the times and for the periods described in Exhibit "B" attached to the Loan Agreement

and any other Loan Document, including the Financial Statements of Borrower and the annual Financial Statement of each Guarantor (Loan Agreement 3.13; Loan Agreement, Exhibit "B").

**Events of Default and Borrower's Defaults**

34.     Section 5.1 of the Mortgage defines an Event of Default to include, the occurrence of "Default" as defined in the Loan Agreement.  (Mortgage § 5.1.)

35.     Under Section 5.1(a) of the Loan Agreement, a Default occurs when any of the indebtedness or any fees payable under the Note or the Loan Agreement are not paid when due, whether on the scheduled due date or upon acceleration, maturity or otherwise.  (Loan Agreement § 5.1(a).)

36.     Under Section 5.1(b) of the Loan Agreement, a Default occurs when any covenant, agreement of condition in the Loan Agreement or in any other Loan Document is not fully and timely performed, observed or kept by Borrower and if such failure continues unremedied for more than thirty days after notice is given to Borrower by Lender.  (Loan Agreement §5.1(b).)

37.     Borrower has failed to pay accrued and unpaid interest due on the first day of each calendar month fourteen (14) times, with four of these occasions pre-dating the COVID-19 pandemic and related government shutdown orders:

(i)     Borrower failed to pay accrued unpaid interest for the period beginning October 1, 2019 and ending November 1, 2019 in the amount of $159,081.07.  On October 16, 2019, Lender sent a letter notifying Borrower of its Default.

(ii)    In October 2019, Borrower failed to pay a late charge in the amount of $12,642.24.

10

(iii)    Borrower failed to pay accrued and unpaid interest for the period beginning November 1, 2019 and ending December 2, 2019 in the amount of $159,081.07. On November 5, 2019, Lender sent a letter notifying Borrower of its Default.

(iv)    In November 2019, Borrower failed to pay a late charge of $22,388.29.

(v)    In December 2019, Borrower failed to pay a late charge of $22,388.29.

(vi)    Borrower failed to pay accrued unpaid interest for the period beginning April 1, 2020 and ending May 1, 2020 in the amount of $160,416.67. On April 16, 2020, Lender sent a letter notifying Borrower of its Default.

(vii)    In April 2020, Borrower failed to pay a late charge of $13,765.56.

(viii)    Borrower failed to pay accrued unpaid interest for the period beginning May 1, 2020 and ending June 1, 2020 in the amount of $165,763.89. On May 13, 2020, Lender sent a letter notifying Borrower of its Default.

(ix)    In May 2020, Borrower failed to pay a late charge of $20,829.30.

(x)    Borrower failed to pay accrued unpaid interest for the period beginning June 1, 2020 and ending July 1, 2020 in the amount of $160,416.67.

(xi)    In June 2020, Borrower failed to pay a late charge in the amount of $20,505.21.

(xii)    Borrower failed to pay accrued unpaid interest for the period beginning July 1, 2020 and ending August 3, 2020 in the amount of $176,458.33.

(xiii)    In July 2020, Borrower failed to pay a late charge in the amount of $8,020.83.

(xiv)   In August 2020, Borrower failed to pay a late charge in the amount of $8,822.92.

38.     Borrower has also defaulted on its obligations under the Loan Documents by failing to establish a Cash Management Account, failing to send a Tenant Direction Notice to the sole tenant to pay rent directly into the Cash Management Account, and failing to deposit all revenue generated by the Mortgaged Property into the Cash Management Account, as required under Section 8.1 of the Loan Agreement, as well as by failing to provide the necessary Financial Statements for Borrower and each of the Guarantors, as required by Section 3.13 and Exhibit B to the Loan Agreement.  On May 22, 2020, Lender sent a letter to Borrower notifying it of these Defaults.

39.     On August 1, 2020, Borrower defaulted on its obligation to repay in full the entire principal balance of the Loan then unpaid and all accrued interest by the Maturity Date.

40.     As of September 1, 2021, the total payment due by Borrower, including late charges, attorneys' fees and costs is $ 42,519,383.54 ("Payoff Statement").  A true and correct copy of the Payoff Statement is attached as **Exhibit 6**.

41.     As of the time Lender commenced this action, Borrower had not cured any of its Defaults.

42.     Upon information and belief, Lender may also be in breach of other terms of the Loan Documents, including, but not limited to, Section 3.27 of the Loan Agreement, which prohibits "any distribution" to "any owner of any direct or indirect equity interests of Borrower," with limited exceptions, and Section 3.5 of the Loan Agreement, which prohibits Borrower from terminating the Operating Lease without the consent of the Lender.

43.     Upon information and belief, Borrower may have sent a Notice of Termination to the tenant under the Operating Lease in late 2019 or early 2020.

44.     No prior action or proceeding has been commenced at law or otherwise for the recovery of the sums secured by the Mortgaged Property or any part thereof.

## COMPLIANCE WITH LAWS AND REGULATIONS

45.     Lender has complied with all state and federal statutes, Executive Orders, Administrative Orders, Acts and directives instituted as a result of the COVID-19 pandemic.  On March 16, 2021, Lender provided notice to Borrower of its right to submit a hardship declaration under the COVID-19 Emergency Protect Our Small Businesses Act of 2021 (the "Act").  A true and correct copy of the March 16, 2021 notice to Borrower is attached hereto as **Exhibit 7**.

46.     On March 22, 2021, Borrower provided Lender with notice of its declaration of COVID-19 related hardship, dated March 18, 2021 (the "Declaration").  A true and correct copy of the Declaration is attached hereto as **Exhibit 8**.

47.     Upon information and belief, Borrower is not entitled to the protections of the Act because, *inter alia*, Borrower's business employs more than fifty (50) individuals, that Borrower's business is not independently owned and operated, and that Borrower is not a New York resident.

## AS AND FOR A FIRST CAUSE OF ACTION
## (Foreclosure of the Mortgage)

48.     Lender repeats and realleges the allegations contained in paragraphs "1" through "47" as though fully set forth herein.

49.     Lender is the owner and holder of the Loan Documents and is authorized to commence a foreclosure action pursuant to the Loan Documents.

50.     Pursuant to Section 6.1(c) of the Mortgage, upon the occurrence and continuance of a Default or in the case that the principal of the Note becomes due and payable, whether by

lapse of time or by acceleration, then and in every such case the Mortgagee (Lender) shall have the right to immediately proceed to foreclose the Mortgage lien against the property constituting the Mortgaged Property or any part thereof, in accordance with the laws of New York, including, without limitation, the provisions of Article 13 of the Real Property Actions and Proceedings Law of New York, as such provisions may be extended, renewed, modified or replaced from time to time, and may pursue any other remedy available to a commercial mortgage lender under the laws of New York, including all rights to judicial foreclosure under the laws of New York, and if authorized by the laws of the State of New York, all rights to nonjudicial foreclosure of mortgages. (Mortgage § 6.1(c).)

51.    As described above, Borrower has failed to fulfill a number of its obligations under the Loan Documents, which constituted an Event of Default, including but not limited to its failure to repay the Loan in full when the balance became due on the Maturity Date of August 1, 2020.

52.    By reason of the foregoing, Borrower is in Default under the Loan Documents.

53.    Pursuant to Section 6.1(c) of the Mortgage, and in accordance with the other terms of the Loan Documents, based upon the failure by Borrower to pay all amounts due under the Note on its Maturity Date, Lender elects to foreclose upon the Mortgage and recover the current outstanding principal amount, that, as of September 1, 2021 is $38,500,000, plus accrued interest, fees and legal fees for a total payoff amount of $ 42,519,383.54, together with interest, late fees, and any other amounts to be added pursuant to the terms of the Loan Documents, including attorneys' fees (for which Borrower expressly agreed to be responsible, in accordance with Section 6.1(c) of the Mortgage), exclusive of any tax reserves, interest reserves, insurance reserves, or other cash reserves to be applied to the indebtedness.

54.     In order to protect its security interest in the Mortgaged Property, Lender, as it is entitled to do under the Loan Documents, may be compelled to pay, during the pendency of this action, local taxes, assessments, water rates, insurance premiums, ground lease rent, and other charges affecting the Mortgaged Property, and any sums thus paid by Lender for such purposes, together with late payments due thereon, should be added to the sums otherwise due and deemed secured by the Mortgage and adjudged a lien.

55.     Lender shall not be deemed to have waived, altered, released or changed the election hereinafter made by reason of any payment after the date of commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, and any and all future defaults under the Loan Documents and occurring prior to the discontinuance of this action, are fully paid.

56.     Lender has complied with all the terms and provisions of the Loan Documents and, pursuant to R.P.A.P.L. 1301(2), no proceeding other than this action has been commenced to recover any part of the debt secured by the Mortgage owed to Lender.

57.     Lender states further that the Mortgaged Property is not a borrower-occupied one to four family dwelling or condominium unit, nor is the Mortgaged Property a high cost or subprime home loan as defined by Sections 6-1 and 6-m of the New York Banking Law. Lender has or will comply with the notice provisions of R.P.A.P.L. 1303(1)(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### (Attorneys' Fees, Costs and Expenses)

58.     Lender repeats and realleges the allegations contained in paragraphs "1" through "57" as though fully set forth herein.

59.     Under the terms of the Loan Documents, Borrower agreed to pay all out-of-pocket costs and expenses of the holder of the Note which may be incurred unless Borrower is the sole

prevailing party in an action to enforce or protect the rights or interests of such holder, including attorneys' fees and expenses (including the market value of services of in-house counsel), investigation costs and all court costs, whether before or after the Maturity Date defined in the Loan Agreement, or whether in connection with bankruptcy, insolvency or appeal, or whether collection is made against Borrower or any guarantor or endorser or any other Person primarily or secondarily liable. (Note § 3(c).)

60.    Additionally, under Section 6.1(c) of the Mortgage, Mortgagor (Borrower) agreed to pay, in connection with any foreclosure of the lien or any action to enforce any other remedy of Mortgagee under the Security Instrument, the Note or any other Loan Document, all expenditures and expenses which may be paid or incurred by or on behalf of Mortgagee including, without limitation, attorneys' fees and disbursements, court costs, appraiser's fees, outlays for documentary and expert evidence, stenographers' chargers, publication costs, and costs of procuring all such abstracts of title, title searches and examinations, title insurance policies, and similar data and assurances with respect to title and value as Mortgagee may deem reasonably necessary either to prosecute such suit or to evidence to bidders at any sale which may be had pursuant to such decree the true condition of title to or the value of the Mortgaged Property, and the right to such fees and expenses shall be deemed to have accrued on commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment. (Mortgage § 6.1(c).)

61.    Lender has incurred costs and fees in connection with foreclosing the Loan, including attorneys' fees.

62.    By reason of the foregoing, Borrower is liable for expenses, including reasonable attorneys' fees, arising from Lender's incurred costs in connection with the foreclosure.

16

## AS AND FOR A THIRD CAUSE OF ACTION
## <u>(Recovery Under the Guaranty)</u>

63.     Lender repeats and realleges the allegations contained in paragraphs "1" through "62" as though fully set forth herein.

64.     Pursuant to the Guaranty, the Guarantors jointly and severally, unconditionally, absolutely and irrevocably guaranteed payment (and not merely collectability) of and agreed to pay, protect, defend and save harmless Lender for, from and against, and indemnify Lender for, from and against any and all liabilities, obligations, actual losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees), causes of action, suits, claims, demands, and judgment of any nature or description whatsoever, which may at any time be imposed upon, incurred by or awarded against Lender as a result of, among other things, misapplication, misappropriation or conversion by Borrower, Guarantor, or any Affiliate of any of them of any Rents.  (Guaranty § 1(a)(vii).)

65.     Borrower defaulted on the Loan Documents and Lender has incurred costs and fees in connection with foreclosing the Loan, including attorneys' fees.

66.     Upon information and belief, Borrower and/or the Guarantors have misapplied, misappropriated or converted Rents collected by them in connection with the Mortgaged Property.

67.     By reason of the foregoing, the Guarantors are liable for all liabilities, obligations, actual losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees), causes of actions, suits, claims, demands, and judgment of any nature which were incurred in connection with the enforcement of Lender's rights, remedies or recourse under the Loan Documents due to any misapplication, misappropriation or conversion by Borrower, Guarantor, or any Affiliate of any Rents.

21-07096-shl   Doc 36-12   Filed 02/11/22   Entered 02/11/22 17:43:36   Exhibit 12
Pg 19 of 25

68.     Pursuant to the Guaranty, the Guarantors also agreed that the Guaranty was an absolute, irrevocable and unconditional guaranty of payment and performance, and each party comprising Guarantor would be jointly and severally liable for the payment and performance of the Guaranteed Obligations as a primary obligor. (Guaranty § 4(a).)

69.     The Guarantors further agreed that in the event of the occurrence of a Default under the Loan Documents, the Guaranteed Obligations would become immediately due and payable at the election of the Lender's Agent and the Guarantor shall, on demand and without presentment, protest, notice of protest, further notice of nonpayment or of dishonor, default or nonperformance, or notice of acceleration or of intent to accelerate, or any other notice whatsoever, would pay the amounts due to Agent or Lender, and pay all Losses that may arise in consequence of such Event of Default (including, without limitation, all reasonable attorneys' fees and expenses, investigation costs, court costs, and any and all other costs and expenses actually incurred by Agent or Lender in connection with the collection and enforcement of the Guaranty). (Guaranty § 4(b).)

70.     In the event of foreclosure, the Guarantors agreed that only the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature whatsoever, shall be applied in reduction of the amount due on the Note and Security Instrument, and the Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment or enforcement.  (Guaranty § 4(b).)

71.     Borrower is in Default under the Loan Documents.

72.     By reason of the foregoing, the Guarantors are liable for all amounts due to Lender by Borrower, including all Losses that arose as a result of Borrower's Default (including, without limitation, all reasonable attorneys' fees and expenses, investigation costs, court costs, and any and all other costs and expenses actually incurred by Agent or Lender in connection with the

collection and enforcement of the Guaranty), and the Guarantors are liable for any deficiency due under the Loan Documents after application of the proceeds in the manner specified by the Court.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Deficiency Judgment)

73.     Lender repeats and realleges the allegations contained in paragraphs "1" through "72" as though fully set forth herein.

74.     By virtue of the Loan Documents, as defined herein, Borrower and Guarantors are liable to pay Lender for any deficiency which may remain after applying all of said sales proceeds, together with interest thereon and other charges, in accordance with the Loan Documents. Such indebtedness will continue to accrue and, therefore, the precise amount due from Borrower and Guarantors to Lender through the date of Judgment herein should be determined by the Court.

**WHEREFORE,** Lender demands judgment as follows:

A.     That Defendants, or any of them, and persons claiming under them or any of them, and all persons claiming any interest in the Mortgaged Property with all of its fixtures, equipment and personal property thereon, subsequent to the commencement of this action and the filing of the notice of pendency of this action be forever barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption in and to the Mortgaged Property and each and every part thereof;

B.     That the Mortgaged Property be sold to obtain the greatest return of sale, whether sold jointly as a single parcel or sold separately as two or more parcels;

C.     That the Mortgaged Property should be sold "As Is" subject to: (i) any state of fact that an inspection of the Mortgaged Property would disclose; (ii) any state of fact that an accurate survey of the Mortgaged Property would show; (iii) covenants, restrictions, conditions; reservations; easements; rights of way and public utility agreements of record, if any; (iv) building

FILED: WESTCHESTER COUNTY CLERK 09/01/2021 06:08 PM
INDEX NO. 62109/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 09/01/2021

21-07096-shl    Doc 36-12    Filed 02/11/22    Entered 02/11/22 17:43:36    Exhibit 12
Pg 21 of 25

restrictions and zoning ordinances of the municipality in which the Mortgaged Property is located and possible violations of same; (v) any violations, orders, changes or notices now or hereafter found on the Mortgaged Property, or filed in or issued by any governmental authority having jurisdiction over the Mortgaged Property; (vi) existing leases of the Mortgaged Property or any part thereof or rights of tenants in possession other than those tenants and lessees who are party defendants herein at the time of sale; (vii) prior liens of record, if any, and (viii) any equity of redemption of the United States of America to redeem the Mortgaged Property within 120 days from the date of sale;

D.       That the amount due to Lender under the Loan Documents be adjudged;

E.       That the proceeds of any foreclosure sale of Borrower's interest in the Mortgaged Property be distributed and applied in the following order of priority, as specified in Section 6.1(c) of the Mortgage: (i) first, to payment of all costs and expenses incident to the foreclosure proceedings; (ii) second, to the cost of any search and/or other evidence of title procured in connection therewith and the transfer tax on any deed or conveyance; (iii) third, to all sums expended under the terms hereof, not then repaid with accrued interest at the rate provided herein; (iv) fourth, to payment of all remaining Secured Indebtedness, in such order as Mortgagee may determine in its sole and absolute discretion; and (v) fifth, the remainder, if any to the person or persons legally entitled thereto.

F.       That Borrower be adjudged liable for the payment of any costs and fees incurred in connection with foreclosing the Loan, including attorneys' fees;

G.       That the Guarantors be adjudged liable under the Guaranty for liabilities, obligations, actual losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees), causes of actions, suits, claims, demands, and judgment of any nature which were

20

FILED: WESTCHESTER COUNTY CLERK 09/01/2021 06:08 PM
INDEX NO. 62109/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 09/01/2021

21-02096-shl    Doc 36-12    Filed 02/11/22    Entered 02/11/22 17:43:36    Exhibit 12
Pg 22 of 25

incurred in connection with the enforcement of Lender's rights, remedies or recourse under the Loan Documents due to any misapplication, misappropriation or conversion by Borrower, Guarantor, or any Affiliate of any Rents;

H.   That the Guarantors be adjudged liable for the prompt and unconditional payment of all obligations and liabilities of Borrower pursuant to the Loan Documents, and all Losses that arose in consequence of Borrower's Default (including, without limitation, all reasonable attorneys' fees and expenses, investigation costs, court costs, and any and all other costs and expenses actually incurred by Agent or Lender in connection with the collection and enforcement of the Guaranty);

I.   That the Guarantors, to the extent the Guarantors have liability under the Guaranty, be adjudged to pay the amount of any deficiency due under the Loan Documents, or any or all of them, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after a sale of the Mortgaged Property and the application of the proceeds pursuant to the directions contained in such judgment, the amount thereof to be determined by the Court, as provided in R.P.A.P.L. section 1371, together with reasonable attorneys' fees, disbursements and court costs incurred in connection with enforcement of their and Borrower' respective obligations under the Loan Documents;

J.   That in the event the proceeds from such sale be insufficient to pay the Lender the entire amount due pursuant to the Loan Documents as described above, then Lender shall have a judgment against Borrower and Guarantors for the amount of any such deficiency; and

K.   That Lender have such other and further relief as the Court deems just and proper.

Dated: September 1, 2021
      New York, New York

**DLA PIPER LLP (US)**

By: _/s/ Christopher M. Strongosky_
Christopher M. Strongosky
Neal F. Kronley
Michele Korkhov
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

_Attorneys for Plaintiffs Security Benefit Life_
_Insurance Company and Security Benefit_
_Corporation_

22

FILED: WESTCHESTER COUNTY CLERK 09/01/2021 06:08 PM
NYSCEF DOC. NO. 2
21-07096-shl    Doc 36-12    Filed 02/11/22    Entered 02/11/22 17:43:36    Exhibit 12
Pg 24 of 25

INDEX NO. 62109/2021
RECEIVED NYSCEF: 09/01/2021

# VERIFICATION

STATE OF KANSAS         )
                               ) ss.:

COUNTY SHAWNEE       )

Douglas Schneider, being duly sworn, deposes and states:

I am an employee with Security Benefit Life Insurance Company and Security Benefit Corporation, the plaintiffs in this action. Security Benefit Life Insurance Company is an insurance company duly organized and existing under the laws of the State of Kansas, with its principal place of business in Kansas, and Security Benefit Corporation is a corporation duly organized and existing under the laws of the State of Kansas. I have read the annexed complaint, and its factual contents are true to my personal knowledge, except as to the matters alleged on information and belief, and as to those matters, I believe them to be true.

Dated:   August 3|, 2021

                                              Douglas Schneider

Sworn to before me
this 3| of August 2021



Notary Public

TRINA M. TYLER
Notary Public  State of Kansas
My Appt  Expires 12·20·2024

## SCHEDULE A

## LAND

Real property in the City of White Plains, County of Westchester, State of New York, described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE< LYING AND BEING IN THE CITY OF WHITE PLAINS, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE EASTERLY LINE OF CHURCH STREET WHERE THE SAME IS INTERSECTED BY THE SOUTHERLY LINE OF BARKER AVENUE;

RUNNING THENCE FROM SAID POINT NORTH 70° 40' 10" EAST A DISTANCE OF 173.57 FEET ALONG THE SOUTHERLY LINE OF BARKER AVENUE TO A POINT WHERE THE SAME IS INTERSECTED BY THE DIVISION LINE HEREIN DESCRIBED PARCEL ON THE WEST AND LANDS NOW OR FORMERLY OF KOEPPEL & MOHR EQUITIES ON THE EAST;

THENCE FROM SAID POINT AND ALONG SAID DIVISION LINE SOUTH 17° 59' 50" EAST A DISTANCE OF 200.51 FEET TO A POINT IN THE DIVISION LINE BETWEEN THE HEREIN DESCRIBED PARCEL ON THE NORTH AND LANDS NOW OR FORMERLY OF HAMILTON PLAZA COMPANY, INC. ON THE SOUTH;

THENCE FROM SAID POINT AND ALONG SAID LINE SOUTH 71° 01' 50" WEST A DISTANCE OF 173.24 FEET TO THE EASTERLY LINE OF CHURCH STREET;

THENCE FROM SAID POINT AND ALONG SAID LINE NORTH 18° 05' 04" WEST A DISTANCE OF 199.41 FEET TO THE POINT AND PLACE OF BEGINNING.