UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

HBL SNF, LLC, d/b/a EPIC REHABILITATION : Chapter 11
AND NURSING AT WHITE PLAINS,

: Case No. 21-22623 (SHL)

                               Debtor,
-----------------------------------------------------------------X
WHITE PLAINS HEALTHCARE PROPERTIES I,
LLC,

                               Plaintiff,

     -against-

: Adversary Proceeding

HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER
JOZOFOVIC, and MARK NEUMAN,                    : Case No. 21-07096 (SHL)

              Defendants and Third-Party Plaintiffs,

     -against-

CCC EQUITIES, LLC, PROJECT EQUITY
CONSULTING, THE CONGRESS COMPANIES,
HOWARD FENSTERMAN, WILLIAM
NICHOLSON, and METROPOLITAN
COMMERCIAL BANK

                       Third-Party Defendants
-----------------------------------------------------------------X

**DECLARATION OF LIZER JOZEFOVIC IN OPPOSITION TO WHITE PLAINS HEALTHCARE PROPERTIES I, LLC'S MOTION FOR SUMMARY JUDGMENT**

I, Lizer Jozefovic, declare as follows:

1. I respectfully submit this declaration, based upon my personal knowledge, in support of Debtor's Supplemental Memorandum of Law in Opposition to White Plains Healthcare Properties I, LLC's Motion for Summary Judgment and in support of the determination that Landlord never terminated the Lease and the Lease was in effect as of November 1, 2021.

2. As our counsel has previously advised the Court, Debtor intends to assume the Lease and cure any defaults that the Court may determine exist.

3. Since October 2019, Debtor has complied with its obligations under the Lease by paying all installments of Fixed Rent and Additional Rent to Landlord each and every month, obtaining necessary insurance policies, and maintaining the Facility.

4. In addition to its rent payments, Debtor paid Landlord $4,400,000 in capital contributions and reserved another $1,600,000 in a separate rent deposit account. Landlord has never accounted for these capital contributions and has refused to either repay or credit these funds to Debtor's Lease obligations.

5. The Facility itself was conceived of and developed by a team including myself, Howard Fensterman, Mark Zafrin, and William Nicholson.

6. I met Howard Fensterman and William Nicholson through my counsel, Mark Zafrin. At that time, Mark Zafrin was a partner at Abrams, Fensterman LLP.

7. As Mr. Fensterman testified, he acted on behalf of me and my family by taking all steps necessary to obtain approval from the New York State Department of Health to operate the Facility.

8. In addition, Abrams, Fensterman LLP has represented affiliates of the Debtor in various capacities.

9. To develop the Facility, Debtor purchased the licenses for ninety (90) skilled nursing beds from Hebrew Hospital and worked closely with Mr. Nicholson to select and acquire an appropriate location.

10. After Mr. Nicholson recommended that additional beds were necessary to make construction of the Facility financially feasible, Mr. Zafrin and I arranged for the purchase of an additional seventy five (75) beds from two other skilled nursing operators.

11. Pursuant to the Term Sheet dated November 20, 2015, Debtor provided Landlord with $2,200,000 in capital contributions. Those contributions were to be treated as a loan. Landlord has never provided Debtor with an accounting for how those funds were used.

12. Moreover, Landlord has never repaid the $2,200,000 capital contributions, or kept its commitment to transfer title to $1,500,000 of FF&E and grant Debtor $700,000 in rent credits, as set forth in the Term Sheet.

13. Given Landlord's broken promises and these financial irregularities, Debtor proposed placing $1,600,000 into a joint bank account, turning these funds over directly to Landlord as stated in the Lease.

14. Debtor funded a Chase bank account with $1,600,000 and delivered to Landlord the requisite forms giving Landlord signatory control over the account. Although Landlord never returned the forms to establish signatory control, Debtor has maintained a balance over $1,600,000 in the Chase bank account.

15. On March 12, 2019, Landlord advised that the Facility could be ready for occupancy on May 15, 2019 and requested that Debtor deliver a letter of credit in the amount of $3,700,000.

16. The Facility was not ready on May 15th.

17. While Debtor was willing to fund the $1,600,000 account, Debtor refused to deliver the $3,700,000 letter of credit given the existing unresolved disputes between Debtor and Landlord.

18. It became obvious that Landlord would simply draw the $1,600,000 on the letter of credit.

19. I communicated the reasons for my withholding these security deposits to Landlord on many occasions including during the meeting at the Facility in early September of 2019.

20. Despite knowing of Debtor's refusal to provide the $3,700,000 letter of credit or to deposit the $1,600,000 into the Landlord's account, Landlord demanded that Debtor assume control of the Facility as quickly as possible.

21. In September 2019, Landlord turned over the keys to the Facility to Debtor and demanded that Debtor begin making rent payments, despite the fact that the Facility had not yet even received final authorization from the New York State Department of Health.

22. Debtor commenced its start-up operations in late 2019, incurring the anticipated start-up losses which were exacerbated by the onset of the COVID-19 pandemic. Had Landlord completed the Facility as originally promised in May of 2019, Debtor would have begun operations months earlier and avoided the start-up interruptions and additional costs caused by the pandemic.

23. Given the numerous unresolved issues concerning Landlord's breaches, Debtor and Landlord agreed to enter into the Letter of Intent. The LOI contemplated that Debtor would acquire equity in the Landlord entity. To advance that transaction, Debtor provided another $2,200,000 capital contribution to Landlord. However, given the uncertainties in the health care and financial markets caused by the COVID Pandemic, Debtor was unable to consummate the equity transaction.

24. Landlord has refused to return or credit to Debtor's account the $2,200,000 capital contribution pursuant to the LOI.

25.     Despite Landlord's actions, Debtor has made, and continues to make, every Fixed Rent Payments in the amount of $509,000 per month to Landlord which to this date total in excess of $14,500,000.

26.     Despite these payments, Debtor is advised that Landlord failed to make its required payments to Security Benefit causing a default which, as Landlord argues to this Court, may impair Debtor's rights under the Lease.

27.     Debtor has paid all property taxes for the Facility. Attached hereto as Exhibit 1 is a true and correct copy of the tax certificates for the Facility.

28.     Debtor has contacted all utility companies to arrange for return of any relevant utility deposits to Lender or, in the event such efforts are unsuccessful, to reimburse Landlord directly.

29.     Debtor has obtained all necessary insurance policies for the Facility. Attached hereto as Exhibit 2 is a true and correct copy of the Certificate of Insurance for the Facility.

30.     After receiving the Notice of Default, dated January 7, 2020, Landlord and Debtor entered into negotiations of an Intercreditor Agreement from February 2020 through May 2020.

31.     The purpose of the Intercreditor Agreement was to finance the receivables Debtor generated from Debtor's future operations of the Facility.

32.     At no time during these negotiations did Landlord ever express that the Lease was terminated.

33.     Rather, Landlord and Debtor continued to discuss a resolution of the security deposit disputes through May 2020.

34. With the exception of the security deposits, about which there has been and continues to be a legitimate dispute, Debtor has fully performed all material obligations under the Lease.

35. In total, Debtor has contributed or reserved $6,000,000 in capital to Landlord, and paid in excess of $14,500,000 in Fixed Rent Payments and Additional Rent Payments to Landlord.

On the basis of the foregoing, I respectfully ask this Court to determine that the Lease remains in full force and effect.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 11, 2022

Lizer Jozefovic