**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Brendan Scott
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
*Counsel to the Debtor and Debtor in Possession*

**MICHELMAN & ROBINSON, LLP**
John Giardino
800 Third Avenue, 24th Floor
New York, NY 10022
Tel: (212) 730-7700
Fax: (212) 730-7725
*Proposed Special Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

| | |
|---|---|
| In re | Chapter 11 |
| HBL SNF, LLC, d/b/a EPIC REHABILITATION AND NURSING AT WHITE PLAINS, | (Subchapter V) |
| | Case No. 21-22623 (SHL) |
| Debtor. | |

------------------------------------------------------------- X

## RULE 7056-1 STATEMENT OF MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56 and Local Bankruptcy Rule 7056-1, Debtor HBL SNF, LLC ("Debtor") respectfully submits this statement of material facts for which there is no genuine issue to be tried.

1.  In or about August 2009, Debtor proposed the development of a new, state-of-the-art 160-bed skilled nursing facility in White Plains, New York (the "Facility") to the New York State Department of Health ("NYSDOH").

2. Debtor was represented by Mark Zafrin ("Zafrin"), an attorney at Abrams Fensterman, LLP. Howard Fensterman ("Fensterman") and Zafrin were law partners at Abrams Fensterman, LLP, and Zafrin introduced Debtor to Fensterman and William Nicholson ("Nicholson"), Fensterman's business partner.

3. During the development phase of the Facility, Fensterman acted on behalf of Debtor to obtain the necessary licenses to operate the skilled nursing facility from NYSDOH.

4. Landlord and Debtor worked together to select an appropriate location for the Facility.

5. Landlord and Debtor worked together to increase the number of beds for the Facility.

6. On November 20, 2015, Landlord and Debtor entered into a term sheet (the "Term Sheet"), under which Debtor provided Landlord with an interest-free loan of $2,200,000 for pre-development costs, and in exchange Landlord would provide Debtor with (1) title to furniture, fixtures, and equipment (the "FF&E") in the amount of $1,500,000; and (2) rent credits in the amount of $700,000.

7. On or about July 2017, Landlord and Debtor entered into an amended lease (the "Lease"). Pursuant to the Amended Lease, Debtor was required to pay $506,096.50 per month in rent ("Fixed Rent").

8. On or about August 17, 2017, Debtor deposited $1,600,000 into a Chase bank account and provided the executed certification statements to Fensterman.

9. Landlord never transacted the certification statements.

10. Since August 2017, Debtor has maintained more than $1,600,000 in the Chase bank account.

4871-3061-2238, v. 1

11. On August 18, 2017, Landlord and Security Benefit Life Insurance Company ("Security Benefit") entered into a construction loan agreement (the "Loan Agreement").

12. Pursuant to Section 11.2 of the Lease and Sections 3.5 and 4.1 of the Loan Agreement, Landlord's right to terminate the Lease was subrogated to Security Benefit.

13. On March 12, 2019, Landlord notified Debtor that the anticipated Commencement Date was on or around May 15, 2019. Landlord stated that the anticipated Commencement Date triggered Debtor's obligation to provide additional security deposits sixty (60) days prior to the Commencement Date, pursuant to Section 7.1(a) of the Lease.

14. On or about July 2019, Debtor refused to provide Landlord with additional security deposits, as Landlord had refused to convey title to $1,500,000 of FF&E or provide Debtor with $700,000 of rent credits.

15. On or about September 2019, Landlord provided Debtor with keys to the Facility and demanded that Debtor commence operations.

16. Beginning in October 2019, Debtor began making Fixed Rent Payments pursuant to the Lease to Landlord in the amount of $509,000 per month.

17. On October 16, 2019, Security Benefit issued a notice of default to Landlord for failing to establish a cash management account, as required by the Loan Agreement.

18. Debtor incurred start-up operating losses in excess of what was forecasted due to the difficulty of launching a new skilled nursing home at the outset of the COVID-19 pandemic.

19. On November 20, 2019, Debtor and Landlord entered into a letter of intent (the "LOI"), which would have allowed Debtor to purchase the Facility from Landlord.

20. On November 20, 2019 and in connection with the LOI, Debtor paid Landlord an additional $2,200,000.

21. The transaction contemplated by the LOI was not consummated.

22. Landlord has refused to return the $2,200,000 to Debtor or otherwise apply the $2,200,000 to Debtor's account.

23. On November 5, 2019, Security Benefit issued a second notice of default to Landlord.

24. On December 2, 2019, Landlord received final written approval from NYSDOH to begin operations at the Facility.

25. Pursuant to Section 3.1(a) of the Lease, NYSDOH's final written approval of the Facility triggered the Commencement Date.

26. On January 7, 2020, Landlord issued a notice of default to Debtor, citing alleged breaches of both the LOI and Lease (the "Notice of Default").

27. The Notice of Default cites the failure of deposit the sum of $1,000,000 as a default under Section 7.1(a)(ii) of the Lease.

28. The Notice of Default does not provide Debtor with an opportunity to cure any of the alleged breaches.

29. Landlord never received the prior consent of Security Benefit to terminate the Lease.

30. From April 1 through May 14, 2020, after the Notice of Default, Landlord and Debtor negotiated the terms of a proposed intercreditor agreement (the "Intercreditor Agreement").

31. Landlord provided Security Benefit with a copy of the Intercreditor Agreement, which Security Benefit approved.

32. Throughout the negotiations concerning the Intercreditor Agreement, Landlord and Debtor continued to discuss the security deposits required by Section 7.1(a) of the Lease.

33. On April 16, 2020, Security Benefit issued a third notice of default to Landlord.

34. On May 22, 2020, Security Benefit issued a fourth notice of default to Landlord.

35. On July 15, 2020, Landlord requested that that Security Benefit extend the term of its construction loan by twelve (12) months and promised Security Benefit that it would direct Debtor to pay the monthly installments of rent into a cash management account maintained by Security Benefit for the next twelve (12) months.

36. On August 1, 2020, the Loan Agreement matured.

37. On September 18, 2020, Landlord initiated litigation against Debtor, in the action captioned *White Plains Healthcare Properties I, LLC v. HBL SNF, LLC et al.*, No. 60278/2020, New York Supreme Court, Westchester County.

38. On May 7, 2021, Debtor served Landlord with the amended document requests to which Landlord refused to provide any documents in response.

39. Since October 2019, Debtor has made consecutive Fixed Rent Payments pursuant to the Lease to Landlord each and every month, totaling over $12.5 million.

40. Landlord has accepted Debtor's Fixed Rent Payments without dispute.

41. Debtor has paid all applicable real estate taxes for the Facility.

42. Debtor has paid all applicable utility charges, utility deposits and municipal maintenance escrows.

43. Debtor has obtained the necessary types and amounts of insurance for the Facility.

44. Debtor has delivered necessary provider agreements, rate sheets, and financial and operational reporting to Landlord.

45. Landlord has refused to convey title to $1,500,000 of FF&E to Debtor.

46. Landlord has refused to provide Debtor with $700,000 of rent credits.

47. Landlord has refused to return or credit Debtor with the $2,200,000 provided pursuant to the LOI.

48. Landlord has never received authorization from Security Benefit to terminate the Lease.

49. Landlord never demanded surrender of the Leased premises by Debtor.

Dated: New York, New York
February 11, 2022

**MICHELMAN & ROBINSON, LLP**

By: /s/ *John Giardino*
John Giardino
800 Third Avenue, 24th Floor
New York, NY 10022
Tel: (212) 730-7700
Fax: (212) 730-7725

*Proposed Special Counsel to the Debtor and Debtor in Possession*

-and-

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: /s/ *Tracy L. Klestadt*
Tracy L. Klestadt
Brendan M. Scott
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: tklestadt@klestadt.com
       bscott@klestadt.com
       creilly@klestadt.com

*Attorneys for Debtor and Debtor in possession*

6

4871-3061-2238, v. 1

7

4871-3061-2238, v. 1