**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re:

                                                     Chapter 11

HBL SNF, LLC, d/b/a EPIC REHABILITATION
AND NURSING AT WHITE PLAINS,                   Case No. 21-22623 (SHL)


                                      Debtor.
------------------------------------------------------------------------x
WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,

                                  Plaintiff,

                     against                    Adversary Proceeding

HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER      Case No. 21-07096 (SHL)
JOZEFOVIC, and MARK NEUMAN,

              Defendants and Third-Party Plaintiffs,

                     against

CCC EQUITIES, LLC, PROJECT EQUITY
CONSULTING, THE CONGRESS COMPANIES,
HOWARD FENSTERMAN, WILLIAM NICHOLSON, and
METROPOLITAN COMMERCIAL BANK

                  Third-Party Defendants
------------------------------------------------------------------------x


**WHITE PLAINS HEALTHCARE PROPERTIES I, LLC'S**
**<u>COUNTERSTATEMENT OF FACTS</u>**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7056-1(b) of this Court, Plaintiff White Plains Healthcare Properties I, LLC ("**Plaintiff**" or the "**Landlord**") responds to the Statement of Material Facts (Adv. Pro. Dkt. 38) submitted by defendant HBL SNF, LLC ("**Defendant**" or the "**Tenant**") in opposition to the Landlord's motion for summary judgment seeking a ruling that the Tenant defaulted under the Lease, and that the Landlord properly terminated the Lease.

## INTRODUCTION

The Tenant has submitted its purported "Rule 7056-1 Statement of Material Facts" ("**Def. SUF**") without any basis for having done so and in violation of the Federal and Local Rules; accordingly, no response is legally required. However, in an abundance of caution and to avoid any perception that the Tenant's stated facts are undisputed, the Landlord submits this response.

First, Local Rule 7056-1, pursuant to which the Tenant purports to have submitted its statement of facts, expressly requires that each material fact or statement controverting any statement of material fact "shall be followed by citation to evidence which would be admissible." The Tenant has failed to cite to any evidence at all in support of any of its so-called "material facts" for which it claims, without support, that "there is no genuine issue to be tried." For this reason alone, the Tenant's unsupported statements of fact should not be considered by the Court in deciding the Landlord's motion for partial summary judgment. *In re Basic Food Grp., LLC*, No. 15-10892 (JLG), 2018 WL 5805943, at *6 (Bankr. S.D.N.Y. Oct. 31, 2018) ("the Court will not consider those arguments or counter-statements of fact that are not supported by citations to admissible evidence"); *see also Shkrelli v. JPMorgan Chase Bank, N.A.,* No. 13 Civ. 5647 (LGS), 2015 WL 1408840, *1 n.1 (S.D.N.Y. 2015) (declining to consider paragraphs from plaintiffs' 56.1 statement that did not cite to admissible evidence in the record); *McGovern v. Waterscape Resort LLC (In re Waterscape Resort LLC)*, 483 B.R. 601, 610 (Bankr. S.D.N.Y.

2012) (disregarding parties' statements for failure to comply with LBR 7056–1 by failing to include citations to evidence).

Second, the Tenant has not filed a summary judgment motion seeking relief from this Court and thus there is no basis for the Tenant to submit an affirmative statement of facts. Rather, as the party opposing the Landlord's motion for partial summary judgment, LBR 7056-1 provides that the Tenant can respond to the statement of facts submitted by the moving party and include "if necessary, additional paragraphs containing a separate, short, and concise statements of additional material facts as to which it is contended that there is a genuine issue to be tried." Instead, the Tenant submitted a "statement of material facts for which there is no genuine issue to be tried" without citing any evidence to support its purported "undisputed" facts.  For this additional reason, the Tenant's statement of undisputed facts should be disregarded by the Court.

Finally, with few exceptions, the Tenant's asserted "material" facts are immaterial to the Landlord's motion for partial summary judgment and have no bearing on the issues to be decided by the Court.

### **RESPONSE TO THE TENANT'S STATEMENT OF UNDISPUTED FACTS**

1.      In or about August 2009, Debtor proposed the development of a new, state-of-the-art 160-bed skilled nursing facility in White Plains, New York (the "Facility") to the New York State Department of Health ("NYDOH").

**Response No. 1**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.

2.      Debtor was represented by Mark Zafrin ("Zafrin"), an attorney at Abrams Fensterman, LLP.  Howard Fensterman ("Fensterman") and Zafrin were law partners at Abrams Fensterman, LLP, and Zafrin introduced Debtor to Fensterman and William Nicholson ("Nicholson"), Fensterman's business partner.

**Response No. 2**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.

3.      During the development phase of the Facility, Fensterman acted on behalf of Debtor to obtain the necessary licenses to operate the skilled nursing facility from NYSDOH.

**Response No. 3**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.

4.      Landlord and Debtor worked together to select an appropriate location for the Facility.

**Response No. 4**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.

5.      Landlord and Debtor worked together to increase the number of beds for the Facility.

**Response No. 5**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.

6.      On November 20, 2015, Landlord and Debtor entered into a term sheet (the "Term Sheet"), under which Debtor provided Landlord with an interest-free loan of $2,200,000 for pre-development costs, and in exchange Landlord would provide Debtor with (1) title to furniture, fixtures, and equipment (the "FF&E") in the amount of $1,500,000; and (2) rent credits in the amount of $700,000.

**Response No. 6**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord states that the term sheet (the "**Term Sheet**") is a separate document that sets forth the core components of a separate agreement that the parties entered into for development costs of the Facility that pre-dated the Lease by several years, which was superseded by the Lease, and is unrelated to Tenant's breaches of the Lease.  The Landlord further states that the $2.2 million Tenant paid under the Term Sheet was an interest-free loan to Landlord in exchange for the purchase of $1,500,000 worth of furniture, fixtures, and equipment ("**FF&E**") for the Tenant's

use at the Facility, and a $700,000 credit against future rent payments.  Although the Tenant

contends that the Landlord failed to convey title to the FF&E, the Tenant nonetheless included

the value of the FF&E in its financial statements filed with the Court in this proceeding.  Bankr.

Dkt. No. 52, at 9.   And as to the claimed future rent credit of $700,000, it is the Landlord's

position that the credit was written out of the Lease when it was amended and is no longer

required.  The Landlord otherwise refers the Court to the Term Sheet for a complete and accurate

statement of its contents.  *See* Affirmation of William A. Nicholson, dated August 18, 2021, filed

in the Supreme Court of the State of New York, County of Westchester, Index No. 60278/2020,

NYSCEF Doc. No. 196 (the "**Nicholson Aff.**") Ex. 22.

7.        On or about July 2017, Landlord and Debtor entered into an amended lease (the

"Lease").  Pursuant to the Amended Lease, Debtor was required to pay $506,096.50 per month

in rent ("Fixed Rent").

**Response No. 7**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  Subject to and without waiving

the Landlord's objections, the Landlord states that on or about July 2017, Landlord and Tenant

entered into the Lease.  White Plains Healthcare Properties I, LLC's Statement of Undisputed

Facts in Support of its Motion for Partial Summary Judgment on Lease Termination Issue, Adv.

Pro. Dkt. 34 ("**Plf. 56.1 Stmt.**") ¶ 1.  The Landlord also states that pursuant to Section 3.2(a) of

the Lease, the Tenant was required to pay rent in the amount of $506,096.50 per month.  The

Landlord further states that, in addition to the payment of monthly rent, the Tenant was required

to pay Additional Rent which included "all sums, amounts, fees expenses and costs (including,

without limitation, legal fees and disbursements) payable or reimbursable to Landlord under this

Lease other than [monthly] rent." Nicholson Aff. Ex. 12 § 3.2(c).  The Tenant also had many

other contractual obligations pursuant to the Lease.  *See generally* Nicholson Aff. Ex. 12.

8.      On or about August 17, 2017, Debtor deposited $1,600,000 into a Chase bank

account and provided the executed certification statements to Fensterman.

**Response No. 8**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that Section 7.1(a)(iii) of the Lease required the Tenant to "deliver" the $1,600,000 *to* the

Landlord, Nicholson Aff. Ex. 12, and that Tenant conceded in submissions to this Court that it

"refused to place the additional $1.6M funds into the Landlord's hands," Tenant's Supplemental

Memorandum of Law in Opposition to Landlord's Motion for Summary Judgment, Adv. Pro.

Dkt. 35 ("**Def. Supp. Br.**"), at 11.

9.      Landlord never transacted the certification statements.

**Response No. 9**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that the Tenant never took all of the steps necessary to add Mr. Fensterman as a co-

signatory to the Chase account.  Affidavit of Howard Fensterman, dated August 18, 2021, filed

in the Supreme Court of the State of New York, County of Westchester, Index No. 60278/2020,

NYSCEF Doc. No. 227 (the "**Fensterman Aff.**") ¶¶ 2-3.  The Landlord further states that the

Tenant has conceded that it has "refused to place the additional $1.6M funds into the Landlord's

hands," Def. Supp. Br.  at 11, as required by the express terms of the Lease.

10.     Since August 2017, Debtor has maintained more than $1,600,000 in the Chase

bank account.

**Response No. 10**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that it has no knowledge about Tenant's alleged bank account balance because Tenant

failed to take all of the steps necessary to add Mr. Fensterman as a co-signatory to the Chase

account, Fensterman Aff. ¶¶ 2-3, and has "refused to place the additional $1.6M funds into the

Landlord's hands," Def. Supp. Br.  at 11, as required by the express terms of the Lease.

11.     On August 18, 2017, Landlord and Security Benefit Life Insurance Company

("Security Benefit") entered into a construction loan agreement (the "Loan Agreement").

**Response No. 11**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that it entered into a loan agreement with Security Benefit and refers the Court to the

contract for a complete and accurate statement of its contents.  Affidavit of Lizer Jozefovic,

dated October 25, 2021, filed in the Supreme Court of the State of New York, County of

Westchester, Index No. 60278/2020, NYSCEF Doc. No. 236 (the "**Jozefovic Aff.**") Ex. F.

12.     Pursuant to Section 11.2 of the Lease and Sections 3.5 and 4.1 of the Loan

Agreement, Landlord's right to terminate the Lease was subrogated to Security Benefit.

**Response No. 12**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that this "fact" is an incorrect legal conclusion to which no response is required; the

Landlord further states that neither the Lease nor the loan agreement with Security Benefit

contains any language "subrogating" one agreement to the other; and the Landlord refers the

Court to the Lease and Loan Agreement for a complete and accurate statement of their contents.

*See* Nicholson Aff. Ex. 12; Jozefovic Aff. Ex. F.

13.     On March 12, 2019, Landlord notified Debtor that the anticipated

Commencement Date was on or around May 15, 2019.  Landlord stated that the anticipated

Commencement Date triggered Debtor's obligation to provide additional security deposits sixty

(60) days prior to the Commencement Date, pursuant to Section 7.1(a) of the Lease.

**Response No. 13**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that pursuant to Section 7.1(a) of the Lease, the Tenant was required to provide security

deposits sixty (60) days prior to the Commencement Date of the Lease. Nicholson Aff. Ex. 12

§ 7.1(a). The Tenant has admitted that it has refused to provide the $3,700,000 letter of credit or

deposit the $1,600,000 into Landlord's account. Declaration of Lizer Jozefovic, dated February

11, 2022, Adv. Pro. Dkt. 37 (the "**Jozefovic Decl.**") ¶¶ 17, 19, 20. Whether the Commencement

Date was September 30, 2019, as the Landlord contends, or December 2, 2019, as Tenant now

contends, *see* NYSCEF Doc. No. 254 (Response to Statement of Material Facts ¶ 4), is irrelevant

for purposes of the Landlord's motion for partial summary judgment because the Tenant has

never provided the security deposits required under the Lease at any point in time.

14.     On or about July 2019, Debtor refused to provide Landlord with additional

security deposits, as Landlord had refused to convey title to $1,500,000 of FF&E or provide

Debtor with $700,000 of rent credits.

**Response No. 14**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement. In addition, the second phrase

in this statement is not material to the issues before the Court in connection with the Landlord's

motion for partial summary judgment. Subject to and without waiving the Landlord's

objections, the Landlord states that on or about July 2019 and at all points thereafter, Tenant has

refused to provide Landlord with any security deposits. Jozefovic Decl. ¶¶ 17, 20; Plf. 56.1

Stmt. ¶¶ 9, 12. The Landlord states that the Tenant's reference to $1,500,000 of FF&E and

$700,000 of rent credits relate to the Term Sheet, which is a separate document from the Lease

that sets forth the core components of a separate agreement that the parties entered into during

the construction phase of the Facility , and refers the Court to the Term Sheet for a complete and

accurate statement of its contents. *See* Nicholson Aff. Ex. 22. The Landlord further states that,

regardless of any dispute regarding the conveyance of title, the Tenant listed the $1,500,000 of

FF&E as its asset in submissions to this Court. Bankr. Dkt. No. 52, at 9. And as to the claimed

future rent credit of $700,000, it is the Landlord's position that the credit was written out of the

Lease when it was amended and is no longer required.

15.     On or about September 2019, Landlord provided Debtor with keys to the Facility

and demanded that Debtor commence operations.

**Response No. 15**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement. In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment. Subject to and without waiving the Landlord's objections, the Landlord

states that in September 2019, it handed over the keys to the Facility to the Tenant. Fensterman

Dep. 55:14-56:23. The Landlord further states that later in 2019, the Tenant commenced

operation of the Facility pursuant to the Lease. *See* Jozefovic Decl. ¶ 22 ("Debtor commenced

its start-up operations in late 2019").

16.     Beginning in October 2019, Debtor began making Fixed Rent Payments pursuant

to the Lease to Landlord in the amount of $509,000 per month.

**Response No. 16**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement. In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment. Subject to and without waiving the Landlord's objections, the Landlord

states that the first rent payment was received by the Landlord on October 30, 2019 and refers

the Court to Exhibit 25 to the Affidavit of Edward O. Tabor, dated August 18, 2021, filed in the

Supreme Court of the State of New York, County of Westchester, Index No. 60278/2020

(NYSCEF Doc. No. 212) (the "**Tabor Aff.**"), for a chart detailing the rental payments due under

the Lease and the dates and amounts of payments received by the Landlord through July 2021.

17.     On October 16, 2019, Security Benefit issued a notice of default to Landlord for

failing to establish a cash management account, as required by the Loan Agreement.

**Response No. 17**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that Security Benefit sent the Landlord a letter on October 18, 2019, which included a

"courtesy reminder" regarding the establishment of a cash management account, and otherwise

refers the Court to a copy of the letter for a complete and accurate statement of its contents. *See*

Declaration of John Giardino in Opposition to White Plains Healthcare Properties I, LLC's

Motion for Summary Judgment, Adv. Pro. Dkt. 36 (the "**Giardino Decl.**") Ex. 5.

18.     Debtor incurred start-up operating losses in excess of what was forecasted due to

the difficulty of launching a new skilled nursing home at the outset of the COVID-19 pandemic.

**Response No. 18**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

lacks information regarding the Tenant's statement because the Tenant has failed to deliver the

financial and operational reporting required under the Lease.  Plf. 56.1 Stmt. ¶¶ 32,33.

19.     On November 20, 2019, Debtor and Landlord entered into a letter of intent (the

"LOI"), which would have allowed Debtor to purchase the Facility from Landlord.

**Response No. 19**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that in November 2019, the parties entered into the LOI as part of an effort to resolve the

accumulation of issues arising from the Tenant's numerous breaches.   Plf. 56.1 Stmt. ¶ 38.  The

transaction contemplated under the LOI would have provided the Tenant with an ownership

interest in the Facility; but due to the Tenant's failure to comply with the terms of the LOI, the

LOI did not lead to a completed transaction.  Plf. 56.1 Stmt. ¶¶ 39-40.  The Landlord refers the

Court to the LOI for a complete and accurate statement of its contents.  Nicholson Aff. Ex. 17.

20.     On November 20, 2019 and in connection with the LOI, Debtor paid Landlord an

additional $2,200,000.

**Response No. 20**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that in November 2019, the Tenant paid a non-refundable down payment of $2,200,000 in

accordance with the terms of the LOI.  Nicholson Aff. Ex. 17 §§ 1(a)(i), (a)(ii)(3); id. § 2(c)(iv);

Nicholson Reply Aff. ¶ 14. The Landlord refers the Court to the LOI for a complete and accurate

statement of its contents.  *See generally* Nicholson Aff. Ex. 17.

21.     The transaction contemplated by the LOI was not consummated.

**Response No. 21**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that, as a result of the Tenant's failure to comply with the terms of the LOI, the LOI did

not lead to a completed transaction.  Plf. 56.1 Stmt. ¶¶ 39-40.

22.     Landlord has refused to return the $2,200,000 to Debtor or otherwise apply the

$2,200,000 to Debtor's account.

**Response No. 22**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that in November 2019, the Tenant paid a non-refundable down payment of $2,200,000 in

accordance with the terms of the LOI.  Nicholson Aff. Ex. 17 §§ 1(a)(i), (a)(ii)(3); id. § 2(c)(iv).

The Landlord refers the Court to the LOI for a complete and accurate statement of its contents.

*See generally* Nicholson Aff. Ex. 17.

23.     On November 5, 2019, Security Benefit issued a second notice of default to Landlord.

**Response No. 23**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord states that Security Benefit sent the Landlord a letter on November 5, 2019, which was not a notice of default, but rather a letter notifying the Landlord to replenish the Interest Reserve Fund within ten (10) days of the letter.

24.     On December 2, 2019, Landlord received final written approval from NYSDOH to begin operations at the Facility.

**Response No. 24**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord states that by letter dated December 2, 2019, the NYSDOH stated that based on the September 19, 2019 inspection of the Facility, approval to use the Facility was granted effective November 14, 2019.  Nicholson Aff. Ex. 20.  The Landlord refers the Court to the December 2, 2019 letter for a complete and accurate statement of its contents.  *Id.*

25.     Pursuant to Section 3.1(a) of the Lease, NYSDOH's final written approval of the Facility triggered the Commencement Date.

**Response No. 25**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord states that the definition of "Commencement Date" is set forth in Section 3.1(a) of the Lease and refers the Court to that provision of the agreement for a complete and accurate statement of its contents.  Nicholson Aff. Ex. 12 § 3.1(a).  The Landlord further states that whether the Commencement Date was September 30, 2019, as the Landlord contends, or December 2, 2019, as Tenant now contends, *see* NYSCEF Doc. No. 254 (Response to Statement of Material Facts ¶ 4), is irrelevant for purposes of the Landlord's motion for partial summary judgment.

26.    On January 7, 2020, Landlord issued a notice of default to Debtor, citing alleged breaches of both the LOI and Lease (the "Notice of Default").

**Response No. 26**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  Subject to and without waiving the Landlord's objections, the Landlord states that as a result of the Tenant's numerous defaults under the Lease, on January 7, 2020, it sent a notice of default and termination notice to the Tenant exercising its right to terminate the Lease.  Plf. 56.1 Stmt. ¶ 45.  The Landlord refers the Court to the Notice of Termination for a complete and accurate statement of its contents.  Tabor Aff. Ex. 26.

27.    The Notice of Default cites the failure of [sic] deposit the sum of $1,000,000 as a default under Section 7.1(a)(ii) of the Lease.

**Response No. 27**:

This purported fact should be disregarded and does not require a response because the
Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is
not material to the issues before the Court in connection with the Landlord's motion for partial
summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord
states that the Notice of Termination cites the Tenant's failure to provide the security deposit and
the additional security deposit, as required by Section 7.1(a)(ii) and Section 7.1(a)(iii) of the
Lease.  Tabor Aff. Ex. 26 ¶¶ 9, 10.  Because the LOI had not yet been terminated, the Notice of
Termination also cites the $1 million payment toward the security deposit that the Tenant failed
to pay as required on December 1, 2019.  *Id.*  The LOI contemplated that the $3,700,000 security
deposit would be paid in installments beginning with the $1 million payment and continuing with
a series of payments that would have totaled $3,700,000.   Nicholson Aff. Ex. 17 § 6(d).
However, because the LOI transaction was never consummated, the parties remained "as
Landlord and Tenant pursuant to the existing Lease."  *Id.* § 1(h).  The Landlord further states that
the Tenant has admitted that it has refused to provide the $3,700,000 letter of credit or deposit
the $1,600,000 into Landlord's account, as required by Section 7.1(a)(ii) and Section 7.1(a)(iii)
of the Lease.  Jozefovic Decl. ¶¶ 17, 19, 20.  The Landlord otherwise refers the Court to the
Notice of Termination for a complete and accurate statement of its contents.  Tabor Aff. Ex. 26.

28.      The Notice of Default does not provide Debtor with an opportunity to cure any of
the alleged breaches.

**Response No. 28**:

This purported fact should be disregarded and does not require a response because the
Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that there is no cure period provided for specifically enumerated defaults under the Lease,

which include (i) failure to deliver security deposits; (ii) failure to pay rent in a timely manner;

(iii) failure to provide provider agreements and reimbursement rate sheets; and (iv) failure to

procure the required insurance coverage.  Plf. 56.1 Stmt. ¶ 41.  The Landlord further states that

for any non-enumerated defaults, including the failure to pay real estate taxes and the failure to

provide financial and operational reporting, there is a 30-day cure period under the Lease, *id.*

¶ 42, and that the Tenant failed to cure these non-enumerated defaults within 30 days, or at any

point thereafter, *id.* ¶¶ 20-21, 32-33.

29.    Landlord never received the prior consent of Security Benefit to terminate the

Lease.

**Response No. 29**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that it is not aware of any evidence in the record indicating that Security Benefit consented

in advance to the Landlord's termination of the Lease.  For the reasons set forth in the Landlord's

Supplemental Reply Brief In Further Support Of Its Motion <u>For Partial Summary Judgment On

Lease Termination Issue being filed simultaneously herewith,</u> , the termination of the Lease is

effective regardless of whether Security Benefit consented to the termination.

30.     From April 1 through May 14, 2020, after the Notice of Default, Landlord and

Debtor negotiated the terms of a proposed intercreditor agreement (the "Intercreditor

Agreement").

**Response No. 30**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that the proposed intercreditor agreement was a draft contract that was never executed,

Giardino Decl. Ex. 11, and has no relevance to the Tenant's default under the Lease, which is a

binding, executed contract, or the resulting Lease termination.

31.     Landlord provided Security Benefit with a copy of the Intercreditor Agreement,

which Security Benefit approved.

**Response No. 31**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that the only documents in the record regarding the proposed intercreditor agreement are:

(i) a markup of the draft agreement (Giardino Decl. Ex. 11); and (ii) correspondence between

counsel for the Landlord and Tenant indicating serious issues with the draft intercreditor

agreement, including that the closing was conditioned on the Tenant not being in default under

any material contract and that "the various defaults under the Lease and the LOI appear to

impose an impediment to Borrower's ability to close and therefore must be cured before any closing can occur" (*id.* Ex. 10).  Absent from the record is any document indicating that there was a final contract, or that Security Benefit approved such contract.

32.    Throughout the negotiations concerning the Intercreditor Agreement, Landlord and Debtor continued to discuss the security deposits required by Section 7.1(a) of the Lease.

**Response No. 32**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord states that the Tenant was notified on January 7, 2020 of its default under the Lease for, inter alia, its failure to deliver the security deposits to the Landlord.  Tabor Aff. Ex. 26.  The Landlord further states that, regardless of whatever settlement discussions may have taken place, the Lease contains non-waiver provisions to ensure that any efforts by the Landlord to resolve disputes arising under the Lease are not deemed to waive those breaches.  Plf. 56.1 Stmt. ¶¶ 34-37.

33.    On April 16, 2020, Security Benefit issued a third notice of default to Landlord.

**Response No. 33**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord states that Security Benefit sent the Landlord a letter on April 16, 2020, and refers the Court to a copy of the letter for a complete and accurate statement of its contents.  *See* Giardino Decl. Ex. 5.

34.     On May 22, 2020, Security Benefit issued a fourth notice of default to Landlord.

**Response No. 34**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that Security Benefit sent the Landlord a letter on May 22, 2020, and refers the Court to a

copy of the letter for a complete and accurate statement of its contents.  *See* Giardino Decl. Ex. 5.

35.     On July 15, 2020, Landlord requested that that [sic] Security Benefit extend the

term of its construction loan by twelve (12) months and promised Security Benefit that it would

direct Debtor to pay the monthly installments of rent into a cash management account maintained

by Security Benefit for the next twelve (12) months.

**Response No. 35**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that any settlement discussions that the Landlord may have had with Security Benefit are

not matters as to which the Tenant has personal knowledge and further states that there is nothing

in the record to support Tenant's statement.

36.     On August 1, 2020, the Loan Agreement matured.

**Response No. 36**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states per Section 2.14 of the Loan Agreement, the "Initial Maturity Date" of the construction

loan is August 1, 2020, and otherwise refers the Court to the Loan Agreement for a complete and

accurate statement of its contents.  Jozefovic Aff. Ex. F.

37.    On September 18, 2020, Landlord initiated litigation against Debtor, in the action

captioned *White Plains Healthcare Properties I, LLC v. HBL SNF, LLC et al.*, No. 60278/2020,

New York Supreme Court, Westchester County.

**Response No. 37**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that on September 18, 2020, it filed a complaint against the Tenant and refers the Court to

the Complaint for a full and accurate statement of its contents.  Affirmation of Alfred E.

Donnellan, dated August 18, 2021, NYSCEF Doc. No. 184 (the "**Donnellan Aff.**") Ex. 1.

38.    On May 7, 2021, Debtor served Landlord with the amended document requests to

which Landlord refused to provide any documents in response.

**Response No. 38**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord states that this Court provided the Tenant with an opportunity to take discovery in connection with the Landlord's motion for partial summary judgment.  Adv. Pro. Dkt. 21.

39.     Since October 2019, Debtor has made consecutive Fixed Rent Payments pursuant to the Lease to Landlord each and every month, totaling over $12.5 million.

**Response No. 39**:

This purported fact is duplicative of paragraph 16, and Landlord incorporates its response to paragraph 16 above.

40.     Landlord has accepted Debtor's Fixed Rent Payments without dispute.

**Response No. 40**:

This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord refers the Court to the chart submitted by the Landlord for facts regarding the rental payments due under the Lease and the dates and amounts of payments received by the Landlord through July 2021.  Tabor Aff. Ex. 25.  The Landlord also states that the parties' disputes were well known to the Tenant, as evidenced by, among other things, the January 7, 2020 notice of default, Tabor Aff. Ex. 26, and subsequent lawsuit commenced in September 2020, Donnellan Aff. Ex. 1.

The Landlord further states that Section 20.21 of the Lease specifically provides, with regard to rent payments by Tenant, "Landlord may accept such checks without prejudice to any other rights or remedies which Landlord may have." Nicholson Aff. Ex. 12 § 20.21.

    41.    Debtor has paid all applicable real estate taxes for the Facility.

**Response No. 41**:

    This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement. In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment. Subject to and without waiving the Landlord's objections, the Landlord states that Tenant failed to pay real estate taxes in a timely manner, as required by the Lease, resulting in interest at the overdue rate in the amount of $2,621.94. Plf. 56.1 Stmt. ¶¶ 20-21.

    42.    Debtor has paid all applicable utility charges, utility deposits and municipal maintenance escrows.

**Response No. 42**:

    This purported fact should be disregarded and does not require a response because the Tenant has failed to cite any evidence in support of its statement. In addition, this statement is not material to the issues before the Court in connection with the Landlord's motion for partial summary judgment. Subject to and without waiving the Landlord's objections, the Landlord states that the Tenant has failed to pay (i) certain utility charges to Con Edison, and (ii) utility deposits and municipal maintenance escrows, totaling $71,472.69. While Tenant has reimbursed Landlord for a portion of these charges in the amount of $41,175.00, Tenant still owes the Landlord $35,921.44. Plf. 56.1 Stmt. ¶ 24. The Landlord further states that this "fact" is

contradicted by Tenant's own evidence, which concedes that there remain amounts outstanding

that are owed to the Landlord.  Jozefovic Decl. ¶ 28.

43.    Debtor has obtained the necessary types and amounts of insurance for the Facility.

**Response No. 43**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that the certificates of insurance belatedly provided by the Tenant on January 28, 2020

after the Lease had already been terminated, illustrate that the policy limits obtained by Tenant

are significantly lower than the requirements set forth in Section 6.1 of the Lease.  Plf. 56.1 Stmt.

¶ 28.  The Landlord further refers the Court to the Landlord's analysis of the amount of the

deficiencies set forth as Exhibit 40 to the Tabor Affidavit.

44.    Debtor has delivered necessary provider agreements, rate sheets, and financial and

operational reporting to Landlord.

**Response No. 44**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that the Tenant has never delivered any Medicare and Medicaid provider agreements to

Landlord. Plf. 56.1 Stmt. ¶ 30.  The Tenant failed to provide Medicaid reimbursement rate sheets

until July 2021, after the Lease had been terminated, and has never provided the required

Medicare documentation or any revised or amended reimbursement rate sheets. *Id.* ¶ 31.

 45. Landlord has refused to convey title to $1,500,000 of FF&E to Debtor.

**Response No. 45**:

 This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that the Tenant's reference to $1,500,000 of FF&E relates to the Term Sheet, which is a

separate document from the Lease that sets forth the core components of a separate agreement

that the parties entered into during the construction phase of the Facility, and refers the Court to

the Term Sheet for a complete and accurate statement of its contents.  *See* Nicholson Aff. Ex. 22.

The Landlord further states that, regardless of any dispute regarding the conveyance of title, the

Tenant listed the $1,500,000 of FF&E as an asset in submissions to this Court.  Bankr. Dkt. No.

52, at 9.

 46. Landlord has refused to provide Debtor with $700,000 of rent credits.

**Response No. 46**:

 This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that the Tenant's reference to $700,000 of rent credits relates to the Term Sheet, which is a

separate document from the Lease that sets forth the core components of a separate agreement

that the parties entered into during the construction phase of the Facility, and refers the Court to

the Term Sheet for a complete and accurate statement of its contents. *See* Nicholson Aff. Ex. 22.

The Landlord further states that as to the claimed future rent credit of $700,000, the rent credit

was written out of the Lease when it was amended and is no longer required.

47.    Landlord has refused to return or credit Debtor with the $2,200,000 provided

pursuant to the LOI.

**Response No. 47**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that in November 2019, the Tenant paid a non-refundable down payment of $2,200,000 in

accordance with the terms of the LOI.  Nicholson Aff. Ex. 17 §§ 1(a)(i), (a)(ii)(3); *id.* § 2(c)(iv).

The Landlord refers the Court to the LOI for a complete and accurate statement of its contents.

*See generally* Nicholson Aff. Ex. 17.

48.    Landlord has never received authorization from Security Benefit to terminate the

Lease.

**Response No. 48**:

This purported fact is duplicative of paragraph 29, and Landlord incorporates its response

to paragraph 29 above.

49.    Landlord never demanded surrender of the Leased premises by Debtor.

**<u>Response No. 49</u>**:

This purported fact should be disregarded and does not require a response because the

Tenant has failed to cite any evidence in support of its statement.  In addition, this statement is

not material to the issues before the Court in connection with the Landlord's motion for partial

summary judgment.  Subject to and without waiving the Landlord's objections, the Landlord

states that it terminated the Lease, effective January 12, 2020.  Tabor Aff. Ex. 26.  Thereafter, the

Landlord commenced a lawsuit against the Tenant seeking to enforce its rights under the Lease.

See generally Donnellan Aff. Ex. 1.

Dated:  March 11, 2022
   New York, New York

Respectfully submitted,

BINDER & SCHWARTZ LLP

/s/ Eric B. Fisher

Eric B. Fisher
Lindsay A. Bush
366 Madison Avenue, 6th Floor
New York, NY 10017
Tel.: (212) 510-7272
Email: efisher@binderschwartz.com
Email: lbush@binderschwartz.com

-and-

DELBELLO DONNELLAN WEINGARTEN WISE &
WIEDERKEHR, LLP
Alfred E. Donnellan
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Tel.: (914) 681-0200
Email: aed@ddw-law.com

ABRAMS, FENSTERMAN, LLP
Robert A. Spolzino
81 Main Street, Suite 306
White Plains, New York 10601
Tel.: (914) 607-7010
Email: RSpolzino@Abramslaw.com

*Counsel for White Plains Healthcare Properties I, LLC*