**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Brendan Scott
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
*Counsel to the Debtor and Debtor in Possession*

**MICHELMAN & ROBINSON, LLP**
John Giardino
800 Third Avenue, 24th Floor
New York, NY 10022
Tel: (212) 730-7700
Fax: (212) 730-7725
*Proposed Special Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
In re                                                                                    Chapter 11

HBL SNF, LLC, d/b/a EPIC REHABILITATION           (Subchapter V)
AND NURSING AT WHITE PLAINS,
                                                                                          Case No. 21-22623 (SHL)
                                                        Debtor.
---------------------------------------------------------------- X

# DEBTOR'S REPLY MEMORANDUM IN OPPOSITION TO
# LANDLORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT .................................................................................................1

    POINT I..........................................................................................................................................3

        ORDINARILY A QUESTION OF FACT, THE RECORD IN ...................................3

        THIS CASE REQUIRES THE FINDING AS A MATTER OF LAW .....................3

        THAT LANDLORD WAIVED THE RIGHT TO TERMINATE THE LEASE ......3

    POINT II .........................................................................................................................................8

        THE SECURITY BENEFIT LOAN DOCUMENTS, TO WHICH DEBTOR .........8

        IS A PARTY, PRECLUDE TERMINATION OF THE LEASE...............................8

    POINT III .....................................................................................................................................12

        LANDLORD'S PRE-EXISTING BREACH OF ITS LOAN AGREEMENT........12

        PRECLUDES TERMINATION OF THE LEASE AND SUPPORTS ..................12

        DEBTOR'S CLAIMS OF WRONGFUL CONDUCT BY LANDLORD ..............12

II. CONCLUSION ...........................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkin's Waste Materials, Inc. v. May*,
  34 N.Y.2d 422, 358 N.Y.S.2d 129, 314 N.E.2d 871 (1974) ....................................................... 5

*Comfort Inn Oceanside v. Hertz Corp.*,
  No. 11-CV-1534 JG JMA, 2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011) ................................. 13

*Frontline Processing Corp. v. Merrick Bank Corp.*,
  No. 13 CIV. 3956, 2014 WL 837050 (S.D.N.Y. Mar. 3, 2014) ................................................ 13

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996) ........................................................................................................ 13

*Jefpaul Garage Corp. v. Presbyterian Hosp. in N.Y.*,
  462 N.E.2d 1176 (N.Y. 1984) ............................................................................................ *passim*

*Lowe v Quinn*,
  27 NY2d 397 [1971] ................................................................................................................. 14

*Masuda v. Mazzei*,
  72 Misc. 3d 1209(A), 149 N.Y.S.3d 890 (N.Y. Sup. Ct. 2021) ............................................... 14

*Novick v AXA Network, LLC*,
  642 F3d 304 [2d Cir 2011] ....................................................................................................... 11

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
  No. 04 CIV. 704 (RPP), 2005 WL 1214281 (S.D.N.Y. May 20, 2005) ................................... 13

*Simon & Son Upholstery, Inc. v. 601 W. Assocs., LLC*,
  268 A.D.2d 359 N.Y.S.2d 256 (2000) ........................................................................................ 7

*Troiano v. 55 Ehrbar Tenants Corp.*,
  168 Misc.2d 906 (1996) 645 N.Y.S.2d 975 ............................................................................... 8

*World Wide Polymers, Inc. v Shinkong Synthetic Fibers Corp.*,
  03-CV-8843, 2010 WL 3155176, [SDNY July 30, 2010], *affd,* 694 F3d 155
  [2d Cir 2012] ....................................................................................................................... 10, 11

## I. PRELIMINARY STATEMENT

Landlord's Supplemental Brief in Further Support of Its Motion for Partial Summary Judgement (hereafter "Landlord's Brief") reveals that both parties agree "the only issue before the Court on this motion for partial summary judgment is whether the Landlord properly terminated the Lease due to Debtor's defaults."[1]

However, what Landlord labels "Debtor's defaults" are truly only <u>alleged</u> defaults as Debtor has introduced clear evidence that it withheld delivery of both the $1,600,000 cash deposit account established in 2017 and the $3,700,000 Letter of Credit because Landlord was already in breach of its obligations to Debtor for $2,200,000 which Debtor previously loaned to the Landlord. Notwithstanding this breach, Landlord took another $2,200,000 from Debtor in November 2019 for which it has never accounted. And to compound these financial misdeeds, we now know that Landlord collected more than $3,000,000 in rent from Debtor and did not pay its lender as required by its Loan Agreement.[2]

Obvious questions of fact exist about these alleged defaults which are only further exacerbated by allegations in the recent foreclosure complaint filed by Security Benefit. Remarkably, Security Benefit avers that Landlord collected **SIX** monthly installments of rent without making its required loan payments for the same monthly periods. Six monthly installments of rent equal more $3,000,000 which reveals that Landlord has missed or misappropriated more than $7,000,000 in payments made to it by Debtor. Partial Summary Judgment as to these alleged defaults must be denied and a hearing held to resolve these issues.

---

[1] See Landlord's Brief, ECF Docket No. 33, page 5.
[2] See Declaration of John Giardino Exhibit 3, pages 12, 13.

The same is not true of the issue of termination of the Lease. The record on this motion is clear and uncontroverted that (1) in addition to the defects in its Notice of Termination, Landlord waived the termination of the Lease by its subsequent communications and actions, and (2) Landlord never had the right to terminate the Lease as it never obtained the consent of Security Benefit.

In Landlord's Brief, Landlord attempts to diminish these issues and, remarkably, gets both the facts and the prevailing law on both issues wrong. As argued in Debtor's Supplemental Memorandum and this Reply, the law on waiver is clear. Acts and communications inconsistent with termination constitute waiver as a matter of law. In its superficial analysis of *Jefpaul Garage Corp. v. Presbyterian Hosp. in N.Y.*, 462 N.E.2d 1176, 1178 (N.Y. 1984) decision, Landlord completely misrepresents the facts of the case, misrepresents the Court's holdings, and then concludes that the case "contradicts the Debtor's position."[3] (*See* Point I herein).

Furthermore, in a desperate attempt to avoid the consequences of its admitted breach of its Loan Agreement with Security Benefit, Landlord attempts to characterize the loan agreements as "unrelated obligation(s) that Landlord had to a different party under a different contract" and as "extraneous writings."[4] Landlord fails to disclose to the Court – as it should have– that Debtor is a party to these very same loan agreements, that Debtor pledged its assets to Security Benefit for the benefit of Landlord, and that, in absolute parallel with the Landlord, Debtor agreed it would not seek to terminate the Lease without the prior consent of Security Benefit. (*See* Point II herein).

Finally, in a classic chapter from "The Rest of the Story," we learn that Landlord misappropriated more than $3,000,000 in rent paid to it by Debtor. Not only was Landlord in breach of its Loan Agreement before it issued its improper notice of termination to Debtor, but

---

[3] See Landlord's Brief, ECF Docket No. 33, page 18.
[4] See Landlord's Brief, ECF Docket No. 33, page 16.

2

Landlord also had and has unclean hands and no right to take the actions it took against Debtor. (*See* Point III herein).

As argued herein, the record on Landlord's motion requires denial of its request for partial summary judgment and a finding that the Lease was never terminated.

## POINT I

### ORDINARILY A QUESTION OF FACT, THE RECORD IN THIS CASE REQUIRES THE FINDING AS A MATTER OF LAW THAT LANDLORD WAIVED THE RIGHT TO TERMINATE THE LEASE

In Landlord's Brief, Landlord argues that the *Jefpaul* case relied on by Debtor actually supports Landlord's position that the "no waiver" clause in the Lease Agreement allows Landlord to accept rent without waiving its rights under the lease:

> *Indeed, the case primarily relied on by the Tenant, Jefpaul Garage Corp, 462 N.E.2d at 1178, expressly contradicts the Tenant's position. In Jefpaul, the Court of Appeals held that the landlord's acceptance of rent did not constitute a waiver of its rights under the lease per the lease's explicit non-waiver provision. Id. at 446 ("While waiver may be inferred from the acceptance of rent in some circumstances, it may not be inferred, and certainly not as a matter of law, to frustrate the reasonable expectations of the parties embodied in a lease when they have expressly agreed otherwise."). The same is true here.[5]*

To reach its conclusion, Landlord first ignores the facts of the present case in which in addition to accepting rent, Landlord never demanded that Debtor surrender possession, Landlord actually participated in negotiating a intercreditor agreement, Landlord issued multiple statements about curing any defaults and, in a most telling way, Landlord represented to Security Benefit <u>six months after</u> its alleged notice of termination that the Debtor would pay future monthly rent into an account controlled by Security Benefit.

---

[5] See Landlord's Brief, ECF Docket No. 33, page 18.

3

Landlord's superficial treatment of the holdings in <u>Jefpaul</u> is completely misplaced.  First, the facts of the *Jefpaul* case are significantly different from the facts of this case.  <u>Jefpaul</u> is an action brought by the <u>Tenant</u> to exercise an option to renew a lease.  The relevant facts are as follows:

1. By letter dated April 15, 1981, Tenant gave notice of its intention to exercise the renewal option.

2. Landlord responded on May 6, 1981 notifying Tenant that it had not complied with the terms of the lease and was presently in default with respect to payment of April and May 1981 rent and had continuously failed to pay the rents when due. In accordance with the lease, Landlord advised Tenant that it had <u>15 days to cure</u> these objections.

3. The parties dispute whether Tenant cured within the specified time but conceded that Tenant tendered the April and May rent payments and that Landlord accepted them.

4. On July 15, 1981, Landlord served a <u>second notice of default and notice to cure</u> before July 31, 1981 alleging that tenant had violated the lease not only because of late payments of rent and taxes but that it had also sublet the premises without consent.

5. Tenant obtained a temporary restraining order and on July 30, 1981 instituted an action to obtain a "Yellowstone" injunction (i) restraining Landlord from taking any action to effect termination of the Lease, and (ii) tolling the Cure Period in Landlord's notice from July 31, 1981 until the final determination of the action.

6. The Court granted the Yellowstone injunction and restrained Landlord from terminating the lease until the final determination of the action.

7. Thereafter on October 21, 1981, Tenant again notified the Landlord of its intention to exercise the option to renew.

8. On November 2, 1981, Landlord refused to accept Tenant's attempt to renew the lease on the ground that Tenant had not complied with its obligations under the lease and <u>not entitled to renewal</u>.

9. In response, Tenant commenced a declaratory judgment action seeking judgment that it has validly exercised its option to renew a lease for and moved for summary judgment arguing, notwithstanding the existence of the Yellowstone injunction, the Landlord had waived its right to object to Tenant's exercise of the renewal option by accepting rent for the remainder of the original term.

4

10. The Court denied Tenant's motion for summary judgment finding that there were questions of fact as to whether Landlord had the right to deny Tenant's exercise of its renewal option by reason of Tenant's alleged defaults.

In *Jefpaul*, Tenant argued that Landlord was estopped from refusing to renew the lease because Landlord waived the right to reject Tenant's exercise of the renewal option by continuing to accept rent when it knew of the alleged defaults. Finding that issues of fact that required trial, the Supreme Court ruled:

> **"While parties are deemed to have waived their right to insist on strict compliance with the letter of the lease where a course of conduct contrary to the express provisions of the lease has arisen, it seems clear that the defense of waiver is applicable only in those cases where a tenant's lease has been terminated and he is threatened with eviction."** *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York,* Index No. 16876/81, [Order of N.Y. Sup Ct entered in the Office of the Clerk of New York County on July 29, 1982][6]

The ruling of the Court is entirely consistent with Debtor's position in this case. Conduct contrary to termination <u>waives</u> termination.

Thereafter, Tenant appealed the ruling and relying on *Atkin's Waste Materials, Inc. v. May,* 34 N.Y.2d 422, 426, 427, 358 N.Y.S.2d 129, 132, 314 N.E.2d 871 (1974), the Appellate Division reversed the order and granted Tenant summary judgment. Landlord then appealed to the Court of Appeals which reversed the Appellate Division's decision, reinstated the Supreme Court ruling, and remanded the case for trial.

In reinstating the denial of summary judgment and remanding for trial on the factual issues of intent to waive, the Court of Appeals ruled that:

> "[…] Nor should the **intent to waive be inferred from acceptance of rent during the period of the "Yellowstone" injunction.** The broad restraint of that order foreclosed defendant after July 30, 1981 from taking any steps to terminate the lease and tolled the notice to cure. The order applied only during part of the period under consideration but plaintiff attempted to exercise the option for both renewal terms during that time and **it would be patently**

---

[6] See Declaration of John Giardino Exhibit 1, page 2

5

> **inequitable to hold that defendant had waived its objections to them by accepting rent during the period when it was stayed indefinitely from terminating the lease and evicting plaintiff** (emphasis added). *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York,* 61 N.Y.2d 442, 446–47, 462 N.E.2d 1176 (1984)

The Court further held that:

> **Our decision applied the settled principle that acceptance of rent by a landlord from a tenant with knowledge of the tenant's violation of the terms of the lease normally results in a waiver of the violation** (see *Woollard v Schaffer Stores Co.,* 272 N.Y. 304, 312; *Murray v Harway,* 56 N.Y. 337). **The logic underlying this rule is plain enough: the option rests with the landlord to recognize the violation and terminate the tenancy**. If he chooses to ignore it and accepts rent with knowledge of the tenant's violation then the acceptance evidences his waiver and an election to continue the relationship. **Although the intent to waive is usually a question of fact, knowing acceptance of rent without any effort to terminate justifies an inference that the landlord has elected to hold the tenant to the lease. The primary reason for the rule is the inconsistency of the landlord's positions** (emphasis added). *Jefpaul Garage Corp.* 61 N.Y.2d 442, 447–48, 462 N.E.2d 1176 (1984).

In particularly, the Court proceeds to distinguish a case involving the renewal of a lease from a case of termination:

> Plaintiff contends that application of this principle entitled it not only to remain in possession but to renew the lease. <u>**The general rule is that if a tenant's right to renew is conditional, as it is in this case, it cannot be exercised validly unless the tenant is in full compliance with the conditions**</u> (see *McIntosh v Rector of St. Phillip's Church*, 120 N.Y. 7; *People's Bank v Mitchell,* 73 N.Y. 406). **Whether the landlord has waived performance of the condition is a question of fact (as was waiver of a violation permitting reentry, had the term not expired) but there is no necessary inconsistency in treating a party as a tenant by accepting the rent with knowledge of a violation of the lease, but in also refusing to extend the lease for a further term**. The landlord may desire that the tenant complete the term but not wish to extend it for a variety of reasons. The refusal to extend results not in a forfeiture for the tenant but only in the loss of the privilege because the conditions precedent to enjoyment of the privilege have not been met. In the absence of some prejudice to the tenant, **therefore, a waiver of the right to terminate the tenancy will not automatically result in a waiver of the conditions precedent to renewal** (emphasis added). <u>*Jefpaul Garage Corp.*</u>, 61 N.Y.2d 442, 448, 462 N.E.2d 1176 (1984).

6

In the *Jefpaul* case, the Landlord <u>waived its right to terminate</u> the lease by accepting rent. The issue before the *Jefpaul* Court is whether Landlord's acceptance of rent during the term of its Lease with knowledge of Tenant's violations constituted a waiver of the <u>conditions precedent to Tenant's exercise of the option</u> to renew and **enabled Tenant to exercise its option** (emphasis added). Here, Landlord waived termination by accepting rent, never demanding possession, and engaging in contracts, negotiations, and expressing the intention for Debtor's continued tenancy.

In *Simon & Son Upholstery, Inc. v. 601 W. Assocs., LLC,* 268 A.D.2d 359 N.Y.S.2d 256, 257 (2000), the lease limited the use of the subject premises to furniture manufacturing and limited the tenant's elevator usage to certain specified times. Notwithstanding the terms of the lease, the landlord, while not providing explicit permission apparently consented to the tenant's use of the premises for a photographic studio, and the premises were renovated for that purpose with the landlord's full knowledge and involvement. Thereafter, the landlord accepted overtime payments from the photographic studio for usage of the elevator at times other than those set forth in the lease. The lease contained no waiver and merger clauses.

A subsequent landlord, relying on the terms of the lease and the no-waiver clause, refused to provide off-hour elevator service, and the tenant sought an injunction compelling the new landlord to provide such service. The Appellate Division, First Department upheld the injunction granted by the lower court holding that the prior landlord's active involvement in the tenant's non-conforming use of the premises precluded the new landlord's reliance on the no waiver clause:

> "We recognize that the lease contained nonwaiver and merger clauses, but note that in this case the prior landlord was fully apprised and involved in the photography studio modifications, including approving the renovations, providing tenant parking, accepting payments from the photography tenant, and using the premises in a sales brochure. **<u>This active involvement is in stark contrast to the landlord's passive acceptance of late rent payments in *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New*</u>**

7

<u>**York*, 61 N.Y.2d 442, 474 N.Y.S.2d 458, 462 N.E.2d 1176**. **Here, in distinction to Jefpaul, there are sufficient indicia that the reasonable expectations of both parties under the original lease were supplanted by subsequent actions**</u>" (emphasis added). <u>*Simon & Son Upholstery, Inc. v. 601 W. Assocs., LLC*</u>, 268 A.D.2d 359, 360, 702 N.Y.S.2d 256, 257 (2000)

See also *Troiano v. 55 Ehrbar Tenants Corp.*, 168 Misc.2d 906 (1996) 645 N.Y.S.2d 975, "thus, despite a "non-waiver" clause in the proprietary lease **the landlord clearly abandoned its right to proceed to termination of the lease and waived the claimed default by the receipt and retention of the monthly payments and by failing to proceed after the noticed date of termination**" (emphasis added). In *Troiano* the court held that the tenant is entitled to a second notice and opportunity to cure any default before service of the termination notice given that tenant has reasonably relied upon the actions of the landlord as evidenced by its waiver. (emphasis added).

**POINT II**

**THE SECURITY BENEFIT LOAN DOCUMENTS, TO WHICH DEBTOR
IS A PARTY, PRECLUDE TERMINATION OF THE LEASE**

As set forth in Debtor's Supplemental Memorandum, Landlord had no right to issue the January 7, 2020 Notice of Termination without first obtaining consent from Security Benefit which Landlord admits it failed to do.[7] In response, Landlord (consistent with its sworn testimony) states that the Loan Agreement is an "unrelated obligation that Landlord had to a different party under a different contract."[8] The Landlord's position is patently false.

At the time of the Security Benefit loan closing on July 17, 2017, the Landlord, Debtor, and Security Benefit entered into a "Security Agreement, Assignment of Leases and Rents and

---

[7] See Landlord's Brief, Page 15.
[8] See Landlord's Brief, Page 16.

8

Fixture Filing (Operating Lease)." See Exhibit 2 to Declaration of John Giardino (hereafter the "Security Agreement"). The Security Agreement provides in relevant parts:

### RECITALS

D. The Note, Loan Agreement, Security Instrument, this Agreement, and other documents evidencing, securing or executed and delivered in connection with the Loan are referred to as "Loan Documents."

E. As a condition precedent to Lender's making the Loan to Borrower, Agent requires that Operator[9] execute this Agreement and other documents encumbering Operator's interests in the Collateral Property (as defined below) for the benefit of Agent.

F. Operator will benefit materially from Agent's approval of the Operating Lease and from the Loan transaction described in this Agreement."

**ARTICLE 1. DEFINITIONS**

**"Event of Default"** means the occurrence of: (i) any Event of Default (as defined in the Loan Agreement or any of the Loan Documents, or (ii) a default by Borrower or Operator of any representation, warranty, obligation or covenant under this Agreement, or (iii) a default under the Operating Lease.

**ARTICLE 2. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT**

2.1    Collateral Property:

[…]

(i) Leases

**ARTICLE 7. ASSIGNMENT**

7.1    Operator agrees as follows:

(b) Operator will not terminate the Operating Lease or cease to perform its obligations under the Operating Lease for any reason, including but not limited to Borrower's failure to make any payments to Operator, without giving Agent thirty (30) days' prior Notice of such intention, in order that Agent may, at

---

[9] Operator is defined as the Debtor in the introduction of the Operating Lease, Page 1.

> its election, cure Borrower's default and/or exercise its rights under this Agreement.
>
> **ARTICLE 4. REPRESENTATIONS AND WARRANTIES OF OPERATOR**
>
> **4.1**    Operator represents, warrants and agrees to the following:
>
> (b) During the term of this Agreement, Operator will not commence, or join with any other creditor in commencing any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings with respect to Borrower, without Agent's prior written consent, and as of the date hereof, Operator has not filed and is not subject to any filing for bankruptcy or reorganization under any applicable bankruptcy or insolvency laws. The Operating Lease is in full force and effect, Operator is not in default thereunder and Operator is not aware of any ongoing default thereunder by Borrower.
>
> **ARTICLE 9. MISCELLANEOUS**
>
> **9.21    Rejection of Operating Lease.** If any bankruptcy proceedings hereafter commence with respect to Borrower, and if the Operating Lease is rejected by the trustee pursuant to Section 365 of the United States Bankruptcy Code, Operator agrees with Agent (a) not to treat such lease as terminated, and (b) to remain in possession of the Mortgaged Property pursuant to the terms of the Operating Lease and this Agreement."

There can be no question that the Lease and the Loan documents must be read together as one. *World Wide Polymers, Inc. v Shinkong Synthetic Fibers Corp.*, 03-CV-8843, 2010 WL 3155176, at *15 [SDNY July 30, 2010], *affd*, 694 F3d 155 [2d Cir 2012] "Instruments that are executed at substantially the same time and relate to the same subject matter are read together as one." (citing *This Is Me, Inc. v. Taylor,* 157 F.3d 139, 143 (2d Cir.1998)).

Here the Debtor is in direct privity with Security Benefit and the Security Agreement expressly states that it, together with the Lease, are defined as the Loan Documents. To that end, Debtor granted Security Benefit an interest in its assets including the Lease, agreed not to declare

10

default or termination of the Lease by Landlord without notice to Security Benefit, and agreed to continue in possession if the Lease were rejected in a bankruptcy proceeding.

The Lease and Loan documents constitute an integrated agreement as they were signed at the same time and contain interlocking provisions with both Landlord and Debtor bound to the terms of the Loan Agreement. *Novick v AXA Network, LLC*, 642 F3d 304, 312 [2d Cir 2011] ("[T]he issue of the dependency of separate contracts ... boils down to the intent of the parties.") (quoting *National Union Fire Insurance Company of Pittsburgh, Pa. v. Turtur,* 892 F.2d 199, 205 (2d Cir.1989)); *World Wide Polymers, Inc. v Shinkong Synthetic Fibers Corp.*, 03-CV-8843, 2010 WL 3155176, at *15 [SDNY July 30, 2010], *affd,* 694 F3d 155 [2d Cir 2012] ("In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances.") (quoting *Rudman v. Cowles Commc'ns, Inc.,* 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867, 873 (N.Y.1972)).

Furthermore, Section 11.2 of the Lease subrogates the Lease to the Loan Agreement, stating:

> "All provisions contained in the loan documents between [Landlord] and [Security Benefit] . . . shall take precedence over and be in lieu of any contrary provision provided for in this Lease, and in all respects are binding upon [Debtor] who agrees to and acknowledges the same."

This provision corresponds to Section 4.1 of the Loan Agreement, which "assigns to [Security Benefit] . . . all of [Landlord's] rights in and under all Leases."

Landlord's argument that the Lease is not integrated with the Loan Agreements particularly when Debtor is party to the Security Agreement, flies in the face of all legal precedents. Landlord was prohibited from serving the Notice of Termination because it failed to obtain Security Benefit's prior written consent, the very same restrictions imposed upon the Debtor by the Security

11

Agreement. As Landlord never obtained—and does not currently have—Security Benefit's consent, the Lease was not and cannot be terminated.

## POINT III

**LANDLORD'S PRE-EXISTING BREACH OF ITS LOAN AGREEMENT PRECLUDES TERMINATION OF THE LEASE AND SUPPORTS DEBTOR'S CLAIMS OF WRONGFUL CONDUCT BY LANDLORD**

As set forth above, it is clear that Landlord breached the Loan Agreement by failing to obtain the prior consent of Security Benefit to terminate the Lease. For that reason alone, the notice of termination is a nullity. But in an astounding "Rest of the Story," the record now shows that although collecting the sum of $509,000 from Debtor each month, Landlord failed to make required monthly loan payments as follows:

1) $159,081.07 for October, 2019 (Security Benefit Complaint at 44(i);
2) $159,081.07 for November, 2019 (Security Benefit Complaint at 44(iii);
3) $160,416.67 for April, 2020 (Security Benefit Complaint at 44(vi);
4) $165,763.89 for May, 2020 (Security Benefit Complaint at 44(viii);
5) $160,416.67 for June, 2020 (Security Benefit Complaint at 44(x);
6) $176,458.33 for July, 2020 (Security Benefit Complaint at 44(xii);

Underlying every issue in this dispute are Debtor's allegations that Landlord misused and misappropriated Debtor's funds and failed to honor its obligations to Debtor. As set forth in Debtor's Supplemental Memorandum, Landlord cannot account for $4,400,000 in capital contributions from Debtor. Given this lack of accountability, Debtor withheld, <u>understandably</u>, the delivery of another $1,600,000 in cash and an irrevocable letter of credit to Landlord. These are the <u>two</u> events upon which Landlord rests its action to terminate the Lease. However, we now discover that Landlord accepted six (6) payments of rent in the amount of $509,000, another $3,000,000 of funds, which are unaccounted for by the Landlord.

As set forth in the Security Benefit Complaint, Landlord was in default of the Loan Agreement as of October 2019.[10] Accordingly, it is precluded, estopped, and barred by its own defaults from proceeding against Debtor.

In order to assert a claim for breach of contract, a plaintiff must allege three elements "(1) the existence of agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). To meet this second element, a plaintiff must specifically demonstrate and "the complaint *must allege facts* which show adequate performance of the contract by plaintiff." *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13 CIV. 3956, 2014 WL 837050, at *5 (S.D.N.Y. Mar. 3, 2014) (emphasis added).

The inability to demonstrate adequate performance "***is fatal to a breach of contract claim*** even if the other requisite elements can be met….Absent allegations of the claimant's own performance, the claimant has alleged facts showing 'the mere possibility of misconduct,' but not that it is entitled to relief." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 JG JMA, 2011 WL 5238658, at *3–4 (E.D.N.Y. Nov. 1, 2011) (emphasis added).

Here, Landlord did not perform its obligations under the Loan Agreement as evidenced by Security Benefit's Complaint. Having violated its obligations under the Loan Agreement, Landlord is barred from now bringing any claim based in contract. As the courts held in *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 CIV. 704 (RPP), 2005 WL 1214281, at *14 (S.D.N.Y. May 20, 2005), a plaintiff who breaches its contract "cannot maintain a valid contract claim against Defendants for its actions subsequent to her breach."

---

[10] See Declaration of John Giardino Exhibit 3, § § 1, 44

13

Moreover, under New York law, "a party may invoke the unclean-hands defense if the opposing party's immoral or illegal conduct harmed the defendant and is related to the subject of the litigation." *Lowe v Quinn*, 27 NY2d 397, 401 [1971]. Landlord's defaults under the Loan Documents as well as its failure to account Debtor's payments towards its obligations preclude Landlord from now proceeding against Debtor. "The doctrine of unclean hand denies Landlord the ability to evict tenant for engaging in illegal conduct in which Landlord was complicit. Landlord's alleged causal role in tenant's illegal conduct would preclude Landlord from now benefitting from that conduct" (emphasis added) *Masuda v. Mazzei,* 72 Misc. 3d 1209(A), 149 N.Y.S.3d 890 (N.Y. Sup. Ct. 2021).

## II. CONCLUSION

In these proceedings Debtor's business and its property are at stake:

1) its Operating Lease,
2) $2,200,000 paid in 2015,
3) $2,200,000 paid in 2017, and
4) monthly rents paid since October 2019.

The Debtor has paid its rent and additional rent every month since the commencement of the Lease. Landlord seeks to terminate the Lease for failure to post security when it is the Landlord who has breached and failed to account for more than $7,000,000 in payments by Debtor.

For these reasons and the reasons set forth in Debtor's opposition papers, Landlord's motion for partial summary judgment should be denied and this Court should rule that the Lease has never been terminated.

Dated: New York, New York

March 11, 2022                    MICHELMAN & ROBINSON, LLP


By: /s/ John Giardino
John Giardino
800 Third Avenue, 24th Floor
New York, NY 10022
Tel: 212-730-7700
Fax: 212-730-7725

*Proposed Special Counsel to the Debtor and Debtor in Possession*

-and-

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP


By: /s/ Tracy L. Klestadt
Tracy L. Klestadt
Brendan M. Scott
Christopher Reilly
200 West 41st Street, 17th Floor
New York, NY 10036
Tel: 212-972-3000
Fax: 212-972-2245

*Attorneys for Debtor and Debtor in Possession*

15