**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

In re

HBL SNF, LLC, d/b/a EPIC REHABILITATION
AND NURSING AT WHITE PLAINS,

                   Debtor.

Chapter 11

(Subchapter V)

Case No. 21-22623 (SHL)

------------------------------------------------------------X

WHITE PLAINS HEALTHCARE PROPERTIES
I, LLC,

                   Plaintiff,

    -against-

HBL SNF, LLC, LIZER JOZEFOVIC A/K/A
LIZER JOSEFOVIC, and MARK NEUMAN,

    Defendants and Third-Party Plaintiffs,

    -against-

CCC EQUITIES, LLC, PROJECT EQUITY
CONSULTING, THE CONGRESS COMPANIES,
HOWARD FENSTERMAN, WILLIAM
NICHOLSON, and METROPOLITAN
COMMERCIAL BANK,

              Third-Party Defendants.

Adversary Proceeding

Adv. Pro. No. 21-07096 (SHL)

------------------------------------------------------------X

# **MOTION FOR REARGUMENT OF THE MEMORANDUM OF DECISION DATED MAY 20, 2022**

1

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................................ 1

    POINT I ............................................................................................................................ 3

    QUESTIONS OF FACT REGARDING LANDLORD'S INTENTION TO TERMINATE
    THE LEASE PRECLUDE THE GRANTING OF SUMMARY JUDGMENT ................. 3

    POINT II ........................................................................................................................... 9

    HAVING FOUND THAT THE LEASE AND AGREEMENTS ARE INTEGRATED, .. 9

    THE LENDER'S CONSENT TO TERMINATION OF THE LEASE IS A CONDITION
    PRECEDENT TO TERMINATION ................................................................................ 9

II.  CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Anglo American Ins. Group, P.L.C. v. CalFed Inc.,
　940 F.Supp. 554 (S.D.N.Y.1996) ...............................................................................................1

Banco de Seguros del Estado v. Mut. Marine Offices, Inc.,
　230 F.Supp.2d 427 (S.D.N.Y.2002), aff'd, 344 F.3d 255 (2d Cir.2003) .................................1

Farkas v. Ellis,
　783 F.Supp. 830 (S.D.N.Y.), aff'd, 979 F.2d 845 (2d Cir.1992) ...............................................1

In re Gen. Vision Servs., Inc.,
　352 B.R. 25 (Bankr. S.D.N.Y. 2006), order aff'd, appeal dismissed, 423 B.R.
　790 (S.D.N.Y. 2010) ...................................................................................................................1

Griffin Indus., Inc. v. Petrojam, Ltd.,
　72 F.Supp.2d 365 (S.D.N.Y.1999) ............................................................................................1

Jefpaul Garage Corp. v. Presbyterian Hosp.,
　61 N.Y.2d 442 (1984) .................................................................................................................6

Novick v AXA Network, LLC,
　642 F3d 304 [2d Cir 2011] .......................................................................................................9

Simon & Son Upholstery, Inc. v. 601 W. Assocs., LLC,
　268 A.D.2d 359 N.Y.S.2d 256 (2000) .......................................................................................7

This Is Me, Inc. v. Taylor,
　157 F.3d 139 (2d Cir. 1998) ..................................................................................................9, 10

Troiano v. 55 Ehrbar Tenants Corp.,
　168 Misc.2d 906 (1996) 645 N.Y.S.2d 975 .............................................................................8

TVT Recs. v. Island Def Jam Music Grp.,
　412 F.3d 82 (2d Cir. 2005) ....................................................................................................9, 10

World Wide Polymers, Inc. v Shinkong Synthetic Fibers Corp., 03-CV-8843,
　2010 WL 3155176 .....................................................................................................................9

**Other Authorities**

Local Rule 9023-1 ...............................................................................................................................1

Rule 60(b) of the Federal Rules of Civil Procedure ........................................................................1

Rule 9024 of the Federal Rules of Bankruptcy Procedure ............................................................1

I. **PRELIMINARY STATEMENT**

Much like the New York Yankees over the past several weeks, the Debtor finds itself behind in the late innings. This Court's Memorandum of Decision of May 20, 2022 (the "Decision") [ECF No. 51] on the motion of the Plaintiff White Plains Healthcare Properties I, LLC (the "Landlord") for partial summary judgment on the issue of whether the Landlord properly terminated its lease with the Debtor finding that the Landlord's Notice of Default was proper and that the Debtor's Lease was terminated has created uncertainty about the Debtor's future. The Debtor, HBL SNF, LLC, d/b/a Epic Rehabilitation And Nursing At White Plains (the "Debtor"), by and through counsel and pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Rule 9024 of the Federal Rules of Bankruptcy Procedure, and Local Rule 9023-1, hereby moves for reconsideration and/or reargument with respect to the Court's Decision on two specific matters addressed by the Court in its Decision.

SDNY Bankruptcy Courts have held that to prevail on a motion for reargument, the movant must show that the court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *Anglo American Ins. Group, P.L.C. v. CalFed Inc.,* 940 F.Supp. 554, 557 (S.D.N.Y.1996) (quoting *Morser v. AT & T Information Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989)); *accord Banco de Seguros del Estado v. Mut. Marine Offices, Inc.,* 230 F.Supp.2d 427, 428 (S.D.N.Y.2002), *aff'd,* 344 F.3d 255 (2d Cir.2003); *Griffin Indus., Inc. v. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y.1999); *Farkas v. Ellis,* 783 F.Supp. 830, 832–33 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (2d Cir.1992).

1

"Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice." *Griffin Indus.,* 72 F.Supp.2d at 368 (internal quotation marks and citations omitted); *accord Banco de Seguros del Estado,* 230 F.Supp.2d at 428. In re Gen. Vision Servs., Inc., 352 B.R. 25, 28 (Bankr. S.D.N.Y. 2006), order aff'd, appeal dismissed, 423 B.R. 790 (S.D.N.Y. 2010)

The Debtor believes that when issuing its Decision, the Court overlooked factual allegations and controlling case authority which would have materially influenced the findings it reached. Concisely stated, the two matters are as follows:

1. In opposition to the summary judgement motion, the Debtor argued that as a factual matter the Landlord waived its right under Section 16.1 of the Lease[1] to elect to terminate the Lease as a result of any alleged defaults and that the Landlord's conduct represented the intention not to terminate the Lease. The Decision addresses waiver of the Debtor's defaults which are distinct from the waiver of the election to terminate as a remedy for any such defaults. As argued herein, given the standard of review in summary proceedings, the conduct by the Landlord subsequent to its January 20, 2020 Notice of Default ("Notice of Default") requires denial of summary judgement on the issue of termination of the Lease; and

2. In opposition to the summary judgement motion, the Debtor argued that the Landlord's right to elect to terminate the Lease as a remedy for any alleged defaults was specifically restricted by the consent requirements contained in the Lease and

---

[1] The "Lease" refers to that certain Amended and Restated Operating Lease, dated November 19, 2015 (as amended from time to time), by and between the Debtor, as tenant, and White Plains Healthcare Properties I, LLC, as landlord, with respect to the real property on which the Debtor's business is operated, located at 116-120 Church Street, White Plains, New York.

2

the Loan Documents.[2] Having found that the Lease is integrated with the Loan Documents, the Debtor, as a party to those agreements, has direct rights which are independent of any act, omissions, or breach by the Landlord. The consent of the Landlord's lender is a <u>condition precedent</u> to the election to terminate the Lease by either the Landlord or the Tenant. In other words, the Debtor has the right to continue in its Lease until both the Landlord <u>and the Landlord's lender</u> proceed to terminate under Section 16.1 of the Lease.

Upon reconsideration, these two matters require the Court to modify its Decision and find that the Landlord is not entitled to summary judgement on the issue of termination of the lease.

## POINT I

### QUESTIONS OF FACT REGARDING THE LANDLORD'S INTENTION TO TERMINATE THE LEASE PRECLUDE THE GRANTING OF SUMMARY JUDGMENT

As the Court properly noted in the Decision, a material fact is one that "might affect the outcome of the suit under governing law." Furthermore, a material fact is "genuine" such that a reasonable jury could return a verdict for the non-moving party, here, the Debtor. Importantly, the Court should resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought, here, the Debtor.

As the Court cited at page 18 of the Decision, the governing law in New York on the issue of waiver is simply stated - conduct by the party with a known right who engages in conduct contrary to the exercise of that right is deemed to have abandoned or relinquished that right. "Such

---

[2] The Security Agreement defines the term "Loan Documents" as the Loan Agreement, the Security Agreement and other documents evidencing the Loan.

abandonment may be established by affirmative conduct or the failure to act so as to evince an intent not to claim purported advantage," citing *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.,* 7 N.Y.3d 96, 104 (2006). And further, "the existence of a non-waiver clause does not in itself preclude the waiver of a contract clause," citing *Dice v. Inward Hills Condo* 655 N.Y.S. 2d 562. Importantly, the cases cited by the Court hold that the issue of waiver or abandonment involves the intent of the party waiving or abandoning that right and is a question of fact.

Here, the right at issue is the Landlord's right pursuant to Section 16.1 of the Lease to elect to terminate the lease <u>as a remedy</u> for a default by the Debtor: *Upon the occurrence of a Lease Default, Landlord, may, if Landlord so elects, upon five (5) days written notice of such election, forthwith terminate this Lease and Tenant's right to possession of the Leased Premises and, at Landlord's sole and absolute discretion, accelerate the payment of rent for the balance of the lease term.*

In opposition to the motion for summary judgment, the Debtor argued that the Landlord's conduct after its Notice of Default represents conduct contrary to the election to terminate the Lease. Without reciting all the factual references in the record before the Court on the primary motion, the Debtor identified the following conduct by the Landlord as the conduct evincing the intent not to terminate the Lease:

1. the acceptance of rent in the base amount of rent every month after January 2020 without any notice that such rent payment was rejected or was to be in the holdover amount,

2. the failure to demand the surrender of the premises and the knowledge of the continued operations at the leased premises,

4

3. the failure to demand acceleration of rent,

4. the active participation in negotiations of a new financing which involved a pledge of revenues generated from the Debtor's continued operations of the leased premises over the next five (5) years including the solicitation of its lender Security Benefit's consent to the release of the lender's security interest in those revenues,

5. the failure to notify or even disclose to its lender Security Benefit its election to terminate the lease,

6. the issuance of repeated statements addressing the curing of alleged defaults, and

7. the very purposeful representation to its lender Security Benefit on July 15, 2020, six months after its Notice of Default, that it would direct the Debtor to pay the twelve installments of monthly rent into a lender-controlled cash management account, thereby curing one of Landlord's defaults under its loan agreement with Security Benefit.

It is on these facts, and all of the favorable inferences that can and must be drawn from them, that a reasonable jury may conclude that the Landlord abandoned its termination remedy after the issuance of the Notice of Default and found it <u>in its own best interests to continue the lease</u>.

By way of example, the July 15, 2020, commitment by the Landlord to direct payments of future rent from July 2020 through June 2021 to the lender's cash management account was not merely a "boon' to Security Benefit – it was a <u>cure of one of the Landlord's defaults</u> about which the Landlord had been put in notice by Security Benefit. (*See* Exhibit 5 of Giardino Declaration dated February 11, 2022*,* [ECF No. 36-5]). The Landlord specifically represented to its lender Security Benefit that the Debtor would make these payments. The Landlord did not report to

5

Security Benefit that it had terminated the Lease and that it could not be sure that any future Lease payments would be made by the Debtor because it was not in the Landlord's interests to do so. Despite finding that July 15, 2020 Letter "did nothing to change or alter any of the Debtor's obligations as tenant" at page 24 of the Decision, the Court held that the same letter does not manifest an intent of the Landlord to continue the Lease into a foreseeable future. In fact, none of Landlord's subsequent conduct following the Notice of Default did anything to change or alter Debtor's obligations as tenant, because Landlord never intended to terminate the Lease. Respectfully, the Court in reaching its conclusions about the significance of the July 15, 2020 letter by Landlord to Security Benefit, the Court did not draw the inferences most favorable to the Debtor and decided a factual issue which a reasonable jury could easily decide supports the exact opposite conclusion.

Respectfully, while rejecting Debtor's arguments under *Jefpaul Garage Corp. v. Presbyterian Hosp.,* 61 N.Y.2d 442, 446 (1984), the Court overlooked the important holdings of the Court of Appeals. Particularly in *Jefpaul*, the Court of Appeals clearly distinguished its position regarding waiver of right to terminate from waiver of landlord's right to reject renewal of a lease.

Analyzing the non-waiver clause in the Lease which provided "[t]he receipt by Landlord of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Landlord unless such waiver be in writing signed by the Landlord", the Court of Appeals held that the clear and unambiguous non-waiver clause "should be enforced **to preclude a finding of waiver of the conditions precedent to renewal**." (emphasis added) *Id*.

6

More importantly, the Court of Appeals held that its decision applied the settled principle that acceptance of rent by a landlord from a tenant with knowledge of the tenant's violation of the terms of the lease normally results in a waiver of the violation. Below holding of the Court of Appeals clearly explains that the Court's analysis of a non-waiver clause was limited to the lease renewal issue:

> "The logic underlying this rule is plain enough: the option rests with the landlord to recognize the violation and terminate the tenancy. If he chooses to ignore it and accepts rent with knowledge of the tenant's violation then the acceptance evidences his waiver and an election to continue the relationship. **<u>Although the intent to waive is usually a question of fact, knowing acceptance of rent without any effort to terminate justifies an inference that the landlord has elected to hold the tenant to the lease</u>**. The primary reason for the rule is the inconsistency of the landlord's positions. As one old English case put it, the landlord should not be permitted "to treat a man as a tenant, and then treat him as a trespasser" (*Finch v Underwood,* 2 Ch Div [1876] 310, 316). Undoubtedly, however, the courts have applied the rule also to prevent a forfeiture of the tenant's estate.
>
> <u>Plaintiff contends that application of this principle entitled it not only to remain in possession but to renew the lease</u>. **The general rule is that if a tenant's right to renew is conditional, as it is in this case, it cannot be exercised validly unless the tenant is in full compliance with the conditions** (see *McIntosh v Rector of St. Phillip's Church*, 120 NY 7; *People's Bank v Mitchell,* 73 NY 406; cf. *Vanguard Diversified v Review Co.*, 35 AD2d 102). Whether the landlord has waived performance of the condition is a question of fact (as was waiver of a violation permitting re-entry, had the term not expired) **but there is no necessary inconsistency in treating a party as a tenant by accepting the rent with knowledge of a violation of the lease, but in also refusing to extend the lease for a further term.**" (emphasis added).

The Court of Appeals not only found that acceptance of rent without any effort to terminate justifies an inference that the landlord has elected to hold the tenant to the lease but it also remanded the case for trial on the factual issues of intent to waive, which should be the case for the lease dispute herein.

7

As the Debtor previously argued, the controlling decision in *Simon & Son Upholstery, Inc. v. 601 W. Assocs., LLC,* 268 A.D.2d 359 N.Y.S.2d 256, 257 (2000), involves a landlord with (1) knowledge of the tenant's continued occupancy after notice of breach and (2) active participation in relation to that continued occupancy. Notwithstanding the general non-waiver clause contained with the lease, the Court found that the subsequent conduct by the landlord inconsistent with its notice to the tenant constitutes a waiver of the Landlord's rights under the lease:

> "We recognize that the lease contained nonwaiver and merger clauses but note that in this case the prior landlord was fully apprised and involved in the photography studio modifications, including approving the renovations, providing tenant parking, accepting payments from the photography tenant, and using the premises in a sales brochure. <u>This active involvement is in stark contrast to the landlord's passive acceptance of late rent payments in *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York,* 61 N.Y.2d 442, 474 N.Y.S.2d 458, 462 N.E.2d 1176. Here, in distinction to Jefpaul, there are sufficient indicia that the reasonable expectations of both parties under the original lease were supplanted by subsequent actions</u>" *Simon & Son Upholstery, Inc. v. 601 W. Assocs., LLC*, 268 A.D.2d 359, 360, 702 N.Y.S.2d 256, 257 (2000)

In further support of Debtor's position, the Court in *Troiano v. 55 Ehrbar Tenants Corp.*, 168 Misc.2d 906 (1996) 645 N.Y.S.2d 975, held that despite a "non-waiver" clause in the proprietary lease, the landlord clearly abandoned its right to proceed to termination of the lease and waived the claimed default by the receipt and retention of the monthly payments and by failing to proceed with the termination after the noticed date of termination. The *Troiano* court held that the tenant was entitled to a second notice given that tenant has reasonably relied upon the actions of the landlord that were contrary to the notice previously given. Although this Court analyzed *Troiano* only limited to substantial defects in the subject matter termination notice, factual background in *Troiano* is very similar to the one in here, as the *Troiano* court held that landlord needed to serve a second notice of termination before being able to terminate the lease as the

8

landlord clearly abandoned its right to proceed to termination of the lease by failing to proceed after the noticed date of termination. The facts cited above by Debtor support the same conclusion.

## POINT II

### HAVING FOUND THAT THE LEASE AND LOAN AGREEMENTS ARE INTEGRATED, THE LENDER'S CONSENT TO TERMINATION OF THE LEASE IS A CONDITION PRECEDENT TO TERMINATION

Citing *World Wide Polymers, Inc. v Shinkong Synthetic Fibers Corp.*, 03-CV-8843, 2010 WL 3155176, the Debtor has argued that the Lease is integrated with not only the Security Agreement but also with all other Loan Agreements associated with the Security Benefit financing. As a result, the Debtor is in direct privity with Security Benefit and has rights arising from the Loan Agreements themselves including the right that no termination remedy may be elected under the terms of the Lease without prior consent of Security Benefit.

There are numerous interlocking provisions that bind both Landlord and Debtor to the terms of the Loan Agreement, and the right to terminate the Lease by either the Debtor or the Landlord is one of them. Although contained in separate but integrated agreements, both parties agreed to subordinate their termination rights to the prior written consent of Security Benefit. See *Novick v AXA Network, LLC*, 642 F3d 304, 312 [2d Cir 2011] ("[T]he issue of the dependency of separate contracts ... boils down to the intent of the parties.") (quoting *National Union Fire Insurance Company of Pittsburgh, Pa. v. Turtur,* 892 F.2d 199, 205 (2d Cir.1989)); *World Wide Polymers, Inc. v Shinkong Synthetic Fibers Corp.*, 03-CV-8843, 2010 WL 3155176, at *15 [SDNY July 30, 2010], *affd,* 694 F3d 155 [2d Cir 2012] ("In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances.")

9

(quoting *Rudman v. Cowles Commc'ns, Inc.,* 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867, 873 (N.Y.1972)).

At page 38 of the Decision, the Court held that those cases cited by the Debtor involve two parties with obligations under the same agreement where the question was how a breach by one party affected the non-breaching party and that none of the cases are helpful to support Debtor's cause. However, this is not the case. The case law this Court cited including but not limited to *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) and *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998) involve different agreements between multiple parties, where the courts held that under New York law, all writings which form part of a single transaction and are designed to effectuate the same purpose must be read together, even though they were executed on different dates and were not all between the same parties.

*TVT* court held that two agreements between three different parties were part of a single transaction and therefore those intended to effectuate the same purpose. *TVT Recs. v. Island Def Jam Music Grp*. Crucially, *TVT* court held that the applicable test is whether the documents were intended as a single agreement, not whether they imposed congruent obligations. One of the parties to the set of agreements, TVT, contended that the subject matter agreements were separate contracts because they were not mutually dependent, that is, the breach of one did not undo obligations imposed by the other, which is similar to Landlord's arguments in this case (*see* Landlord's Supplemental Reply Brief at pg. 18). However, *TVT* court simply rejected this argument by stating that the "inquiry is whether "the parties assented to all the promises as a whole, so that there would have been no bargain whatever if any promise or set of promises had been stricken". *Id. TVT* court explained that due to the breach of one of the parties' obligations under an agreement whole project was demised. This Court should reach to the same conclusion here.

10

It is clear that breach of one of the agreements (i.e. Lease, Security Agreement, or the Loan Agreement) would demise the whole project, which is the construction and operation of a skilled nursing home facility. In fact, by its own admission in these proceedings, Landlord's breaches of the Loan Agreement put Debtor's rights under the Lease at risk. Remarkably, Landlord came before this Court in opposition to Security Benefit's request for stay relief to argue that Security Benefit's legal action upon Landlord's defaults will cause harm to Debtor.[3]

Accordingly, the effect of the integration is that the rights and obligations of the parties to the Lease must be placed into the context of and governed by the limitations or restrictions placed upon those rights and obligations by the Loan Agreements. To effectuate limitations or restrictions imposed by the Loan Agreements, Section 11.2 of the Lease expressly subrogates the Lease to the Loan Agreement, stating:

> "All provisions contained in the loan documents between [Landlord] and [Security Benefit] . . . shall take precedence over and be in lieu of any contrary provision provided for in this Lease, and in all respects are binding upon [Debtor] who agrees to and acknowledges the same."

At page 36 of the Decision, the Court finds that "the Debtor is not a signatory to the Loan Agreement, nor is it identified as a third-party beneficiary." However, the Debtor need not be a signatory to the Loan Agreement as its execution of the Lease clearly binds it to the terms of the Loan Agreement pursuant to section 11.2. Also, the recitals of the Security Agreement states that the Debtor will benefit materially from Security Benefit's approval of the Operating Lease and from the Loan transaction. Furthermore, once the Lease and Loan Agreements are found to be integrated, the Debtor need not be a third-party beneficiary because Debtor has become an actual party to the Loan Agreements.

---

[3] *See* Landlord's Objection to Stay Relief [ECF. No. 103].

11

Section 11.2 of the Lease corresponds to Section 4.1 of the Loan Agreement, which "assigns to [Security Benefit] . . . all of [Landlord's] rights in and under all Leases" including Section 16.1 of the Amended Lease which grants the remedy of termination in the event of a default. That remedy may not be exercised without the prior written consent of Security Benefit which is a condition precedent to any termination.

At page 36 of the Decision, the Court held that the Lease itself does not contain any language that requires the consent of Security Benefit for termination of the lease. On the contrary, as raised by Debtor during the Hearing on March 24, 2022 (*see* Hr'g Tr., at 44:4-12), the Lease at Section 13.2 contains language consistent with these limitations upon the parties' rights of termination by providing that the Lease may not be assigned by the Tenant (Debtor) <u>or</u> "modified, amended, or terminated without Mortgagee's prior written consent…." Such consent is a condition precedent to the right to terminate the Lease.

Moreover, Section 20.16 of the Amended Lease requires that Landlord give to Security Benefit copies of any notices of default which it may give or send to Tenant. Clearly, it was parties' intention to make Security Benefit's consent a condition precedent to any lease termination.

In its Decision, the Court misconstrued the Debtor's argument regarding Security Benefit's consent. Although the Landlord was clearly in breach of its Loan Agreement prior to issuing the Notice of Default on January 7, 2020, the alleged termination was ineffective not because of the breach by Landlord but because the contractual condition precedent – a contractual limitation to which the Debtor is also bound – had not been satisfied. Without first obtaining the written consent

12

of Security Benefit, which Landlord admits it has never obtained, the right to elect to terminate the Amended Lease pursuant to Section 16.1 cannot be exercised.[4]

## II. CONCLUSION

The Court should grant Debtor's request for reargument of the partial summary judgment motion based upon the factual record before it which raises questions of fact regarding the Landlord's intention to elect to terminate the Amended Lease and the contractual limitations contained in the Amended Lease and the Loan Documents applicable to both the Landlord and the Debtor which prevent the exercise of the right to elect to terminate without Security Benefit's prior written consent.

Dated: New York, New York

June 29, 2022

MICHELMAN & ROBINSON, LLP

By: /s/ John Giardino
John Giardino
800 Third Avenue, 24th Floor
New York, NY 10022
Tel: 212-730-7700
Fax: 212-730-7725

*Proposed Special Counsel to the Debtor and Debtor in Possession*

-and-

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

By: /s/ Tracy L. Klestadt
Tracy L. Klestadt
Brendan M. Scott
Christopher Reilly

---

[4] See Landlord's Brief, Page 15.

13

200 West 41st Street, 17th Floor
New York, NY 10036
Tel: 212-972-3000
Fax: 212-972-2245

*Attorneys for Debtor and Debtor in Possession*

14