**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
In re:

HBL SNF, LLC, d/b/a EPIC REHABILITATION
AND NURSING AT WHITE PLAINS,

                                     Debtor.
----------------------------------------------------------------------x
WHITE PLAINS HEALTHCARE PROPERTIES I, LLC,

                                     Plaintiff,

                         against

HBL SNF, LLC, LIZER JOZEFOVIC A/K/A LIZER
JOZEFOVIC, and MARK NEUMAN,

              Defendants and Third-Party Plaintiffs,

                         against

CCC EQUITIES, LLC, PROJECT EQUITY
CONSULTING, THE CONGRESS COMPANIES,
HOWARD FENSTERMAN, WILLIAM NICHOLSON, and
METROPOLITAN COMMERCIAL BANK

                         Third-Party Defendants
----------------------------------------------------------------------x

Chapter 11

Case No. 21-22623 (SHL)

Adversary Proceeding

Case No. 21-07096 (SHL)

**WHITE PLAINS HEALTHCARE PROPERTIES I, LLC'S MEMORANDUM OF LAW
IN OPPOSITION TO HBL'S MOTION FOR REARGUMENT OF THE
<u>MEMORANDUM OF DECISION DATED MAY 20, 2022</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

I.    HBL'S MOTION DOES NOT MEET THE STANDARD FOR REARGUMENT OR RECONSIDERATION ................................................................................................... 4

II.   THE COURT CORRECTLY HELD THAT THERE WAS NO WAIVER BASED ON THE UNDISPUTED FACTS ........................................................................................ 5

III.  THE COURT CORRECTLY HELD THAT WPHP'S ALLEGED FAILURE TO OBTAIN THE CONSENT OF ITS THIRD-PARTY LENDER PRIOR TO TERMINATING THE LEASE DOES NOT NEGATE THE TERMINATION ............. 11

CONCLUSION ............................................................................................................................. 17

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                   *Page(s)*

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*,
    821 F.3d 297 (2d Cir. 2016) .................................................................................... 15

*Griffin Indus., Inc. v. Petrojam, Ltd.*,
    72 F. Supp. 2d 365 (S.D.N.Y. 1999) ........................................................................ 5

*In re Gaulsh*,
    602 B.R. 849 (Bankr. S.D.N.Y. 2019) ............................................................... 4, 5, 9

*In re: Ditech Holding Corp.*,
    No. 19-10412, 2021 WL 2258291 (Bankr. S.D.N.Y. June 2, 2021) .................... 4, 5

*Jefpaul Garage Corp. v. Presbyterian Hosp. in N.Y.*,
    462 N.E.2d 1176, 61 N.Y.2d 442 (N.Y. 1984) ........................................................ 8, 9

*Renali Realty Grp. 3, LLC v. Robbins MBW Corp.*,
    686 N.Y.S.2d 855 (N.Y. App. Div. 1999) ............................................................... 10

*Sheppard v. Beerman*,
    317 F.3d 351 (2d Cir. 2003) ..................................................................................... 8

*Simon & Son Upholstery, Inc. v. 601 West Assocs. LLC.*,
    702 N.Y.S.2d 256 (N.Y. App. Div. 2000) ........................................................... 9, 10

*This Is Me, Inc. v. Taylor*,
    157 F.3d 139 (2d Cir. 1998) ................................................................................ 12, 13

*Thomas & Betts Corp. v. Trinity Meyer Util. Structures, LLC*,
    No. 20-2904, 2021 WL 4302739 (2d Cir. Sept. 22, 2021) ...................................... 15

*Troiano v. 55 Ehrbar Tenants Corp.*,
    645 N.Y.S.2d 975 (N.Y. Sup. Ct. 1996) .............................................................. 9, 11

*TVT Recs. V. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ..................................................................................... 12

Plaintiff White Plains Healthcare Properties I, LLC ("WPHP" or the "Landlord") respectfully submits this memorandum of law in opposition to the motion (the "Motion") of HBL SNF, LLC d/b/a Epic Rehabilitation and Nursing at White Plains ("HBL" or the "Tenant") seeking reconsideration or reargument of the issues decided in this Court's May 20, 2022 decision (the "Decision") granting the Landlord's motion for partial summary judgment and ruling that the Tenant's lease (the "Lease") was terminated prior to the commencement of the Tenant's chapter 11 bankruptcy case. For the reasons set forth below, the Court should deny HBL's motion in its entirety.

## PRELIMINARY STATEMENT

This Court's decision granting the Landlord's motion for partial summary judgment and holding that the Lease was terminated well before the Tenant filed for bankruptcy was based upon its careful review and analysis of: all of the arguments presented in the parties' briefs submitted to this Court and the State Court; the extensive record, including documents and deposition testimony taken by the Tenant; and the arguments presented by both parties at the hearing on the motion. There is nothing that the Court overlooked and there are no errors warranting reconsideration. Among other rulings, the 43-page Decision unequivocally "reject[ed] the Debtor's waiver argument," and held that there was no language in the Lease or other agreements that "supports the notion that the Debtor as tenant is entitled to invoke for its own benefit the rights provided to [Landlord's lender,] Security Benefit"—including the consent-to-termination provision in the loan agreement between the Landlord and its lender. Decision at 20, 36. The Court's conclusion was based on a searching review and careful analysis of the record and the legal arguments.

The Tenant's Motion should be denied outright because it fails to raise any errors, or even a single fact or controlling decision, overlooked by this Court in rendering its Decision.

Instead, the Tenant simply reiterates arguments that it already made—and lost—in opposing the Landlord's motion for partial summary judgment; arguments that were soundly rejected by this Court in the first instance based on the record and briefing before it. The Tenant's effort to rehash arguments and facts that already have been squarely addressed in the Decision falls far short of meeting the stringent standard for reconsideration or reargument.

First, the Tenant claims that the Landlord "abandoned" its termination remedy through its conduct after sending the notice of termination. But this Court squarely held that "none of [the] facts—or any circumstance cited by the Debtor—satisfy the Debtor's burden on showing waiver by words or conduct." Decision at 24. The Tenant's waiver defense was front and center in this Court's Decision. The Decision devotes more than ten pages to considering all of the Tenant's facts and arguments in support of its waiver defense, including several pages of in-depth analysis of the New York Court of Appeals' decision in *Jefpaul*, which the Tenant continues to misconstrue. Thus, the Tenant's effort to re-litigate its previously unsuccessful waiver defense is meritless and not an appropriate basis for reconsideration or reargument.

Second, the Tenant recycles an argument that also was previously rejected by this Court: that it is entitled to invoke for its own benefit a requirement in the loan documents that the Landlord obtain its lender's consent to terminate the Lease. But this Court, after examining the language of the various agreements "in isolation or together," concluded that "the alleged breaches by the Landlord of its Loan Agreement with Security Benefit do not excuse the Debtor's breaches of the Amended Lease." Decision at 35. In challenging the Court's reasoned conclusion, the Tenant focuses on whether the loan agreements and the Lease are integrated agreements and argues that Section 11.2 of the Lease "expressly subrogates the Lease to the Loan Agreement." But the Tenant is wrong on all accounts and there is nothing new here.

2

To start with, the Court's Decision does not hinge on whether or not the agreements are integrated, and instead appropriately focuses on reading the agreements' provisions as a whole under basic rules of contract interpretation to determine how the Landlord's alleged breaches of the loan documents would impact the Tenant's obligations under the Lease. This approach to interpreting the agreements as a whole is valid even if the contracts were found to be integrated.

Further, the Tenant's contention that the Court did not consider two cases—*TVT* and *This Is Me*—is meritless. Those cases were cited in the Decision and are either factually distinguishable or consistent with the Court's holding.

Next, the Tenant persists in misleadingly omitting critical language when it quotes Section 11.2 of the Lease in an effort to alter the plain meaning of the provision. Section 11.2 expressly states that the Lease takes precedence over the loan agreements with regard to any issue *other than* those specifically set forth in Section 11.2. The lender's consent rights are not among the issues specifically set forth in the provision and thus *do not* take precedence over the Lease provisions. As the Court held, there is "nothing in these provisions" that would allow the Tenant to rely on Security Benefit's consent rights in excusing the Tenant's continuous and systematic breaches of the Lease. Decision at 37. The Tenant's effort to change the meaning of Section 11.2 by striking and ignoring critical language in the provision did not work the first several times it made the same flawed argument to this Court—and is no more compelling this time around.

Finally, the Tenant urges this Court, as it did at oral argument, to deem the Lender's consent right to be a "condition precedent" to the Landlord's termination of the Lease. But it is well-settled that a condition precedent must be expressed in "unmistakable" language in a contract. Ignoring this well-settled law, the Tenant asks the Court to treat language that is not in

3

the Lease as a silent, implied, condition precedent. The Tenant's further effort to cherry-pick and misconstrue other provisions of the Lease involving the *Tenant's* notice obligations in the event of the *Landlord's* default under the Lease are wide of the mark and fail to lend any support to the Tenant's frivolous condition-precedent argument.

In sum, the Tenant's Motion is nothing more than a reprise of arguments that were fully analyzed—and rejected—by this Court in rendering its Decision. A motion for reconsideration is not a "second bite at the apple"—yet that is exactly what the Tenant seeks through its Motion. For all of these reasons and those set out in further detail below, the Court should deny the Tenant's motion for reconsideration or reargument.

## ARGUMENT

### I. HBL'S MOTION DOES NOT MEET THE STANDARD FOR REARGUMENT OR RECONSIDERATION

A party that files a motion for reargument or reconsideration bears a heavy burden. To prevail on such a motion, the movant must demonstrate that "the court overlooked controlling decisions or factual matters that might have materially influenced its earlier decision," or that there is a "need to correct a clear error or prevent manifest injustice." *In re Gaulsh*, 602 B.R. 849, 853 (Bankr. S.D.N.Y. 2019). Manifest injustice will not be found unless the movant can point to "an error committed by the trial court that is direct, obvious, and observable." *In re: Ditech Holding Corp.,* No. 19-10412, 2021 WL 2258291, at *3 (Bankr. S.D.N.Y. June 2, 2021). In evaluating whether the standard for reconsideration or reargument has been met, "[t]hese criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *In re Gaulsh*, 602 B.R. 849 at 854 (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)). This is because "a motion for reargument is not an opportunity to present the case under new theories, secure a

4

rehearing on the merits, or otherwise take a 'second bite at the apple.'" *Id.* (internal citations omitted). Indeed, when it comes to motions for reconsideration, "the Supreme Court has cautioned that as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *In re: Ditech Holding Corp.,* 2021 WL 2258291, at *3 (internal quotation marks omitted)).

Notwithstanding this exacting standard, the Tenant moves the Court to reconsider its rigorous Decision on two grounds. As elaborated below, these arguments simply do not satisfy the standard for reconsideration or reargument. HBL's argument regarding waiver is based on facts and case law that the Court already considered thoroughly and properly rejected as meritless in the first instance. And HBL's argument that the Landlord's alleged breaches of the loan agreement excuse its own breaches of the Lease was also soundly rejected by the Court in its Decision because, among other flaws, it is based on the Tenant's flagrant misquote of the critical Lease provision. In support of its Motion, the Tenant fails to point out any obvious error, or present any new facts or law that the Court failed to consider in rendering its Decision. Accordingly, HBL's failure to satisfy the standard for reargument or reconsideration mandates denial of the Motion.

## II.     **THE COURT CORRECTLY HELD THAT THERE WAS NO WAIVER BASED ON THE UNDISPUTED FACTS**

Turning to the merits, the Tenant asks this Court to reconsider its determination that WPHP did not waive its right to terminate the Lease. The Tenant's argument flies in the face of the Court's prior ruling, which in no uncertain terms "reject[ed] the Debtor's waiver argument." Decision at 20. The Court's outright rejection of the Tenant's waiver argument was based on careful consideration of each fact that the Tenant asserted in support of its waiver argument, including:

5

- The Landlord permitting the Debtor to take possession of the Property in September 2019 despite the failure to pay the Security Deposits (*id.* at 22-23);

- The Landlord's acceptance of rent (*id.* at 19);

- The Letter of Intent (the "LOI") executed shortly after the Tenant took possession of the Property (*id.* at 23);

- The parties' negotiations for a potential Intercreditor Agreement (*id.* at 23-24); and

- The Landlord's direction that the Tenant pay the rent to Security Benefit on July 15, 2020, as part of the Landlord's efforts to renegotiate its loan with Security Benefit (*id.* at 24-25).

As to all of these "words and conduct identified by the Debtor," the Court relied on deposition testimony and other evidence in the record to find that throughout the parties' interactions, the Landlord consistently maintained that the Tenant was in default and concluded that "the record establishes that the parties made numerous efforts to settle their differences—ultimately without success—while preserving all of their rights under the Amended Lease." *Id.* at 22.

It is against this backdrop that the Tenant, without citing to any "overlooked" facts, argues that the Court should simply revisit these same facts and reach the opposite conclusion. HBL's Motion for Reargument of the Memorandum of Decision dated May 20, 2022, Adv. Pro. Dkt. 63 ("HBL Mem.") at 4-5. However, as is made plain in pages 18 through 26 of the Decision, the Court thoroughly considered the undisputed evidence surrounding each of these acts.

As to permitting the Tenant to take possession of the premises, for example, the Court pointed to deposition testimony to support its unchallenged and correct conclusion that "the Landlord maintained that the Debtor was in default at that time." Decision at 23.

As to the LOI, the Court rightly observed that because the LOI's effectiveness was "contingent on a subsequent closing of the transaction set forth in the document" and it "did not

6

go effective because the contemplated transaction did not close," the LOI "cannot support a claim of waiver," *id*. The Notice of Default sent in January of 2020 further supported the Court's finding of nonwaiver because it provided "evidence that the Landlord was not waiving its rights as it occurred in the midst of the parties' on and off efforts to resolve their disputes." *Id.*

And as to the parties' discussions regarding "a potential Intercreditor Agreement in the spring of 2020," the Court correctly observed that no waiver occurred in these discussions because "correspondence about the Intercreditor Agreement makes clear that Landlord maintained that the [Tenant] was in breach of the Amended Lease." *Id.*

The Tenant's argument that the Landlord indicated an intent to waive its rights by directing the payment of rent to Security Benefit on July 15, 2020 was also squarely rejected by the Court. The Court determined that it "cannot read such an expansive intent given the context here," which demonstrated that "[t]his direction did nothing to change or alter any of the [Tenant's] obligations as tenant." *Id.* at 24.

It was only after a careful review of the factual record surrounding each of these acts that the Court concluded that "none of these facts—*or any circumstance cited by the Debtor*—satisfy the Debtor's burden on showing waiver by words or conduct." *Id.* at 24 (emphasis added).

The Tenant criticizes the Court's exhaustive review, claiming that the Court erred because it "did not draw the inferences most favorable to the [Tenant] and decided a factual issue which a reasonable jury could easily decide supports the exact opposite conclusion." HBL Mem. at 6. But this argument misstates the law. Waiver may occasionally turn on "question[s] of fact," HBL Mem. at 4, but even questions of fact are properly found by the court on summary

7

judgment when they are not in dispute. *See, e.g.*, *Sheppard v. Beerman*, 317 F.3d 351, 356–57 (2d Cir. 2003) (affirming district court's grant of summary judgment because "[o]n this record, no reasonable juror could infer from the facts" that an element necessary to the claim had been met). In this case, the Court properly evaluated the undisputed evidence against the applicable legal standard. The Court correctly determined that the evidence was insufficient against "the high hurdle that exists under New York law when the applicable contract contains a non-waiver clause," Decision at 20, and in light of the undisputed record evidence which established "that the parties made numerous efforts to settle their differences. . . while preserving all of their rights under the Amended Lease," *id.* at 22.

Nowhere does HBL point to a fact in the record that the Court overlooked (there is none). Nor does HBL explain why the existing factual record does not support the Court's straightforward conclusion that, in light of the record evidence demonstrating that the Landlord repeatedly and expressly reserved its rights under the Lease following the Tenant's numerous defaults, there was no waiver.

The Tenant's final basis for challenging the Court's waiver determination is its argument that the Court misunderstood settled New York law. Persisting with its misreading of three cases—*Jefpaul Garage Corp. v. Presbyterian Hosp. in N.Y.*, 462 N.E.2d 1176, 1177, 61 N.Y.2d 442, 446 (N.Y. 1984); *Simon & Son Upholstery, Inc. v. 601 West Assocs. LLC.*, 702 N.Y.S.2d 256, 257 (N.Y. App. Div. 2000); and *Troiano v. 55 Ehrbar Tenants Corp.*, 645 N.Y.S.2d 975 (N.Y. Sup. Ct. 1996)—the Tenant contends that the Court failed to consider controlling case authority in rendering its decision. HBL Mem. at 2, 6. As an initial matter, HBL's claim that these cases were "overlooked" is disingenuous. *Jefpaul* was exhaustively briefed by both sides, and after the Tenant raised *Simon* and *Troiano* in reply, the Court heard additional oral argument

8

on *Jefpaul* and *Troiano* before expressly addressing each of these cases in the Decision. *See* Decision at 20-26, 25 n. 11. HBL's continued insistence that its own reading of these cases, and not the Court's, is the right one is not a proper basis upon which to seek reconsideration or reargument. *In re Gaulsh,* 602 B.R. at 854 (standard for motion for reconsideration or reargument strictly adhered to "so as to avoid repetitive arguments on issues that have been considered fully by the court" (internal quotation marks omitted)).

The Court was also right to reject the Tenant's reliance on these cases in the first instance. As for *Jefpaul*, the Court correctly observed that far from supporting the Tenant's position, *Jefpaul* actually established that absent clear evidence "to indicate that the reasonable expectations of the parties under the original agreement were supplanted by subsequent actions," non-waiver provisions in commercial leases "'should be enforced to preclude a finding of waiver.'" Decision at 21-22 (quoting *Jefpaul*, 61 N.Y.2d at 446)). As this Court stated in its Decision, "the court in *Jefpaul* cited the presence of a non-waiver clause in the lease, concluding that a waiver 'may not be inferred, and certainly not as a matter of law, to frustrate the reasonable expectations of the parties embodied in a lease when they have expressly agreed otherwise.'" Decision at 21 (quoting *Jefpaul*, 61 N.Y.2d at 446)).

The Tenant attempts to avoid this straightforward reading of the case by claiming that the court in *Jefpaul* "distinguished its position regarding waiver of right to terminate from waiver of landlord's right to reject renewal of a lease" and that the holding is thus "limited to the lease renewal issue." HBL Mem. at 6-7. Importantly, this limitation on the enforceability of a nonwaiver clause is nowhere in the Court of Appeals' decision. And even if such a limitation had been articulated, it still would not support the Tenant's effort to avoid the consequences of its own negotiated contract here. *Jefpaul* **reversed** the lower court's grant of summary judgment

9

to the tenant after concluding that the lower court erred in holding that the landlord waived its right to enforce the lease as a matter of law in light of the lease's nonwaiver clause. It is the case's holding, and not dicta from the lower court case which preceded it, that establishes controlling law on this issue. The Court was correct to follow *Jefpaul*'s express holding and the holding of New York courts that have interpreted nonwaiver clauses since *Jefpaul*. *See, e.g., Renali Realty Grp. 3, LLC v. Robbins MBW Corp.*, 686 N.Y.S.2d 855, 856 (N.Y. App. Div. 1999) ("The plaintiff did not waive its right to enforce the lease provisions by accepting rent for several months, since the lease contained a clear and unambiguous 'no-waiver' clause.").

*Simon* and *Troiano* also do not support the Tenant's position because the facts of those cases are wholly distinguishable. As the Court observed, contrasting the facts of this case to those present in *Simon* actually "help[s] prove the point." Decision at 24. The landlord in *Simon* repeatedly engaged in acts to indicate that he approved of the tenant using the rental space for a photography studio, "including approving the renovations, providing tenant parking, accepting payments from the photography tenant, and using the premises in a sales brochure," and then claimed that the tenant could only use the premises for "upholstery manufacturing." 702 N.Y.S.2d at 257. Here, by contrast, "[t]he facts [] do not rise to this level." Decision at 24. And in *Troiano*, the court determined that a landlord had waived its right to terminate the lease notwithstanding a nonwaiver provision only after observing that the termination notice was defective. 645 N.Y.S.2d at 977. No such defect was present here, and the Tenant's insistence that "the factual background in *Troiano* is very similar to the one in here," HBL Mem. at 8, cannot overcome this central, and distinguishable fact.

In sum, the Court correctly held that the Landlord did not waive its right to terminate the Lease, and the Tenant has failed to identify anything that the Court overlooked. Indeed, the

10

Decision makes clear that all the Tenant's factual assertions and legal arguments were carefully and fully considered by the Court. Reconsideration or reargument on this issue should be denied.

### III. THE COURT CORRECTLY HELD THAT WPHP'S ALLEGED FAILURE TO OBTAIN THE CONSENT OF ITS THIRD-PARTY LENDER PRIOR TO TERMINATING THE LEASE DOES NOT NEGATE THE TERMINATION

The Tenant incorrectly argues in its Motion that the Lease and loan agreements were integrated agreements and, as a result, Security Benefit's consent to termination is a condition precedent to termination. HBL Mem. at 9. In support of its flawed and chaotic argument, the Tenant misconstrues this Court's decision, recycles the same arguments that it made—and lost—in opposing the Landlord's summary judgment motion, and continues to misquote the key provision of the Lease that it relies on in support of its argument.

As an initial matter, it is irrelevant whether the Lease and the loan agreements are integrated agreements because this Court's Decision did not turn on whether or not the contracts were integrated. Rather, as this Court correctly noted in its Decision, "even assuming that these agreements are integrated . . . one still has to read the provisions of such an integrated agreement as a whole under the usual rules of contract interpretation to determine how, if at all, any breaches by the Landlord would impact the Debtor's obligations under the Amended Lease." Decision at 35. Once you read the provisions of the Lease and loan agreements, as the Court did in its Decision, it is clear that the parties did not intend "to give the Debtor the right to invoke the consent provisions from the Loan Agreement as a blanket excuse for any defaults on the Debtor's part." *Id.* at 36.

The Tenant argues that this Court "overlooked" two cases that it says support its argument that writings involving different agreements between multiple parties can be read together as integrated agreements. HBL Mem. at 10-11. But the Tenant's argument is without

11

merit.  Critically, both cases were cited and considered by the Court in its Decision.  Decision at 32-33.  The first so-called "overlooked" case cited by Tenant, *TVT Recs. V. Island Def Jam Music Grp.*, 412 F.3d 82 (2d Cir. 2005), is readily distinguishable from this case and does not alter the Court's analysis in any way.  *TVT* involved two agreements executed several months apart.  One defendant was not a signatory to the initial contract, but the contract specified that the defendant had an ultimate role in "sign[ing]-off on [the agreement] signifying its acceptance and agreement thereto."  Several months later, the same defendant (along with the other parties) executed a side letter agreement that modified certain provisions of the initial agreement and confirmed the parties' obligation "to comply with and honor all of the terms and conditions set forth in the [initial agreement]."  *Id.* at 85-86.  The court found that the two contracts "were meant to be read together as a single contract" because they "were intended to effectuate the same result"—namely, the release of an album containing older music and newer music to be recorded and produced.  *Id.* at 89-90.  Accordingly, the court found that because the defendant was a party to the initial contract, it could not have tortiously interfered with the agreement.

The second case cited by the Tenant, *This Is Me, Inc. v. Taylor*, 157 F.3d 139 (2d Cir. 1998), is also entirely consistent with this Court's Decision.  In *This Is Me*, which involved the issue of whether several contracts between various parties should be read together, the court looked to, inter alia, "the drafting history and chronology, the cross-referencing of the agreements, the integral nature of the undertakings . . . , [and] the relationships among the [ ] parties and entities" in order to find the there was sufficient evidence for a jury to determine that the contracts should be read together.  *Id.* at 143.  Importantly, the Second Circuit held that determining whether the contracts should be read together "requires a further look at the terms of

12

the various contracts, and their cross-referencing of each other." *Id.* And, consistent with *This Is Me*, that is exactly what this Court did in its Decision.

In analyzing the language of the loan agreement and the Lease "in isolation or together," the Court determined that there was no language that would permit the Tenant "to invoke for its own benefit the rights provided to Security Benefit." Decision at 35-36. Indeed, as this Court noted, the Tenant "is not a signatory to the Loan Agreement, nor is it identified as a third-party beneficiary." *Id.* at 36. The Court further noted that the loan agreement expressly states that: "[t]he Loan Documents are for the sole benefit of Lender and Borrower and are not for the benefit of any third party." *Id.* (quoting Section 7.3 of the Loan Agreement). This Court also rejected the Tenant's assertion that Section 11.2 of the Lease "expressly subrogates the Lease to the Loan Agreement," HBL Mem. at 11, and found that "[t]here is nothing in [Section 11.2 of the Amended Lease] that provides a basis for the Debtor to be able to rely on Section 3.5(vi) of the Loan Agreement (providing Security Benefit must consent to a terminated of the Amended Lease by the Landlord)," Decision at 37.

In its Motion, as it did in every one of its prior briefs, in purporting to quote the Lease provision, the Tenant blatantly omits the critical language of Section 11.2 in a disingenuous effort to invert the plain meaning of the provision. In full, Section 11.2 provides:

> All provisions contained in the loan documents between [the Landlord] and [Security Benefit], or any other document in connection therewith *which concern or pertain to the restoration of the Leased Premises, the application of insurance proceeds and any and all matters concerning a casualty*, shall take precedence over and be in lieu of any contrary provision provided for in this Lease, and in all respects are binding upon Tenant who agrees to and acknowledges the same.

Affidavit of William A. Nicholson, dated August 18, 2021, filed in the Supreme Court of the State of New York, County of Westchester, Index No. 60278/2020 (NYSCEF Doc. No. 196) (the "Nicholson Aff.") Ex. 12 § 11.2 (emphasis added). Even after being directly criticized for its

13

selective quoting in prior briefing, the Tenant continues to omit the italicized language and misstate the clear meaning of the provision. HBL Mem. at 11.

As this Court correctly held, when read in full, Section 11.2 "provides that the Amended Lease takes precedence if there is any inconsistency between the Amended Lease and other agreements with regard to any issue other than those specified in Section 11.2 of the Amended Lease." Decision at 37. Section 3.5(vi) of the loan agreement—the provision that required the Landlord to obtain the written consent of Security Benefit prior to terminating the Lease—has nothing to do with the "the restoration of the Leased Premises, the application of insurance proceeds and any and all matters concerning a casualty," and therefore does not "take precedence" over the Lease. As the plain language of Section 11.2 makes clear, it does not "expressly subrogate[] the Lease to the Loan Agreement." HBL Mem. at 11. To the contrary, the Lease takes precedence over the loan documents on all issues except those specifically listed in Section 11.2. Therefore, as this Court correctly held, the Tenant cannot "leverage Security Benefit's independent rights for its own benefit" because the agreements make clear that "consent was not a right negotiated for the benefit of the tenant and there was no expectation that the tenant would be able to claim such rights." Decision at 38.

The Tenant next argues, without citing any supporting caselaw or language in the Lease, that Security Benefit's consent is a "condition precedent" to termination of the Lease. HBL Mem. at 12.[1] However, it is well settled under New York law that conditions precedent must be "expressed in unmistakable language," *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (internal citations omitted), and "in the

---

[1] The Tenant did not brief the "condition precedent" aspect of its theory but did raise it during oral argument on the Landlord's summary judgment motion. *See* Transcript of March 24, 2022 Hearing at 51, 71, 83.

14

absence of unambiguous language, a condition will not be read into the agreement," *Thomas & Betts Corp. v. Trinity Meyer Util. Structures, LLC*, No. 20-2904, 2021 WL 4302739, at *2 (2d Cir. Sept. 22, 2021). Not only does the Lease not "employ any recognized linguistic conventions of condition—such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' [or] 'subject to,'" *Bank of New York Mellon*, 821 F.3d at 305 (internal citations omitted), but the Lease does not even mention Security Benefit's consent in the provisions addressing the Landlord's right to terminate the Lease, *see generally* Nicholson Aff. Ex. 12 § 16.1. The only provision of the Lease that Tenant cites to as the "condition precedent" language is Section 20.16 of the Lease, which requires that the parties give Security Benefit copies of any notices of default. The Tenant argues that this provision "[c]learly" indicates that "it was the parties' intention to make Security Benefit's consent a condition precedent to any lease termination." HBL Mem. at 12. Tenant's argument that a generic notice provision creates a "condition precedent" to termination is untenable. To hold that Security Benefit's consent to the Landlord's termination—a "condition" found nowhere in the Lease—is a condition precedent would be a gross departure from well-settled New York law that requires "unmistakable language" to create a condition precedent.

Finally, the Tenant selectively quotes and improperly construes Section 13.2 of the Lease, which deals exclusively with the *Tenant's* obligations to notify Security Benefit in the event of any defaults by the *Landlord* under the Lease. *See* Nicholson Aff. Ex. 12 § 13.2(a). Section 13.2(a) states that "[t]his Lease shall not be assigned by Tenant or modified, amended or terminated without [Security Benefit's] prior written consent in each instance." *Id.* Thus, consent is required before the *Tenant* can assign, modify, amend or terminate the Lease. This requirement is reiterated in the following Section of the Lease, which provides that "[i]n the event of *any act or omission of Landlord which would give Tenant the right*, immediately or after

15

lapse of a period of time, *to cancel or terminate this Lease*, or to claim a partial or total eviction, *Tenant shall not exercise such right (i) until it has given written notice of such act or omission to [Security Benefit].*" *Id.* § 13.2(b) (emphasis added). There is no corresponding provision in Section 16.1 of the Lease—the provision addressing defaults by the Tenant and the remedies of the Landlord—or anywhere else in the Lease. Thus, the Tenant is incorrect that Section 13.2 limits the Landlord's termination rights or is a "condition precedent" under the Lease and, as this Court held in its Decision "[g]iven the importance of the default and termination provisions, the Court cannot infer such a significant right given the absence of such an intent in the language." Decision at 36.

## CONCLUSION

For the reasons set forth above, WPHP respectfully requests that the Court deny the Tenant's motion for reconsideration or reargument and grant such other and further relief as the Court deems just and proper.

Dated: July 8, 2022
      New York, New York

Respectfully submitted,

BINDER & SCHWARTZ LLP

/s/ Eric B. Fisher
Eric B. Fisher
Lindsay A. Bush
366 Madison Avenue, 6th Floor
New York, NY 10017
Tel.: (212) 510-7272
Email: efisher@binderschwartz.com
Email: lbush@binderschwartz.com

-and-

DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP
Alfred E. Donnellan
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Tel.: (914) 681-0200
Email: aed@ddw-law.com

ABRAMS FENSTERMAN, LLP
Robert A. Spolzino
81 Main Street, Suite 306
White Plains, New York 10601
Tel.: (914) 607-7010
Email: RSpolzino@Abramslaw.com

*Counsel for White Plains Healthcare Properties I, LLC*